UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| ALAN WILLIS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BIG LOTS, INC., STEVEN S. FISHMAN, JOE R. COOPER, CHARLES W. HAUBIEL, II and LISA M. BACHMANN,<br><br>Defendants. | No. 2:12-cv-00604<br><br><u>CLASS ACTION</u><br><br><u>DEMAND FOR JURY TRIAL</u> |

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY, Trial Attorney (0063373)
BRIAN K. MURPHY (0070654)
1533 Lake Shore Drive
Columbus, OH 43204
Telephone: 614/488-0400
614/488-0401 (fax)
E-mail: murray@mmmb.com
murphy@mmmb.com

ROBBINS GELLER RUDMAN
& DOWD LLP
DARREN J. ROBBINS
DAVID C. WALTON
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff
[Additional counsel appear on signature page.]

## INTRODUCTION

1. This is a securities class action on behalf of all persons who purchased or otherwise acquired the common stock of Big Lots, Inc. ("Big Lots" or the "Company") between February 2, 2012 and April 23, 2012, inclusive (the "Class Period"), against Big Lots and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 (the "1934 Act").

2. Big Lots, through its wholly owned subsidiaries, operates as a broadline closeout retailer in the United States and Canada. The Company stocks products that have been overproduced, discontinued or rejected by other retailers. The Company is headquartered in Columbus, Ohio. Big Lots does business in two operating segments, United States and Canada. Big Lots derives the vast majority of its sales and operating profits from U.S. sales.

3. During the Class Period, defendants issued materially false and misleading statements regarding the Company's business and financial results. As a result of defendants' false statements, Big Lots stock traded at artificially inflated prices during the Class Period, reaching a high of $46.81 per share on March 27, 2012.

4. On April 23, 2012, after the market closed, Big Lots issued a press release announcing updates to its first quarter 2012 retail sales guidance.[1] The Company forecast a decline in first-quarter same-store sales, slightly negative in comparison to its prior guidance, which estimated a comparable stores sales increase of 2% to 4%.

5. In particular, the Company's consumables business declined significantly. As *MarketWatch* noted on April 24, 2012:

> Big Lots also has been faced with increased competition. While Family Dollar and Dollar General are opening more than 1,000 stores annually, the chain of about 1,500 stores is looking to add only 45 stores this year, [Raymond James Analyst Dan] Wewer said.

---

[1] Big Lots' fiscal year ends the last Saturday in January.

> "For the second time in 2 plus years, consumables has reared its ugly head as a problem, which suggests to us that structural issues (80% closeout driven) are at play – an issue that needs to get addressed" as soon as possible, said Deutsche Bank's analyst Charles Grom.
>
> He added the company's decision to cancel its scheduled appearance at a Barclays Capital conference on Tuesday only deepened his concerns about company's ***credibility issues***.

6. On this news, Big Lots stock collapsed $11 per share to close at $34.71 per share on April 24, 2012, a one-day decline of 24% on volume of 13.2 million shares.

7. The true facts, which were known by defendants but concealed from the investing public during the Class Period, were as follows:

(a) Big Lots' consumables line (consisting of household, beauty and health items), which represented a third of Big Lots' business, was deteriorating; and

(b) the Company's electronic products business was being adversely affected as shoppers were increasingly looking at online deals for these big ticket products, which adversely affected the Company's margins and prospects.

8. As a result of defendants' false statements and omissions, Big Lots common stock traded at artificially inflated prices during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down nearly 26% from their Class Period high.

## JURISDICTION AND VENUE

9. Jurisdiction is conferred by 28 U.S.C. §1331 and §27 of the 1934 Act. The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5].

10. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because Big Lots' operations are headquartered in this district and many of the acts and practices complained of herein occurred in substantial part in this district.

## PARTIES

11. Plaintiff Alan Willis purchased or acquired Big Lots common stock as described in the attached certification and was damaged thereby.

12. Defendant Big Lots is incorporated in Ohio and trades on the NYSE under the symbol "BIG." The Company's headquarters are located at 300 Phillipi Road, Columbus, Ohio.

13. Defendant Steven S. Fishman ("Fishman") is, and was at all relevant times during the Class Period, President, Chief Executive Officer ("CEO") and Chairman of the Company. During the Class Period, Fishman sold 227,500 shares of his Big Lots stock for proceeds of $10.2 million.

14. Defendant Joe R. Cooper ("Cooper") is, and was at all relevant times during the Class Period, Chief Financial Officer ("CFO") of the Company. During the Class Period, Cooper sold 86,875 shares of his Big Lots stock for proceeds of $3.9 million.

15. Defendant Charles W. Haubiel, II ("Haubiel") is, and was at all relevant times during the Class Period, Executive Vice President, Legal and Real Estate, and General Counsel of the Company. During the Class Period, Haubiel sold 75,000 shares of his Big Lots stock for proceeds of $3.4 million.

