UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Alan Willis,

    **Plaintiff,**

    **v.**

Big Lots, Inc., *et al.*,

    **Defendants.**

Case No. 2:12–cv–604

Judge Michael H. Watson

## ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD AND LIAISON COUNSEL

### I. INTRODUCTION

This case is a securities class action brought under the PSLRA. The City of Pontiac General Employees' Retirement System's ("CPGERS") moves for appointment as lead plaintiff and approval of selection of counsel. ECF No. 13. For the following reasons, the Court **GRANTS** CPGERS' motion

### II. BACKGROUND

The putative class members in this action are all persons who purchased or acquired the common stock of Big Lots, Inc. ("Big Lots") between February 2, 2012 and April 23, 2012. Defendants are Big Lots, Steven Fishman (President, Chief Executive Officer, and Chairman of Big Lots), Joe Cooper (Chief Financial Officer of Big Lots), Charles Haubiel II (Executive Vice President, Legal and Real Estate, and General Counsel of Big Lots), and Lisa Bachmann (Chief Information

Officer and Executive Vice President of Supply Chain Management of Big Lots). Big Lots is headquartered in Columbus, Ohio and operates in the United States and Canada. Big Lots operates as a broadline closeout retailer, stocking products that were overproduced, discontinued, or rejected by other retailers.

Plaintiffs allege that between February 2, 2012 and April 23, 2012, Defendants issued materially false and misleading statements regarding Big Lots' business and financial results. Specifically, on February 2, 2012, Big Lots allegedly reported its fourth quarter 2011 and fiscal year 2011 financial results in a press release. Big Lots allegedly revised its United States fourth quarter earnings guidance upward from its prior guidance, reported that its fiscal year 2011 retail sales from United States operations totaled $5,093.4 million, and forecast improved 2011 diluted earnings per share ("EPS") over the 2010 earnings. As a result, Big Lots stock prices increased.

Plaintiffs allege that on March 2, 2012, Big Lots issued another press release announcing its financial results for its fourth quarter and 2012 fiscal year. Big Lots issued its 2012 guidance, which estimated a store sales increase between 2–3% for United States stores. It then hosted a conference call during which certain Defendants continued to present misleading information. As a result, stock prices continued to increase.

Plaintiffs further allege that on March 20, 2012, Fishman sold 227,500 shares of his stock for $10.289 million in proceeds. On March 27, 2012,

Bachmann and Cooper each sold 25,000 shares of stock, for $1.165 million in proceeds each.

Then, on April 23, 2012, after the market closed, Big Lots allegedly issued a press release updating its previous first quarter 2012 retail sales guidance. The press release was negative in comparison to its prior guidance, and stock dropped $11 per share. This amounted to a one-day decline of 24% of 13.2 million shares.

Plaintiffs allege Defendants knew during the period of February 2, 2012 to April 23, 2012, that Big Lots' consumables line was deteriorating and that the electronic products business was adversely affected, but Defendants concealed that information from the investing public, and as a result, the stock traded at artificially inflated levels between February 2, 2012 and April 23, 2012.

Plaintiffs sue Defendants for violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5, alleging Defendants both made false statements and failed to disclose adverse facts known to them about Big Lots.

### III. LAW AND ANALYSIS

#### A. Appointment of Lead Plaintiff

The Private Securities Litigation Reform Act ("PSLRA") governs the process of appointing a lead plaintiff and approving lead counsel. 15 U.S.C. § 78u-4. Within twenty days of filing an action, the plaintiff who filed the initial action must

publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(A)(i). Within sixty days of the notice being filed, any member of the purported class may move the Court to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

Within ninety days after notice is published, the Court shall consider any motion made in response to the notice and shall appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA statute creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that—

> (aa) has either filed the complaint or made a motion in response to a notice[5] . . . ;

---

[5]To satisfy prong (aa), each plaintiff filing a complaint and seeking to represent the class must provide a sworn certification that:
(i) states that the plaintiff has reviewed the complaint and authorized its filing;
(ii) states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this chapter;
(iii) states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;
(iv) sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint;
(v) identifies any other action under this chapter, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class; and
(vi) states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court . . . .
15 U.S.C. § 78u-4(a)(2)(A)(i)-(vi). These requirements of the PSLRA seek to ensure meritorious securities class actions are brought by valid, "non-professional" plaintiffs.

