UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| ALAN WILLIS, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  vs.<br><br>BIG LOTS, INC., et al.,<br><br>     Defendants. | No. 2:12-cv-00604-MHW-NMK<br><br>CLASS ACTION |

**LEAD PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO PARTIALLY LIFT THE DISCOVERY STAY**

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY, Trial Attorney (0063373)
BRIAN K. MURPHY (0070654)
1533 Lake Shore Drive
Columbus, OH  43204
Telephone:  614/488-0400
614/488-0401 (fax)

Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID W. MITCHELL
AUSTIN P. BRANE
BRIAN COCHRAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiff

[Additional counsel appear on signature page.]

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................1

II.  ARGUMENT ......................................................................................................1

   A.  Defendants Ignore the Exceptional Circumstances Surrounding Plaintiff's Claims ............................................................................................1

   B.  Defendants' Attempt to Impose Improper Prerequisites to Partially Lifting the Stay Should Be Rejected..................................................................4

   C.  Plaintiff's Well-Pled Complaint Needs No "Cure," as Evidenced by the Fact It Was Filed Long *Before* Plaintiff Moved to Lift the Discovery Stay............6

   D.  Defendants' Concession that Plaintiff's Request Would Present No Undue Burden and Is Sufficiently Particularized Further Supports a Partial Lift of the Discovery Stay ...................................................................................9

III.  CONCLUSION..................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Can., Inc. v. Aspen Tech., Inc.*,
  No. 07 Civ. 1204 (JFK), 2007 U.S. Dist. LEXIS 51920
  (S.D.N.Y. July 18, 2007) ............................................................................................5

*Frank v. Dana Corp.*,
  No. 3:05CV7393, 2007 WL 1748887
  (N.D. Ohio June 18, 2007)........................................................................................5, 7

*Helwig v. Vencor, Inc.*,
  251 F.3d 540 (6th Cir. 2001) ...................................................................................8, 9

*In re Am. Funds Sec. Litig.*,
  493 F. Supp. 2d 1103 (C.D. Cal. 2007) .......................................................................5

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  Nos. 1500, 02 Civ. 5575 (SWK), 2003 WL 21729842
  (S.D.N.Y. July 25, 2003) .............................................................................................5

*In re Delphi Corp.*,
  MDL No. 1725, 2007 WL 518626
  (E.D. Mich. Feb. 15, 2007) ........................................................................................10

*In re Elan Corp. Sec. Litig.*,
  No. 02 Civ. 865 RMB FM, 2004 WL 1303638
  (S.D.N.Y. May 18, 2004).............................................................................................5

*In re Fannie Mae Sec. Litig.*,
  362 F. Supp. 2d 37 (D.D.C. 2005) ...............................................................................5

*In re FirstEnergy Corp. Sec. Litig.*,
  229 F.R.D. 541 (N.D. Ohio 2004) ...................................................................... *passim*

*In re Huffy Corp. Sec. Litig.*,
  577 F. Supp. 2d 968 (S.D. Ohio 2008) ........................................................................8

*In re Initial Pub. Offering Sec. Litig.*,
  236 F. Supp. 2d 286 (S.D.N.Y. 2002)..........................................................................5

*In re Lantronix, Inc. Sec. Litig.*,
  No. CV 02-03-03899 PA, 2003 WL 22462393
  (C.D. Cal. Sept. 26, 2003)............................................................................................5

**Page**

*In re Metro Sec. Litig.*,
No. CV-04-25-FVS, 2005 WL 940898
(E.D. Wash. Mar. 31, 2005).................................................................................10

*In re Odyssey Healthcare, Inc. Sec. Litig.*,
No. Civ. A. 3:04-cv-0844-N, 2005 WL 1539229
(N.D. Tex. June 10, 2005).....................................................................................5

*In re Refco, Inc. Sec. Litig.*,
No. 05 Civ. 8626 (GEL), 2006 WL 2337212
(S.D.N.Y. Aug. 8, 2006)........................................................................................5

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
220 F.R.D. 246 (D. Md. 2004)...............................................................................7

*In re SmarTalk Teleservices, Inc. Sec. Litig.*,
124 F. Supp. 2d 527 (S.D. Ohio 2000) ..................................................................8

