# EXHIBIT E

SCHEDULE 14A

(Rule 14a-101)

INFORMATION REQUIRED IN PROXY STATEMENT

SCHEDULE 14A INFORMATION

Proxy Statement Pursuant to Section 14(a) of the
Securities Exchange Act of 1934 (Amendment No. )

Filed by the Registrant [X]
Filed by a Party other than the Registrant [ ]

Check the appropriate box:

| | | | |
|---|---|---|---|
| [ ] | Preliminary Proxy Statement | [ ] | Soliciting Material Under Rule 14a-12 |
| [ ] | Confidential, For Use of the Commission Only (as permitted by Rule 14a-6(e)(2)) | | |
| [X] | Definitive Proxy Statement | | |
| [ ] | Definitive Additional Materials | | |

Big Lots, Inc.
(Name of Registrant as Specified In Its Charter)

(Name of Person(s) Filing Proxy Statement, if Other Than the Registrant)

Payment of Filing Fee (Check the appropriate box):
[X]   No fee required.
[ ]   Fee computed on table below per Exchange Act Rules 14a-6(i)(4) and 0-11.
    1)    Title of each class of securities to which transaction applies:

    2)    Aggregate number of securities to which transaction applies:

    3)    Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):

    4)    Proposed maximum aggregate value of transaction:

    5)    Total fee paid:

[ ]   Fee paid previously with preliminary materials:
[ ]   Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the form or schedule and the date of its filing.
    1)    Amount previously paid:

    2)    Form, Schedule or Registration Statement No.:

    3)    Filing Party:

    4)    Date Filed:

- *Align the interests of executives and shareholders through incentive-based compensation.*

We pay bonuses to executives under the 2006 Bonus Plan only if we meet or exceed corporate performance goals. Stock options awarded under the 2005 LTIP are valuable only if the market price of our common shares exceeds the exercise price during the period in which the stock options may be exercised. Restricted stock awarded under the 2005 LTIP vests only if we achieve a threshold corporate performance goal and its value is determined by the market price of our common shares. Accordingly, the realization and value of each of these elements of compensation is dependent upon our performance and/or the appreciation in the market value of our common shares.

In fiscal 2011, 81.7% of the total compensation earned by our named executive officers was derived from incentive compensation in the form of restricted stock and, except for Mr. Fishman, stock options, as each is reflected in the Summary Compensation Table. As discussed above in the Executive Summary section of this CD&A, our named executive officers did not receive bonuses for fiscal 2011 under the 2006 Bonus Plan (which are reported as non-equity incentive compensation in the Summary Compensation Table). We believe this demonstrates that our executive compensation program is closely aligned with the interests of our shareholders. We do not apply a specific formula or set a specific percentage at which incentive compensation is targeted or awarded for our named executive officers individually or as a group. Rather, the amount of total compensation that may be earned by each named executive officer through these forms of incentive compensation is subjectively determined based on each named executive officer's level of responsibility and potential impact on our operations and financial condition. The percentage of total compensation that a named executive officer may earn through these forms of incentive compensation generally increases as the executive's level of responsibility and impact on our business increases.

Following the end of each fiscal year, we calculate and review the at-risk incentive compensation awarded to each named executive officer in that fiscal year as a percentage of the total executive compensation awarded to our named executive officer in that fiscal year to evaluate how effectively our incentive compensation programs address our objective of aligning executive compensation with the interests of our shareholders. We compute this calculation as follows:

$$\text{At-Risk Incentive Compensation as a Percentage of Total Executive Compensation Awarded} = \frac{\text{At-Risk Incentive Compensation}}{\text{Total Executive Compensation Awarded}}$$

$$\text{At-Risk Incentive Compensation} = \text{Grant date fair value of stock awards} + \text{Grant date fair value of option awards} + \text{Maximum possible payout under non-equity incentive plan awards}$$

$$\text{Total Executive Compensation Awarded} = \text{Salary} + \text{Change in pension value and nonqualified deferred compensation earnings} + \text{All other compensation} + \text{At-Risk Incentive Compensation}$$

The components of at-risk incentive compensation are the potential values to our named executive officer upon award, as reflected in the Grants of Plan-Based Awards in Fiscal 2011 table following this CD&A. The components of the total executive compensation awarded (other than at-risk incentive compensation) are the amounts actually earned by the named executive officer, as reflected in the Summary Compensation Table following this CD&A.