16. Defendant Lisa M. Bachmann ("Bachmann") is, and was at all relevant times during the Class Period, Chief Information Officer and Executive Vice President of Supply Chain Management of the Company. During the Class Period, Bachmann sold 45,000 shares of her Big Lots stock for proceeds of $2 million.

17. The defendants named above in ¶¶13-16 are referred to herein as the "Individual Defendants."

18. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Big Lots' quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*,

the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

19. Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Big Lots. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Big Lots common stock was a success, as it: (i) deceived the investing public regarding Big Lots' prospects and business; (ii) artificially inflated the price of Big Lots common stock; (iii) permitted the Individual Defendants to sell 434,375 shares of their Big Lots stock at inflated prices for proceeds of $19.6 million; and (iv) caused plaintiff and other members of the Class to purchase Big Lots common stock at inflated prices.

20. The top officers and directors of Big Lots also benefited, as the Company's purportedly favorable operating results contributed to the compensation paid to the top officers during the Class Period, some of whom received as much as $11.9 million per year.

## BACKGROUND

21. Big Lots, through its subsidiaries, operates as a broadline closeout retailer in the United States and Canada. The Company offers products under various merchandising categories, such as consumables, including the food, health and beauty, plastics, paper, chemical, and pet departments; furniture, which is comprised of the upholstery, mattresses, ready-to-assemble, and case goods departments; home, which consists of the domestics, stationery, and home decorative

departments; and seasonal items, which include the lawn and garden, Christmas, summer, and other holiday departments. It also provides merchandise under the play n' wear category, including the electronics, toys, jewelry, infant accessories, and apparel departments; and hardlines and other category, including the appliances, tools, paint, and home maintenance departments. As of January 28, 2012, it operated 1,451 Big Lots stores in the 48 contiguous United States, and 82 Liquidation World and LW stores in Canada. The Company also offers its products on a wholesale basis. Big Lots is based in Columbus, Ohio.

**DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD**

22. The Class Period begins on February 2, 2012, the day on which the Company reported its fourth quarter 2011 and fiscal year 2011 financial results in a press release. In addition to reporting sales and earnings, the Company made statements concerning the Company's shift to more electronic merchandise while downsizing toy products. In particular, the Company revised its U.S. fourth quarter earnings guidance to $1.71-$1.74 diluted earnings per share ("EPS"), up from prior guidance of $1.59-$1.66 diluted EPS. The Company additionally reported that its fiscal year 2011 retail sales from U.S. operations totaled $5,093.4 million, and forecast 2011 diluted EPS of $2.94-$2.97, a 4% to 5% improvement over fiscal 2010 earnings. The release stated in part:

> Commenting on sales for the quarter, Steve Fishman, Chairman, Chief Executive Officer and President stated, "I'm pleased with our fourth quarter sales results and the improving trends we have experienced throughout the year. For the all-important holiday selling season, we believe our strategy was very well executed and our decision to be aggressive in certain key categories was successful. From a merchandise perspective, seasonal and furniture each comped up low double digits and consumables comped up mid single digits. Additionally, our planned shift to more electronics merchandise while downsizing toys was well received by our customers."

23. Based on these statements, Big Lots' stock price increased $3.27 per share to close at $42.82 per share on February 2, 2012, a one-day increase of nearly 8% on high volume.

24. On March 2, 2011, Big Lots issued a press release announcing its financial results for its fourth quarter and fiscal year ended January 28, 2012. The Company reported fourth quarter 2011 net income of $114.7 million, or $1.75 diluted EPS, and a comparable store sales increase of 3.4% for U.S. stores. The Company further reported fiscal year 2011 net income of $207.1 million, or $2.98 diluted EPS, and record total sales of $5.2 billion for the year. Big Lots further issued its 2012 guidance, estimating a comparable store sales increase in the range of 2%-3% for U.S. stores and income from continuing operations projected to be $3.40-$3.50 diluted EPS. The release stated in part:

> Commenting on fiscal 2011 results, Steve Fishman, Chairman, Chief Executive Officer and President stated, "We are very pleased to deliver our fifth consecutive year of record operating profit in the U.S. and record EPS for the overall Company. We were aggressive this year in certain key merchandise initiatives and our strategies accelerated sales trends as the year progressed. We successfully opened 92 new stores in the U.S. and expanded our footprint into Canada with the acquisition of Liquidation World. We operated as good stewards of our cash and shareholders' capital as we invested in long-term growth opportunities, both in the U.S. and Canada, while returning $359 million of cash back to shareholders through our share repurchase efforts."