>   (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>   (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.[6]

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Essentially, the Court must proceed through a two-step inquiry, first calculating the candidate with the largest financial interest, and, second determining whether the candidate satisfies the typicality and adequacy requirements of Rule 23(a).

The presumption of lead plaintiff can be rebutted only upon proof that the "presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Furthermore, the PSLRA presumes a party may not serve as lead plaintiff in more than five securities class actions during any three year period, unless the court may otherwise permit. 15 U.S.C. § 78u-4(a)(3)(B)(vi).

In this case, notice was published in *Business Wire*, a national, business-oriented newswire service, on July 9, 2012. Murray Decl. Ex. A, ECF No. 13-4. CPGERS timely moved to serve as lead plaintiff. Mot., ECF No. 13. No other

---

*Manual for Complex Litigation*, §31.3 (4th ed. 2004). CPGERS filed such a certification. Murray Decl. Ex. C, ECF No. 13-6.

[6] Federal Rule of Civil Procedure 23(a) states that a party may serve as a class representative only if the following four prerequisites are met: (1) numerosity; (2) common questions of law or fact; (3) typicality; and (4) the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Typicality and adequacy are the principle concerns with regard to lead plaintiff determination.

parties moved to serve as lead plaintiff. Accordingly, CPGERS has met the first requirement of filing the complaint or making a motion in response to a notice. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

Next, the PSLRA instructs the Court to consider the financial interest at stake by the proposed lead plaintiff under the presumption that the plaintiff with the largest financial interest at stake will be lead plaintiff. As the motion for lead plaintiff is unopposed, the Court will only address CPGERS' financial interest.[1]

Although the PSLRA does not instruct on the specific method to use to determine which plaintiff has the largest financial interest, *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 302 (S.D. Ohio 2005), *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005), this Court will calculate financial interest employing a four-factor inquiry recognized by a host of other district courts and leading treatises. *See, e.g., In re The Goodyear Tire & Rubber Comp. Sec. Litig.*, No. 5:03–cv–2166, 2004 WL 3314943, *3 (N.D. Ohio 2004); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *In re Fuwei Films Securities Litigation*, 247 F.R.D. 432 (S.D.N.Y. 2008).

The four-factor test considers (1) the number of shares purchased or sold during the class period; (2) the net number of shares purchased; (3) the net funds expended; and (4) approximate losses incurred. CPGERS asserts a substantial

---

[1] The complaint was initially filed with Alan Willis as the lead plaintiff, but he purchased only 200 shares of stock. Compl. Ex. A, ECF No. 1-2. Thus, CPGERS has a larger financial interest at stake, having purchased 16,700 shares.

Case No. 2:12–cv–604 <span style="float:right">Page 6 of 10</span>

loss of $132,405 on their transactions in Big Lots shares. Specifically, CPGERS asserted a total of 16,700 shares purchased during the class period at a total cost of $737,716.88 and a total of 16,700 shares sold at a proceed of $605,311.63, for a loss of $132,405.26.[2] Murray Decl. Ex. B, ECF No. 13-5. From the evidence before the Court, CPGERS has the largest financial stake in the case.

Turning to the typicality and adequacy requirements of Rule 23(a), Federal Rule of Civil Procedure 23(a) states that a party may serve as class representatives only if the following four prerequisites are met: (1) numerosity; (2) common questions of law or fact; (3) typicality; and (4) the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Typicality and adequacy are the principle concerns with regard to lead plaintiff determination, as these prerequisites directly address the personal characteristics of the class representatives. *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. at 304 (citing *Lax v. First Merch. Acceptance Corp.*, Nos. 97C2715; 97C2716; 97C2737; 97C2791; 97C3767; 97C4237; 97C4013; 97C4236, 1997 WL 461036, at *6 (N.D.Ill. Aug. 6, 1997)).