*In re Spectranetics Corp. Sec. Litig.*,
No. 08-cv-02048, 2009 WL 3346611
(D. Colo. Oct. 14, 2009) ........................................................................................5

*In re Sunrise Senior Living, Inc. Deriv. Litig.*,
584 F. Supp. 2d 14 (D.D.C. 2008).........................................................................5

*In re Thornburg Mortg., Inc. Sec. Litig.*,
No. Civ. 07-0815-JB/WDS, 2010 WL 2977620
(D.N.M. July 1, 2010)............................................................................................5

*In re Vivendi Universal, S.A. Sec. Litig.*,
381 F. Supp. 2d 158 (S.D.N.Y. 2003)....................................................................5

*Mori v. Saito*,
802 F. Supp. 2d 520 (S.D.N.Y. 2011)....................................................................5

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
No. 4:08CV0160, 2010 WL 1628059
(N.D. Ohio Apr. 22, 2010).....................................................................................5

*Pension Trust Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*,
No. 12-CV-884-JPS, 2013 WL 1878943
(E.D. Wis. May 3, 2013)............................................................................... *passim*

*Podany v. Robertson Stephens, Inc.*,
350 F. Supp. 2d 375 (S.D.N.Y. 2004).....................................................................7

845099_1

**Page**

*Richman v. Goldman Sachs Grp., Inc.*,
    868 F. Supp. 2d 261 (S.D.N.Y. 2012)..................................................................................2, 3

*Ross v. Abercrombie & Fitch Co.*,
    No. 2:05-cv-0819, 2006 WL 2869588
    (S.D. Ohio Oct. 5, 2006) ..................................................................................5, 6, 7

*Ross v. Abercrombie & Fitch Co.*,
    501 F. Supp. 2d 1102 (S.D. Ohio 2007) ..........................................................6, 7

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
    No. 03 Civ. 3120 (LTS)(THK), 2005 U.S. Dist. LEXIS 23905
    (S.D.N.Y. Oct. 14, 2005) ..................................................................................5

*Sisk v. Guidant Corp.*,
    No. 1:05-cv-01658-SEB-WTL, 2007 WL 1035090
    (S.D. Ind. Mar. 30, 2007)..................................................................................5

*Waldman v. Wachovia Crop.*,
    No. 08 Civ. 2913 (SAS), 2009 WL 86763
    (S.D.N.Y. Jan. 12, 2009)..................................................................................10

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(b)(3)(B)..................................................................................1, 7

Federal Rules of Civil Procedure
    Rule 9(b) ..................................................................................7

## I.     INTRODUCTION

"[M]aintaining the discovery stay as to materials already provided to government entities does not further the policies behind the PSLRA."  *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004).[1]

In its opening papers, Plaintiff demonstrated "that particularized discovery is necessary to . . . prevent undue prejudice."  Motion at 5-7 (quoting 15 U.S.C. §78u-4(b)(3)(B)).  Plaintiff further established, and Defendants do not contest, that partially lifting the stay to permit discovery of documents Defendants have already produced to the government and other parties would cause no undue burden and is a sufficiently particularized request.  *Id.* at 7-9.  Rather, Defendants downplay the multiple criminal and civil investigations into their fraudulent conduct as "fairly routine," seek to impose a prerequisite to partially lifting the stay that does not exist, and argue that Plaintiff has filed this Motion to somehow retroactively "cure" its well-pled Complaint.  Defendants' arguments are without merit and Plaintiff's Motion should be granted.

## II.    ARGUMENT

### A.    Defendants Ignore the Exceptional Circumstances Surrounding Plaintiff's Claims

Plaintiff's Motion demonstrated the undue prejudice Plaintiff will suffer should it be denied access to documents already produced to various parties in related and parallel litigation and regulatory proceedings.  *Id.* at 5-7.  In response, Defendants suggest Plaintiff has failed to demonstrate undue prejudice because Defendants' fraud and the public and private outcry it generated are not "even unusual."  Defendants' Memorandum of Law in Opposition to Plaintiff's

---

[1]    Unless otherwise defined, all capitalized terms have the same meanings as defined in Plaintiff's Motion to Partially Lift the Discovery Stay (Dkt. No. 22) ("Motion").  Furthermore, all "¶_" and "¶¶_" references are to the Amended Complaint for Violations of the Federal Securities Laws (Dkt. No. 18) ("Complaint").  All emphasis has been added and citations omitted, unless noted otherwise.

- 1 -

Motion (Dkt. No. 31) ("Opp.") at 3.  Even if this sad assessment were accurate, Defendants' jaundiced view of corporate wrongdoing provides no occasion to deny partially lifting the discovery stay.

Defendants' fraud inflicted many millions of dollars in damages on the investing public while the Individual Defendants and 13 other top company insiders took advantage of the artificial inflation they created to unload more than $36 million worth of Big Lots stock at peak prices.  ¶¶3-27.  As Defendants' massive fraud began to unravel, several shareholders lodged lawsuits against the Defendants, charging them with fiduciary breach and violations of Ohio law.  Motion at 5-6.  Thereafter, *The Wall Street Journal*, Forbes and multiple other media organizations began probing Defendants' Class Period conduct.  ¶¶133-142.  With titles like "Big Sales by Big Lots Brass" and "Executives' Good Luck in Trading Own Stock," these articles focused on the unusual nature and suspicious timing of Defendants' insider trading.  *Id.*  Next, the DOJ and the SEC launched parallel criminal and civil investigations into whether Defendants had committed securities fraud during the Class Period.  ¶¶135, 140.  The same day that Big Lots disclosed these investigations, Fishman, the Company's CEO of more than eight years, announced his sudden and unexpected "retirement." ¶136.

Defendants brazenly dismiss their fraud and the harm it has inflicted on the investing public as "fairly routine," and argue that the maelstrom it has created cannot lead to undue prejudice.  Opp. at 2.  However, "[t]hese same circumstances and concerns" are ***exactly*** what courts have found to be "exceptional" and thus warrant lifting the PSLRA discovery stay.  *Pension Trust Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*, No. 12-CV-884-JPS, 2013 WL 1878943, at *1-*3 (E.D. Wis. May 3, 2013) (collecting cases).  Further, "[Defendants'] arguments in this respect are Orwellian. Words such as 'honesty,' 'integrity,' and 'fair dealing' apparently do not mean what they say; they do not set standards; they are mere shibboleths." *Richman v. Goldman Sachs Grp., Inc.*,

- 2 -

868 F. Supp. 2d 261, 277 n.8 (S.D.N.Y. 2012).  "If [Defendants'] claim" that multiple investigations and lawsuits into corporate fraud are not "even unusual," Opp. at 3, "the [corporate world] may be in more trouble than we recognize."  *Goldman Sachs*, 868 F. Supp. 2d at 277 n.8.

That Plaintiff will be subject to "undue prejudice" absent a lift of the discovery stay is clear.  Defendants admit they have "produced documents" in response to "various regulatory inquiries."[2] Opp. at 5.  As indicated in Plaintiff's Motion, the SEC alone has stated it has received eight boxes of production from Big Lots.  Declaration of Joseph F. Murray in Support of Plaintiff's Motion (Dkt. No. 22-1) ("Murray Decl."), Ex. A.  This "voluminous" production is presumably in addition to Defendants' production to the FBI, the DOJ and "various" other regulatory bodies.  Opp. at 5.  Where "defendants have already gathered the discovery materials sought by [Plaintiff], . . . exceptional circumstances exist, moving this case outside the intended ambit of the PSLRA discovery stay."  *Assisted Living*, 2013 WL 1878943, at *1.  Further, "courts have found that undue prejudice is present . . . where the defendants have submitted documentation in federal investigations."  *Id.* at *2.

In an attempt to diminish the threat of undue prejudice to Plaintiff, Defendants point to a communication from the SEC in one of these inquiries.  Opp. at 2.  However, Defendants fail to mention that the SEC communication explicitly stated that it "***must in no way be construed as indicating that the party has been exonerated or that no action may ultimately result from the staff's investigation***."  Declaration of Michael A. Paskin in Opposition to Plaintiff's Motion (Dkt. No. 31-1) ("Paskin Decl."), Ex. A at 3.  The SEC further warned that "***[t]he attempted use of such a***

---

[2]    Defendants curiously dispute the particular contents of the SEC production.  Opp. at 8. However, Defendants cannot dispute the relevancy of the production, whether it be "testimony, exhibits, [or] miscellaneous evidentiary materials."  Murray Decl., Ex. A.  Which form the relevant evidence takes is of no matter.

*communication as a purported defense in any action brought against the party, either civilly or criminally, would be clearly inappropriate and improper*." *Id.* Further, the SEC notice referenced only "Big Lots," and made no mention of closing any pending investigations against Fishman, Cooper, Haubiel and/or Johnson, the other Defendants in this action. Moreover, the **criminal** and other governmental inquiries into Defendants' conduct continue apace. *See FirstEnergy*, 229 F.R.D. at 545 (finding undue prejudice where documents had been produced to multiple government agencies).

In addition, Plaintiff is more than **seven months** behind plaintiffs in parallel derivative proceedings, as parties in that case completed briefing on the defendants' motion to dismiss on October 29, 2012. Motion at 6. "[C]ourts have found that undue prejudice is present . . . where the defendants faced separate lawsuits." *Assisted Living*, 2013 WL 1878943, at *2. That defendants have yet to begin production in that matter does not defeat a finding of undue prejudice here.[3] Opp. at 4-5, 8-9.

Because Plaintiff "is fighting this lawsuit in a rapidly shifting landscape, at an informational disadvantage when compared to the many other interested parties," it "would face undue prejudice if the Court were not to lift the stay." *Assisted Living*, 2013 WL 1878943, at *3.

### B. Defendants' Attempt to Impose Improper Prerequisites to Partially Lifting the Stay Should Be Rejected

Faced with a clear example of undue prejudice, Defendants argue that the Court can only grant a partial lift of the discovery stay if related proceedings are "at a sufficiently advanced stage" –

---

[3] Contrary to Defendants' assertion (Opp. at 2,4), Plaintiff did not claim that discovery in the parallel derivative action is proceeding, but only that Big Lots is the subject of such action, as well as numerous investigations and regulatory proceedings, all of which make up the relevant landscape, a fact that Defendants cannot, and do not, dispute. Motion at 5-6.

defined as having paid a settlement or in settlement negotiations – or defendants are party to bankruptcy proceedings.  Opp. at 5-9.  No such requirement exists.

The PSLRA's grant of discretion to lift the discovery stay "to prevent undue prejudice" includes no such procedural checkpoint.[4]  Indeed, in *FirstEnergy*, the Northern District of Ohio partially lifted the PSLRA discovery stay, granting the plaintiffs discovery as to "materials already produced by FirstEnergy to government agencies . . . ."  229 F.R.D. at 545.  Likewise, in *Assisted Living*, the Eastern District of Wisconsin granted the plaintiffs discovery as to "all documents disclosed to the SEC."  2013 WL 1878943, at *3.  Neither the defendants in *FirstEnergy* nor *Assisted Living* were in settlement negotiations, had paid a settlement, or were a party to bankruptcy proceedings.  Simply put, Defendants' purported additional threshold requirements find no support in law, and "maintaining the discovery stay as to materials already provided to government entities does not further the policies behind the PSLRA."  *FirstEnergy*, 229 F.R.D. at 545.

---

[4]  ***Not one*** of the litany of cases cited by Defendants imposed the type of arbitrary *per se* rule Defendants advance.  *See* Opp. at 3-10; *Ross v. Abercrombie & Fitch Co*., ("*Ross I*"), No. 2:05-cv-0819, 2006 WL 2869588 (S.D. Ohio Oct. 5, 2006); *Mori v. Saito*, 802 F. Supp. 2d 520 (S.D.N.Y. 2011); *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp*., No. 4:08CV0160, 2010 WL 1628059 (N.D. Ohio  Apr. 22, 2010); *In re Thornburg Mortg., Inc. Sec. Litig*., No. Civ. 07-0815-JB/WDS, 2010 WL 2977620 (D.N.M. July 1, 2010); *In re Spectranetics Corp. Sec. Litig*., No. 08-cv-02048, 2009 WL 3346611 (D. Colo. Oct. 14, 2009); *In re Sunrise Senior Living, Inc. Deriv. Litig*., 584 F. Supp. 2d 14 (D.D.C. 2008); *Frank v. Dana Corp*., No. 3:05CV7393, 2007 WL 1748887 (N.D. Ohio June 18, 2007); *Can., Inc. v. Aspen Tech., Inc*., No. 07 Civ. 1204 (JFK), 2007 U.S. Dist. LEXIS 51920 (S.D.N.Y. July 18, 2007); *In re Am. Funds Sec. Litig*., 493 F. Supp. 2d 1103 (C.D. Cal. 2007); *Sisk v. Guidant Corp*., No. 1:05-cv-01658-SEB-WTL, 2007 WL 1035090 (S.D. Ind. Mar. 30, 2007); *In re Refco, Inc. Sec. Litig*., No. 05 Civ. 8626 (GEL),  2006 WL 2337212 (S.D.N.Y. Aug. 8, 2006); *Sedona Corp. v. Ladenburg Thalmann & Co*., No. 03 Civ. 3120 (LTS)(THK), 2005 U.S. Dist. LEXIS 23905 (S.D.N.Y. Oct. 14, 2005); *In re Odyssey Healthcare, Inc. Sec. Litig*., No. Civ. A. 3:04-cv-0844-N, 2005 WL 1539229 (N.D. Tex. June 10, 2005); *In re Fannie Mae Sec. Litig*., 362 F. Supp. 2d 37 (D.D.C. 2005); *In re Elan Corp. Sec. Litig*., No. 02 Civ. 865 RMB FM, 2004 WL 1303638 (S.D.N.Y. May 18, 2004); *In re Lantronix, Inc. Sec. Litig*., No. CV 02-03-03899 PA, 2003 WL 22462393 (C.D. Cal. Sept. 26, 2003); *In re AOL Time Warner, Inc. Sec. & ERISA Litig*., Nos. 1500, 02 Civ. 5575 (SWK), 2003 WL 21729842 (S.D.N.Y. July 25, 2003); *In re Vivendi Universal, S.A. Sec. Litig*., 381 F. Supp. 2d 158 (S.D.N.Y. 2003); *In re Initial Pub. Offering Sec. Litig.,* 236 F. Supp. 2d 286 (S.D.N.Y. 2002).

Defendants concede that "the case at bar *closely resembles*" *Ross I*, 2006 WL 2869588 (Opp. at 9), a case in which Judge Sargus ultimately *denied* the defendants' motion to dismiss in its entirety, *see Ross v. Abercrombie & Fitch Co.* ("*Ross II*"), 501 F. Supp. 2d 1102, 1120 (S.D. Ohio 2007) (denying defendants' motion to dismiss). And, while Magistrate Judge Kemp had previously denied the plaintiffs' motion to lift the discovery stay, Judge Kemp did so because "the only thing which ha[d] happened, apart from the ordinary litigation activities, is that the SEC ha[d] opened a formal investigation and requested documents be produced to it." *Ross I*, 2006 WL 2869588, at *3. Here, by contrast, Defendants have *already* produced "voluminous" documents to *multiple* government agencies and parallel private litigation completed dispositive briefing more than seven months in advance of the present proceedings. Motion at 5-6. Thus, the risk of undue prejudice is much higher here than in *Ross I* and, in fact, mirrors that found sufficient to warrant lifting the discovery stay in *FirstEnergy*. *See id.*, 229 F.R.D. at 545 (finding fact that the defendants had already produced documents to multiple government agencies sufficient to warrant partially lifting the discovery stay).

### C. Plaintiff's Well-Pled Complaint Needs No "Cure," as Evidenced by the Fact It Was Filed Long *Before* Plaintiff Moved to Lift the Discovery Stay

Defendants parrot the baseless and misleading arguments made in their Motion to Dismiss the Complaint (Dkt. No. 28) ("Motion to Dismiss") to question the sufficiency of the Complaint. Opp. at 11-13. However, Plaintiff's Complaint needs no "cure." Indeed, the very fact that Plaintiff chose *not* to move to lift the discovery stay prior to filing its Complaint further demonstrates its sufficiency.

It is beyond dispute that "Plaintiff's complaint alleges facts that it found independently in support of its claims." *FirstEnergy*, 229 F.R.D. at 545. As will be amply demonstrated in Plaintiff's opposition papers to Defendants' Motion to Dismiss, the Complaint more than satisfies every

- 6 -

applicable pleading requirement, including the requirements of the Securities Exchange Act of 1934,

the PSLRA and Fed. R. Civ. P. 9(b). Defendants' attempt to recast Plaintiff's Motion as a mere

fishing expedition intended to "cure" Plaintiff's well-pled Complaint (Opp. at 11-13), ignores the

obvious fact that the present Motion was filed *long after* the Complaint was submitted. And, the

initial complaint in this action preceded by *several months* the disclosure of any of the regulatory

and criminal proceedings described herein. *See* Complaint for Violation of the Federal Securities

Laws (Dkt. No. 1). Furthermore, Plaintiff filed the operative Complaint on April 4, 2013, weeks

*before* it filed the present Motion. *See* Complaint (Dkt. No. 18). Thus, Defendants' claim that

Plaintiff is relying on the Motion to somehow retroactively "fill in . . . details" of the Complaint

makes no sense. Opp. at 12. Indeed, the very fact that Plaintiff *could* have moved to lift the

discovery stay prior to filing its Complaint, *but chose not to*, further demonstrates the Complaint's

sufficiency. *See* 15 U.S.C. §78u-4(b)(3)(B).[5]

---

[5] Defendants' unfounded claim that a court must have "comfort" that a complaint will survive a motion to dismiss in order to grant a partial lift of the PSLRA stay simply misstates applicable law. Opp. at 11. Courts evaluate the sufficiency of a complaint under a completely different standard than that used to determine whether a discovery stay should be lifted pursuant to 15 U.S.C. §78u-4(b)(3)(B). Indeed, Defendants' citation to *Ross I*, 2006 WL 2869588 (Opp. at 9), provides a case in point: there the court denied a motion to lift the discovery stay only to later allow the complaint to proceed past the pleadings stage in its entirety, *see Ross II*, 501 F. Supp. 2d at 1120 (denying defendants' motion to dismiss). Neither *Frank*, 2007 WL 1748887 nor *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375 (S.D.N.Y. 2004) support Defendants' contention that a court must "prejudge" the outcome of a motion to dismiss in order to grant lifting the discovery stay. Opp. at 11. Indeed, *Podany*, 350 F. Supp. 2d 375, involved a situation *after* dismissal had already been granted. Defendants other purported authorities all involved courts *granting* a motion to lift the discovery stay (Opp. at 9-10), and consequently stands for the unremarkable proposition that if the Court feels Plaintiff will be entitled to discovery anyways there is less reason to maintain the stay. *See, e.g.*, *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 251 (D. Md. 2004) ("[T]he apparent strength of the plaintiffs' case may factor in the court's determination of the necessity of discovery under the PSLRA."). As a result, the strength of Plaintiff's case *further supports* partially lifting the discovery stay here.

845099_1

Nevertheless, Defendants rehash some of the baseless arguments made in their Motion to Dismiss in a desperate attempt to obscure the specific factual allegations of their wrongdoing contained in the Complaint. Opp. at 11-13. However, Defendants' misleading and meritless attacks find no more support in the law or the facts the second time around. First, Defendants' argument that every one of their false and misleading statements is protected by the Safe Harbor provision (Opp. at 12) must fail for several reasons, including because: (i) nearly all of the actionable statements alleged in the Complaint are statements of ***present and historical fact and/or omissions***, which by definition fall outside the Safe Harbor; (ii) Defendants failed to provide the "meaningful cautionary language" necessary for Safe Harbor protection; and (iii) Defendants' actual knowledge of their fraud renders the Safe Harbor inapplicable. *See, e.g.*, *Helwig v. Vencor, Inc.*, 251 F.3d 540, 556-59 (6th Cir. 2001), *overruled on other grounds*, *Frank v. Dana Corp.*, ("*Dana II*"), 646 F.3d 954 (6th Cir. 2011); *In re Huffy Corp. Sec. Litig.*, 577 F. Supp. 2d 968, 1013-15 (S.D. Ohio 2008). Second, Defendants' claim that the Complaint "provides no details" of internal reports contradicting Defendants' Class Period statements (Opp. at 12), "is simply an inaccurate characterization of the Class Complaint." *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 527, 543 (S.D. Ohio 2000). In truth, the Complaint lays out in exacting detail precisely how Big Lots' internal sales reports and meetings apprised each of the Defendants of serious problems to Big Lots' business "***as they occurred***."[6] ¶151. Indeed, the Sixth Circuit recently reversed the dismissal of a complaint that

---

[6]   For example, the Complaint describes, in enormous detail, the internal reports regularly reviewed by each Defendant, specifying what information the reports contained (*e.g.*, hourly sales "by region, by district, by store, and by merchandise category," daily "sales by region, sales to plan and comparable store sales" "by division, department and classification," weekly store sales "by state, by region, and by merchandise category and . . . comparable store sales") (¶¶47, 151); who oversaw their preparation (*e.g.*, Defendant Johnson) (¶151); when they were delivered (*e.g.*, "3 a.m. every morning" for daily reports, "Monday morning between 10:30 and 11:00 a.m." for weekly reports) (¶151); the delivery and storage systems used (*e.g.*, "'Lotus Notes' narrowcast messaging system," "Company data warehouse known as 'Donald'") (¶151); who received and regularly reviewed the

alleged this **exact type** of information with respect to the defendants. *Dana II*, 646 F.3d at 954-60 (holding that regular receipt of reports which contained information such as "sales, cost of materials, and inventory" and attendance at weekly meetings supported a strong inference of scienter). When these allegations are viewed "collectively," as they must be, and together with the Complaints' numerous other well-pled facts indicative of scienter – such as Defendants' highly unusual and extremely suspicious insider trading (¶¶15-18, 65, 81-82, 155-60) – there can be no doubt that the Complaint has stated a claim upon which relief may be granted. *See Dana II*, 646 F.3d at 961 (holding that courts cannot "parse out" individual scienter allegations when reviewing a motion to dismiss and finding complaint should have been allowed past the pleadings stage).

Defendants' argument that the Motion was filed to retroactively "cure" Plaintiff's well-pled Complaint goes against the law, the facts and commonsense, and should thus be rejected.

### D. Defendants' Concession that Plaintiff's Request Would Present No Undue Burden and Is Sufficiently Particularized Further Supports a Partial Lift of the Discovery Stay

Defendants do not contest that a partial lift of the stay would impose no undue burden. Opp at 10-11 n.5, 12 ("minimal discovery burden"). Plaintiff seeks only those "documents defendants have already produced to the government and other parties in related proceedings." Motion at 3.

---

reports (*e.g.*, "each of the Individual Defendants – Cooper, Fishman, Haubiel and Johnson") (¶¶47, 151); and how and when the information in the reports reflected the downturn in Big Lots' sales results (*e.g.*, "by February 2012") (¶¶9, 47, 60, 151). Equally important, the Complaint details Defendants' private huddles: when they met (*e.g.*, ("Every Monday, from noon to 2:30 p.m.") (¶151); where they met (*e.g.*, "the Company's Executive Board Room") (¶151); what they talked about (*e.g.*, "Big Lots' business performance for the previous week and business prospects[], with top priority given to any downward sales trends or problems identified within the Company's merchandising operations") (¶¶47, 151); how and when they tracked Big Lots' deterioration (*e.g.*, beginning "late 2011") (¶¶9, 46-47, 58, 151); and how this valuable information was communicated up the chain of command (*e.g.*, "Divisional managers reported [the contents of weekly merchandising meetings] to one of Big Lots' two General Merchandising Managers who reported to Chief Merchandising Officer Wurl. Wurl, in turn, reported to CEO Fishman") (¶¶46-47, 151).

845099_1

Defendants cannot – and do not – dispute that because "the requested documents have already been found, compiled, and indexed, and Plaintiffs have agreed to pay all reasonable production costs, [Defendants] will not be unduly burdened by producing the documents to Plaintiff[]." *In re Metro Sec. Litig.*, No. CV-04-25-FVS, 2005 WL 940898, at *3 (E.D. Wash. Mar. 31, 2005). The minimal burden on Defendants to comply with Plaintiff's request weighs in favor of granting Plaintiff's Motion. *See Assisted Living*, 2013 WL 1878943, at *1 ("[G]iven the less burdensome prospect of discovery, . . . the PSLRA's discovery stay provisions would presumably apply with less force.").

Likewise, Defendants do not contest that Plaintiff's Motion is sufficiently particularized. Opp. at 10-11 n.5. Plaintiff "is requesting a relatively-limited amount of materials, all of which have been produced elsewhere and are accordingly subject to readily definable constraints." *Assisted Living*, 2013 WL 1878943, at *2. The highly particularized nature of Plaintiff's request further supports granting its Motion. *See First Energy*, 229 F.R.D. at 545; *Waldman v. Wachovia Crop.*, No. 08 Civ. 2913 (SAS), 2009 WL 86763, at *1 (S.D.N.Y. Jan. 12, 2009); *In re Delphi Corp.*, MDL No. 1725, 2007 WL 518626, at *6 (E.D. Mich. Feb. 15, 2007).

## III.    CONCLUSION

Because Plaintiff has shown undue prejudice as a result of exceptional circumstances, and Defendants do not contest that Plaintiff's request would present no undue burden and is sufficiently particularized, Plaintiff's Motion should be granted.

DATED:  June 4, 2013                      MURRAY MURPHY MOUL + BASIL LLP
                                          JOSEPH F. MURRAY, Trial Attorney (0063373)
                                          BRIAN K. MURPHY (0070654)


                                          s/ JOSEPH F. MURRAY
                                          JOSEPH F. MURRAY, Trial Attorney (0063373)

- 10 -

1533 Lake Shore Drive
Columbus, OH  43204
Telephone:  614/488-0400
614/488-0401 (fax)
E-mail: murray@mmmb.com
E-mail: murphy@mmmb.com

Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID W. MITCHELL
AUSTIN P. BRANE
BRIAN COCHRAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:  davidm@rgrdlaw.com
E-mail:  abrane@rgrdlaw.com
E-mail:  bcochran@rgrdlaw.com

Lead Counsel for Plaintiff

SULLIVAN, WARD, ASHER & PATTON, P.C.
CYNTHIA J. BILLINGS
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI  48075-1000
Telephone:  248/746-0700
248/746-2760 (fax)
E-mail:  cbillings@swappc.com

BOTTINI & BOTTINI, INC.
FRANCIS A. BOTTINI
YURY A. KOLESNIKOV
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA  92037
Telephone:  858/914-2001
858/914-2002 (fax)
E-mail:  fbottini@bottinilaw.com
E-mail:  ykolesnikov@bottinilaw.com

Additional Counsel for Plaintiff

- 11 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 4, 2013.

s/ JOSEPH F. MURRAY
JOSEPH F. MURRAY,
Trial Attorney (0063373)

MURRAY MURPHY MOUL + BASIL LLP
1533 Lake Shore Drive
Columbus, OH  43204
Telephone:  614/488-0400
614/488-0401 (fax)

E-mail: murray@mmmb.com

# Mailing Information for a Case 2:12-cv-00604-MHW-NMK

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Austin P Brane**
  abrane@rgrdlaw.com

- **Timothy G Cameron**
  tcameron@cravath.com,mao@cravath.com,dlisner@cravath.com

- **Brian E Cochran**
  bcochran@rgrdlaw.com

- **William Darrell Kloss , Jr**
  wdklossjr@vorys.com,lmhilty@vorys.com

- **John Joseph Kulewicz**
  jjkulewicz@vssp.com

- **David W Mitchell**
  davidm@rgrdlaw.com,e_file_sd@rgrdlaw.com,ldeem@rgrdlaw.com

- **Joseph F Murray**
  murray@mmmb.com,tiffany@mmmb.com

- **Michael Paskin**
  mpaskin@cravath.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)