- 29 -

==The following graph illustrates the total at-risk incentive compensation for each of our named executive officers as a percentage of the total executive compensation awarded for fiscal 2011:==



**Percentage of At-Risk Incentive Compensation**

As reflected in the above graph, a significant portion of total executive compensation awarded to our named executive officers is at-risk incentive compensation which we believe exemplifies the emphasis of our executive compensation program on  pay for performance.   In rewarding performance through at-risk incentive compensation, we believe we align the interests of our executives with those of our shareholders.

- *Manage executive compensation costs.*

    As we discuss in greater detail in the   Comparative Compensation Data   section of this CD&A, we compare the compensation paid to our executives with the compensation paid to similarly-situated executives at companies within our peer groups. While this comparison is not a determinative factor for setting compensation for our executives, we believe our review of the peer group data provides a market check and supports our belief that we do not overpay our executives and we effectively manage our executive compensation costs.

- *Focus on corporate governance.*

    Although the compensation committees of some companies make all compensation decisions with respect to their executives, we believe it is consistent with best practices in corporate governance to reach a consensus among all outside directors when establishing executive compensation each year. While the Committee takes the lead in formulating executive compensation, we seek the approval of our five additional outside directors before finalizing annual executive compensation to provide an additional check on the appropriateness of the amounts awarded.

*Elements of In-Service Executive Compensation*

The primary compensation elements for our named executive officers consist of salary, bonus opportunities under the 2006 Bonus Plan and equity awards made under the 2005 LTIP. In addition, our named executive officers are entitled to certain personal benefits and perquisites. We believe each of these elements and the mix of elements are necessary to provide a competitive executive compensation program and, as discussed above in   Philosophy and Objectives of our Executive Compensation Program   section of this CD&A, is consistent with our compensation philosophy and furthers our compensation objectives.

The Committee reviews each element at least annually. Individual and corporate performance directly impacts the elements and amount of compensation paid to our named executive officers. For instance, a named executive officer's failure to meet individual goals may lead to a reduction in his or her compensation, a failure to receive equity awards, or the termination of his or her employment. Conversely, excellent corporate performance may lead to greater bonus payouts and, possibly, to the achievement of financial goals that accelerate restricted stock vesting. The Committee and the other outside directors also have discretion, subject to the limitations contained in our bonus and equity plans and the executives' employment agreements, in setting named executive officers' salary, bonus opportunities and equity awards.

- *Salary*

Salary is cash compensation and is established annually for each named executive officer. A minimum salary for each named executive officer is set forth in his or her respective employment agreement, as described below in the "Elements of In-Service Executive Compensation — Employment Agreements" section of this CD&A. Salary adjustments are subjectively determined and are not formally tied to specific performance criteria. The Committee has not adopted any specific schedule of salary increases and makes adjustments to our named executive officers' respective salaries without regard to adjustments in the salaries of other executives.

- *Bonus*

Each named executive officer has the opportunity to earn an annual cash bonus under the 2006 Bonus Plan. Bonus payouts correspond to a percentage of each named executive officer's salary ("payout percentage") and are based on whether we achieve certain corporate performance amounts under one or more financial measures. The corporate performance amounts and financial measures are set annually at the discretion of the Committee and the other outside directors in connection with the Board's approval of our annual corporate operating plan, subject to the terms of the 2006 Bonus Plan and our named executive officers' employment agreements.

The lowest level at which we will pay a bonus under the 2006 Bonus Plan is referred to as the "floor." A bonus is not paid under the 2006 Bonus Plan if we do not achieve at least the corporate performance amount that earns a floor bonus. The level at which we generally plan our performance and the associated payout under the 2006 Bonus Plan is referred to as the "target." The maximum level at which we will pay a bonus under the 2006 Bonus Plan is referred to as the "stretch." If our performance in a fiscal year exceeds the minimum corporate performance amount that earns a floor bonus, there is a corresponding increase in the amount of the bonus (up to a maximum at the stretch bonus level). Bonuses paid to our named executive officers under the 2006 Bonus Plan are considered "Non-Equity Incentive Plan Compensation" in the Summary Compensation Table. See the "Bonus and Equity Plans" disclosure that follows the Summary Compensation Table for more information concerning the 2006 Bonus Plan.

- *Equity*

All equity awards granted to our named executive officers since January 1, 2006 have been issued under the 2005 LTIP. Although the 2005 LTIP allows us to issue various types of equity awards, we have granted only stock options and restricted stock under the 2005 LTIP. The stock options vest based on the passage of time or, if earlier, upon the executive's death or disability (provided such event occurs at least six months after the grant date). The restricted stock awarded to Mr. Fishman pursuant to his retention agreement vests based on the achievement of a corporate financial goal. The restricted stock awarded to the other named executive officers vests based on the achievement of the first trigger and then the achievement of the second trigger, the passage of time, or the executive's death or disability. See the "Bonus and Equity Plans" disclosure that follows the Summary Compensation Table for more information concerning the 2005 LTIP and the terms under which we have granted equity awards.

- *Personal Benefits and Perquisites*

The following are the personal benefits and perquisites that are generally provided only to employees at or above the vice president level: (1) coverage under the Big Lots Executive Benefit Plan ("Executive Benefit Plan"); (2) enhanced long-term disability insurance coverage; and (3) use of an automobile or payment of an automobile allowance. Mr. Fishman is also permitted to make limited non-business use

- 31 -

**ANNUAL REPORT ON FORM 10-K**

Our Form 10-K is included with this Proxy Statement in our 2011 Annual Report to Shareholders. Shareholders may also receive a copy of our Form 10-K without charge by writing to: Investor Relations, Big Lots, Inc., 300 Phillipi Road, Columbus, Ohio 43228-5311. Our Form 10-K may also be accessed in the Investor Relations section of our website (www.biglots.com) under the SEC Filings caption.

**PROXY SOLICITATION COSTS**

This solicitation of proxies is made by and on behalf of the Board. In addition to mailing the Notice of Internet Availability (or, if applicable, paper copies of this Proxy Statement, the Notice of Annual Meeting of Shareholders and the proxy card) to shareholders of record on the record date, the brokers and banks holding our common shares for beneficial holders must, at our expense, provide our proxy materials to persons for whom they hold our common shares in order that such common shares may be voted. Solicitation may also be made by our officers and regular employees personally or by telephone, mail or electronic mail. Officers and employees who assist with solicitation will not receive any additional compensation. The cost of the solicitation will be borne by us. We have also retained Georgeson Inc. to aid in the solicitation of proxies for a fee estimated to be $6,500, plus reasonable out-of-pocket expenses.

**OTHER MATTERS**

As of the date of this Proxy Statement, we know of no business that will be presented for consideration at the Annual Meeting other than as referred to in Proposal One, Proposal Two, Proposal Three and Proposal Four above. If any other matter is properly brought before the Annual Meeting for action by shareholders, common shares represented by proxies returned to us and not revoked will be voted on such matter in accordance with the recommendations of the Board.

By order of the Board of Directors,

CHARLES W. HAUBIEL II
*Executive Vice President, Legal and Real Estate,*
*General Counsel and Corporate Secretary*

April 10, 2012
Columbus, Ohio