25. After releasing its results for its fourth quarter and fiscal year ended January 28, 2012, on March 2, 2012, Big Lots hosted a conference call with defendants Fishman, Cooper and Haubiel and analysts, investors and media representatives, during which defendants represented the following:

> [FISHMAN:] ***Consumables had another successful quarter***, comping up mid-single digits. We made significant improvements in this business in 2011 with our merchandise, with planned events, and our team, and the changes have translated into meaningful sales growth. Our food business, whether it was closeout, specialty, or captive label, continues to drive Consumables. However, HBC, pet, chemicals, and most every part of the category had positive comps for the quarter. Our marketing, product presentation, and in-store execution, including the Wall of Values that highlights the extreme value of our Consumables offerings, steadily improved as the year went along.
>
> The other ***big winner for the holidays was electronics***, which you may recall also benefited from our efforts to downsize toys. Electronics are the toys of a new age, toys with screens and memory cards. They're gadgets that fascinate a tech-savvy generation, have a broad appeal to consumers of all ages, and create buzz in

> our stores and with our customers. What is most exciting about this strategy is that electronics is not just a fourth quarter business, but instead has growth opportunities throughout the year.
>
> * * *
>
> [COOPER:] Now, moving to 2012 guidance, for the consolidated company, we estimate fiscal 2012 adjusted income from continuing operations to be in the range of $3.40 to $3.50 per diluted share, compared to income from continuing operations of $2.99 per diluted share in fiscal 2011.
>
> * * *
>
> [FISHMAN:] Over the last six years we have been consistent and diligent in our approach to transform this company, focusing on long-term strategies and returns for our investors, no shortcuts or short-term decisions, no compromises. We have been incredibly focused and simply been doing what we said we were going to do. It has improved our operating performance and execution. It has created meaningful employment opportunities and new jobs. It has improved our financial strength, which has allowed us to return significant cash to our shareholders. We have repurchased over $1.6 billion worth of company stock, or 55% of our outstanding shares, at an average price of less than $26 per share, and during that time, the compounded annual growth rate of our share price or return to shareholders has averaged about 20%, which is pretty important to understand in an up and down stock market.
>
> . . . We have improving trends coming out of 2011 and a focused strategy to execute in 2012.

26. By mid-March 2012, Big Lots stock was trading above $45.00 per share. On March 20, 2012, defendant Fishman sold 227,500 shares of his Big Lots stock at $45.23 per share, for proceeds of $10.289 million.

27. On March 27, 2012, Big Lots stock reached its Class Period high, closing at $46.81 per share. On this day, defendants Bachmann and Cooper each sold 25,000 shares of their Big Lots stock, for proceeds of $1.165 million each.

28. Then, after the market closed on April 23, 2012, Big Lots issued a press release announcing updates to its first quarter 2012 retail sales guidance. The Company forecast a decline in first-quarter same-store sales, slightly negative in comparison to its prior guidance, which estimated a comparable stores sales increase of 2% to 4%. The release stated in part:

> Based on retail sales results quarter-to-date and assumptions for the balance of the first quarter of fiscal 2012, we now expect U.S. comparable store sales to be slightly negative compared to our prior guidance issued on March 2, 2012, which estimated a comparable store sales increase of 2% to 4%. U.S. comparable store sales were on plan through the first six weeks of the quarter; however, sales compared to plan began to slow in late March and trends have further softened as we moved through the month of April. From a merchandising perspective, furniture, hardlines, and seasonal, particularly lawn and garden, have been our best performing businesses; whereas, consumables and play n' wear, particularly electronics, are currently below expectations for the quarter.
>
> In terms of our recently acquired Canadian operations, based on results quarter-to-date, we anticipate retail sales for the first quarter of fiscal 2012 will be slightly above our guidance which estimated sales in the range of $25 to $30 million.

29. In particular, the Company's consumables business declined significantly. As *MarketWatch* noted on April 24, 2012:

> Big Lots also has been faced with increased competition. While Family Dollar and Dollar General are opening more than 1,000 stores annually, the chain of about 1,500 stores is looking to add only 45 stores this year, [Raymond James Analyst Dan] Wewer said.
>
> "For the second time in 2 plus years, consumables has reared its ugly head as a problem, which suggests to us that structural issues (80% closeout driven) are at play – an issue that needs to get addressed" as soon as possible, said Deutsche Bank's analyst Charles Grom.
>
> He added the company's decision to cancel its scheduled appearance at a Barclays Capital conference on Tuesday only deepened his concerns about company's ***credibility issues***.

30. *Forbes* was even more skeptical of the Company's disclosures in an article entitled "A Very Fishy Smell Coming Out Of Big Lots." Contributor Brian Sozzi wrote:

> You would think this is a run-of-the mill earnings warning ***but it's much more***.
>
> In March, following the fourth quarter 8-K issuance on March 7, Big Lots executives dumped about 800,174 shares of stock. CEO Steve Fishman unloaded a cool $14.9 million of his Big Lots holdings, $10 million on March 20 and $4.9 million on March 27. Note that on the fourth quarter earnings call, Mr. Fishman was quoted as stating: "We have improving trends coming out of 2011 and a focused strategy to execute in 2012."
>
> So, trends were improving in the first week of March, then significantly nosedived to the extent that sparked meaningful insider stock sales by the CEO on

> March 20 and March 27? Or, was the earnings call statement misleading to begin with seeing as executives began to unload Big Lots shares as soon as the calendar turned to March?
>
> Keep in mind that retail has been delivering stronger than expected sales for the better part of 2012, suggesting Big Lots' initiatives to drive more consumable goods sales is not working as management has hinted and overall, there is market share loss occurring.
>
> Big Lots spent $46 million to repurchase 1.3 million shares in the fourth quarter at $36.79 per. In 2011, the company repurchased 15% of its outstanding shares. This is poorly allocated capital, in my view, ***especially strange in light of the CEO and other executives selling while the company is buying***.
>
> I would not even consider reversing my generally bearish view on Big Lots in light of the second consecutive gap down on the chart in under a month, the latest being a result of clear fundamental deterioration in the business.

31. On this news, Big Lots stock collapsed $11 per share to close at $34.71 per share on April 24, 2012, a one-day decline of 24% on volume of 13.2 million shares.

32. The true facts, which were known by defendants but concealed from the investing public during the Class Period, were as follows:

(a) Big Lots' consumables line (consisting of household, beauty and health items), which represented a third of Big Lots' business, was deteriorating; and

(b) the Company's electronic products business was being adversely affected as shoppers were increasingly looking at online deals for these big ticket products, which adversely affected the Company's margins and prospects.

33. As a result of defendants' false statements, Big Lots stock traded at artificially inflated levels during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down nearly 26% from their Class Period high.

## LOSS CAUSATION/ECONOMIC LOSS

34. During the Class Period, as detailed herein, the defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially

inflated the price of Big Lots common stock and operated as a fraud or deceit on Class Period purchasers of Big Lots common stock by misrepresenting the Company's business and prospects. Later, when the defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Big Lots common stock fell precipitously, as the prior artificial inflation came out of the price over time. As a result of their purchases of Big Lots common stock during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## NO SAFE HARBOR

35. Big Lots' verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

36. The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Big Lots who knew that the FLS was false. None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Big Lots common stock during the Class Period (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their

immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

38. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Big Lots has 63.7 million shares of stock outstanding, owned by hundreds if not thousands of persons.

39. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a) whether the 1934 Act was violated by defendants;

(b) whether defendants omitted and/or misrepresented material facts;

(c) whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e) whether the price of Big Lots common stock was artificially inflated; and

(f) the extent of damage sustained by Class members and the appropriate measure of damages.

40. Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

41. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

42. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**COUNT I**

**For Violation of §10(b) of the 1934 Act and Rule 10b-5 Against All Defendants**

43. Plaintiff incorporates ¶¶1-42 by reference.

44. During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

45. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a) employed devices, schemes and artifices to defraud;

(b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Big Lots common stock during the Class Period.

46. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Big Lots common stock. Plaintiff and the Class would not have purchased Big Lots common stock at the prices they paid, or at all, if they had been aware that the market price had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

**For Violation of §20(a) of the 1934 Act**
**Against All Defendants**

47. Plaintiff incorporates ¶¶1-46 by reference.

48. The Individual Defendants acted as controlling persons of Big Lots within the meaning of §20(a) of the 1934 Act. By virtue of their positions with the Company, and ownership of Big Lots stock, the Individual Defendants had the power and authority to cause Big Lots to engage in the wrongful conduct complained of herein. Big Lots controlled the Individual Defendants and all of its employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A. Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B. Awarding plaintiff and the members of the Class damages, including interest;

C. Awarding plaintiff's reasonable costs and attorneys' fees; and

D. Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: July 9, 2012

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY, Trial Attorney (0063373)
BRIAN K. MURPHY (0070654)

**/s/ Joseph F. Murray**

1533 Lake Shore Drive
Columbus, OH 43204
Telephone: 614/488-0400
614/488-0401 (fax)
E-mail: murray@mmmb.com
E-mail: murphy@mmmb.com

ROBBINS GELLER RUDMAN
& DOWD LLP
DARREN J. ROBBINS
DAVID C. WALTON
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
E-mail: darrenr@rgrdlaw.com
E-mail: davew@rgrdlaw.com

CHAPIN FITZGERALD SULLIVAN
& BOTTINI LLP
FRANCIS A. BOTTINI
550 West C Street, Suite 2000
San Diego, CA 92101
Telephone: 619/241-4810
619/955-5318 (fax)
E-mail: fbottini@cfsblaw.com

Attorneys for Plaintiff

C:\DOCUME~1\LeeN\LOCALS~1\Temp\MetaSave\Cpt Big Lots.doc