At this stage in the proceedings, a proposed lead plaintiff must only make a *prima facie* showing of adequacy and typicality to satisfy this preliminary inquiry. *In re Cendant Corp. Litig.*, 264 F.3d 201, 263–64 (3d Cir. 2001); *Ohio Public*

---

[2] The net number of shares purchased and the net funds expended outside the class period are not clear from Exhibit B.

*Employees Retirement System v. Fannie Mae*, 357 F. Supp. 2d 1027 (S.D. Ohio 2005). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996). To satisfy adequacy, a plaintiff must show its interests are not antagonistic to those of the class they seek to represent and that their proposed counsel is qualified to conduct the litigation. *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. at 304–05.

CPGERS asserts its claims are typical of the claims of other plaintiffs; all claims are based on the same types of alleged misrepresentations and omissions by Big Lots. Specifically, CPGERS purchased shares of Big Lots during the proposed Class Period, relied on the allegedly fraudulent information, and consequently suffered damages. Furthermore, CPGERS states it satisfies adequacy as no antagonism exists between its interests and the interests of others in the class. Last, CPGERS maintains it retained both lead and liaison counsel with experience in such class action claims.

The Court finds CPGERS satisfies the typicality and adequacy requirements. CPGERS's claims are typical of the putative class, aligned in interest with the putative class' interests, and its chosen counsel is experienced in this area of law (*see infra* Part III(B)).

Finally, no party has opposed or rebutted the presumption of CPGERS's appointment as lead plaintiff, and no party has argued CPGERS failed to establish a *prima facia* case of typicality and adequacy. Accordingly, the Court appoints CPGERS as lead plaintiff.

### B. Approval of Lead and Liaison Counsel

PSLRA governs the approval of lead plaintiff's choice of counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v). "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *Id*. In determining whether to approve the selected counsel, courts consider how the plaintiff chose the firm, the qualifications of the firm, and the proposed fee structure, among other things. *In re Cedant Corp.*, 264 F.3d at 276–77. Courts typically affirm a lead plaintiff's choice of counsel unless the court believes the choice of counsel is not in the best interest of the class. *Id*.

In this case, CPGERS has selected two law firms to serve as lead and liaison counsel, respectively: Robbins, Geller, Rudman & Dowd LLP ("Robbins Geller") and Murray, Murphy, Moul & Basil LLP ("Murray Murphy"). Robbins Geller has extensive experience in prosecuting securities class actions, including serving as lead counsel in *In re Enron Corporation Securities Litigation*, in which Robbins Geller obtained the largest recovery to date in a shareholder class action. 2005 U.S. Dis. LEXIS 39867 (S.D. Tex. Dec. 22, 2005). CPGERS

selected Murray Murphy, a well-regarded Columbus firm, to serve as Laison Counsel.

The Court has reviewed the resumes of Robbins Geller and Murray Murphy and finds both are capable to handle this class action lawsuit. Accordingly, the Court approves the selection of Robbins Geller as lead counsel and Murray Murphy as liaison counsel to CPGERS.

## IV. CONCLUSION

The Court finds CPGERS is an adequate candidate for Lead Plaintiff status. It has alleged a large financial loss and satisfies typicality and adequacy requirements under Rule 23(a). Accordingly, CPGERS is granted Lead Plaintiff status. Furthermore, CPGERS's chosen lead and liaison counsel, Robbins Geller and Murray Murphy, are found to be adequate counsel to protect the putative class interests. As such, Robbins Geller and Murray Murphy are approved as lead and liaison counsel, respectively.

The Court **GRANTS** CPGERS's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel. ECF No. 13.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT