UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| ALAN WILLIS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BIG LOTS, INC., et al.,<br><br>Defendants. | No. 2:12-cv-00604-MHW-NMK<br><br><u>CLASS ACTION</u> |

# LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND TO APPOINT CLASS REPRESENTATIVES AND CLASS COUNSEL AND MEMORANDUM OF LAW IN SUPPORT THEREOF

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY, Trial Attorney (0063373)
BRIAN K. MURPHY (0070654)
1114 Dublin Road
Columbus, OH 43215
Telephone: 614/488-0400
614/488-0401 (fax)

Liaison Counsel

ROBBINS GELLER RUDMAN & DOWD LLP
DAVID W. MITCHELL
LUCAS F. OLTS
AUSTIN P. BRANE
BRIAN E. COCHRAN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiff

[Additional counsel appear on signature page.]

TO: ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that Lead Plaintiff City of Pontiac General Employees' Retirement System ("Plaintiff") hereby moves this Court for an order certifying under Fed. R. Civ. P. 23, a class consisting of the following:

> All persons who purchased the common stock of Big Lots, Inc. between March 2, 2012 and August 23, 2012, and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

Plaintiff also seeks an order appointing itself and Teamsters Local 237 Additional Security Benefit Fund as Class Representatives and Robbins Geller Rudman & Dowd LLP as Class Counsel for the Class. This motion is based upon this motion and the accompanying memorandum of law in support thereof, the declaration of Joseph F. Murray, the expert report of Bjorn I. Steinholt, CFA, the declaration of Walter Moore, the declaration of Mitch Goldberg and such other evidence and argument as the Court may consider.

DATED: May 27, 2016

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY, Trial Attorney (0063373)
BRIAN K. MURPHY (0070654)

s/ JOSEPH F. MURRAY
JOSEPH F. MURRAY, Trial Attorney (0063373)

1114 Dublin Road
Columbus, OH 43215
Telephone: 614/488-0400
614/488-0401 (fax)
E-mail: murray@mmmb.com
E-mail: murphy@mmmb.com

Liaison Counsel

ROBBINS GELLER RUDMAN
& DOWD LLP
DAVID W. MITCHELL
LUCAS F. OLTS
AUSTIN P. BRANE
BRIAN E. COCHRAN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
E-mail: davidm@rgrdlaw.com
E-mail: lolts@rgrdlaw.com
E-mail: abrane@rgrdlaw.com
E-mail: bcochran@rgrdlaw.com

Lead Counsel for Plaintiff

SULLIVAN, WARD, ASHER & PATTON, P.C.
CYNTHIA J. BILLINGS
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48075-1000
Telephone: 248/746-0700
248/746-2760 (fax)
E-mail: cbillings@swappc.com

BOTTINI & BOTTINI, INC.
FRANCIS A. BOTTINI
YURY A. KOLESNIKOV
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Telephone: 858/914-2001
858/914-2002 (fax)
E-mail: fbottini@bottinilaw.com
E-mail: ykolesnikov@bottinilaw.com

Additional Counsel for Plaintiff

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....................1

II. STATEMENT OF FACTS ....................2

A. Summary of Alleged Fraud ....................2

B. The Proposed Class Representatives ....................3

III. THE PROPOSED CLASS SATISFIES RULE 23 ....................4

A. Standards for Certification ....................5

B. This Case Meets the Requirements of Rule 23(a) ....................6

1. The Class Is Numerous ....................6

2. Common Questions of Law and Fact Exist for All Class Members ....................7

3. The Proposed Representatives' Claims Are Typical of the Class ....................8

4. Lead Plaintiff and Local 237 Will Fairly and Adequately Protect the Interests of the Class ....................9

C. This Case Satisfies the Requirements of Rule 23(b)(3) ....................11

1. Legal Standard Set Forth in *Halliburton II* ....................11

2. Common Questions of Law and Fact Predominate ....................12

a. Big Lots Stock Traded in an Efficient Market ....................13

b. Plaintiffs Are Also Entitled to Rely on the *Affiliated Ute* Presumption of Reliance ....................16

3. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action ....................18

D. The Court Should Appoint the Proposed Representatives' Choice of Counsel as Class Counsel Under Rule 23(g) ....................19

IV. CONCLUSION ....................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Affiliated Ute Citizens v. United States*,
406 U.S. 128 (1972) ........................................ 16, 17, 18

*Amchem Products v. Windsor*,
521 U.S. 591 (1997) ........................................ 2, 12

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
__ U.S. __, 133 S. Ct. 1184 (2013) ........................................ 4, 5, 12, 17

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ........................................ 4, 12

*Beard v. Dominion Homes Fin. Servs.*,
No. 2:06-cv-00137, 2007 U.S. Dist. LEXIS 71469 (S.D. Ohio Sept. 26, 2007) ........ 2, 7, 8, 12

*Bovee v. Coopers & Lybrand*,
216 F.R.D. 596 (S.D. Ohio 2003) ........................................ *passim*

*Burges v. BancorpSouth, Inc.*,
No. 3-14-1564, 2016 U.S. Dist. LEXIS 56802 (M.D. Tenn. Apr. 28, 2016) ........ 5, 13

*Castillo v. Envoy Corp.*,
206 F.R.D. 464 (M.D. Tenn. 2002) ........................................ 5, 18

*Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422 (N.D. Ohio 2008) ........ 8

*Daffin v. Ford Motor Co.*,
458 F.3d 549 (6th Cir. 2006) ........................................ 6

*Erica P. John Fund, Inc. v. Halliburton Co.*,
__ U.S. __, 131 S. Ct. 2179 (2011) ........................................ 11, 12

*Garden City Emps. Ret. Sys. v. Psychiatric Solutions, Inc.*,
No. 3:09-00882, 2012 U.S. Dist. LEXIS 44445 (M.D. Tenn. Mar. 29, 2012) ........ *passim*

*Halliburton Co. v. Erica P. John Fund, Inc.*,
__ U.S. __, 134 S. Ct. 2398 (2014) ........................................ 11, 12

*In re Accredo Health Inc. Sec. Litig.*,
No. 03-2216 DP, 2006 U.S. Dist. LEXIS 97621 (W.D. Tenn. Mar. 7, 2006) ........ *passim*

*In re Cardinal Health Inc. Sec. Litig*
528 F. Supp. 2d 752 (S.D. Ohio 2007) ........................................ 19

**Page**

*In re Cms Energy Erisa Litig.*,
225 F.R.D. 539 ( E.D. Mich. 2004) ....4

*In re Direct Gen. Corp. Sec. Litig.*,
No. 3:05-0077, 2006 U.S. Dist. LEXIS 56128 (M.D. Tenn. Aug. 8, 2006)....5, 6, 8, 18

*In re Enron Corp. Sec.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) ....19

*In re Enron Corporation Securities Litig.*,
2005 U.S. Dist. Lexis 3987 (E.D. Tex. Dec. 22, 2005) ....10, 19

*In re Facebook, Inc., IPO & Sec. & Derivative Litig.*,
986 F. Supp. 2d 428 (S.D.N.Y. 2013)....17

*In re HealthSouth Corp. Sec. Litig.*,
261 F.R.D. 616 (N.D. Ala. 2009)....15

*In re Smith Barney Transfer Agent Litig.*,
290 F.R.D. 42 (S.D.N.Y. 2013) ....17

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013), *cert. denied*, __ U.S. __, 134 S. Ct. 1277 (2014)....11, 14

*Kennedy v. Tallant*,
710 F.2d 711 (11th Cir. 1983) ....5

*Levine v. SkyMall, Inc.*,
No. civ-99-166-PHX-ROS, 2001 U.S. Dist. LEXIS 24705
(D. Ariz. May 24, 2001)....14, 15

*Plumbers & Pipefitters Nat'l Pension Fund v. Burns*,
967 F. Supp. 2d 1143 (N.D. Ohio 2013)....14, 16

*Ret. Sys. v. Sonoco Prods. Co.*,
270 F.R.D. 247 (D.S.C. 2010) ....14

*Rikos v. P&G*,
799 F.3d 497 (6th Cir. 2015), *cert. denied*, __ U.S. __, 136 S. Ct. 1493 (2016)....5, 7, 8, 11

*Rikos v. P&G*,
No. 1:11-cv-226, 2014 U.S. Dist. LEXIS 109302 (S.D. Ohio June 19, 2014),
*affd*, 799 F.3d 497 (6th Cir. Ohio 2015) ....8, 9

*Ross v. Abercrombie & Fitch Co.*,
257 F.R.D. 435 (S.D. Ohio 2009) .... *passim*

**Page**


*Schleicher v. Wendt*,
618 F.3d 679 (7th Cir. 2010) ....................8, 13

*Smilovitz v. First Solar, Inc.*,
295 F.R.D. 423 (D. Ariz. 2013) ....................14

*Stoller v. Baldwin-United Corp.*,
C-1-82-1438, 1985 U.S. Dist. LEXIS 19241 (S.D. Ohio June 4, 1985)....................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................4

*Van Dyke v. Sovereign Int'l Asset Mgmt.*,
No. 4:09CV2823, 2011 U.S. Dist. LEXIS 113227 (N.D. Ohio Sept. 30, 2011) ....................16

*Vinh Nguyen v. Radient Pharm. Corp.*,
287 F.R.D. 563 (C.D. Cal. 2012)....................15

*Wilkof v. Caraco Pharm. Labs., Ltd.*,
280 F.R.D. 332 (E.D. Mich. 2012) ....................5, 13, 14

*Willis v. Big Lots, Inc.*,
No. 2:12-cv-604, 2016 U.S. Dist. LEXIS 8028 (S.D. Ohio Jan. 21, 2016)....................2, 3

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78j(b).................... *passim*
78t(a).................... *passim*
§78t-1 .................... *passim*
§78u-4 ....................10

Federal Rules of Civil Procedure
Rule 23.................... *passim*
Rule 23(a).................... *passim*
Rule 23(a)(1) ....................6
Rule 23(a)(2) ....................7, 8, 12
Rule 23(a)(3) ....................8
Rule 23(a)(4) ....................10
Rule 23(b) ....................5
Rule 23(b)(3).................... *passim*
Rule 23(g) ....................19
Rule 23(g)(1)(A) ....................19

17 C.F.R.
§240.10b-5 ....................4, 11, 13

# MEMORANDUM OF POINTS AND AUTHORITIES

City of Pontiac General Employees' Retirement System ("Lead Plaintiff" or the "City of Pontiac") respectfully submits this memorandum of law in support of its motion for class certification and to appoint class representatives and class counsel.

## I. INTRODUCTION

Lead Plaintiff seeks certification of a plaintiff class, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), consisting of:

> All persons who purchased the common stock of Big Lots, Inc. between March 2, 2012 and August 23, 2012, and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

*See* ¶186[1]; Dkt. No. 49 at 84. Lead Plaintiff also seeks an Order: (i) appointing Lead Plaintiff and Teamsters Local 237 Additional Security Benefit Fund ("Local 237") as Class Representatives; and (ii) appointing the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.

This class action arises from numerous alleged false and misleading statements and omissions regarding Big Lots, Inc.'s ("Big Lots" or the "Company") sales results and merchandising operations and alleged insider trading by the Company's executive officers and directors on the basis of material non-public information during the proposed Class Period.[2] The Complaint alleges violations of §§10(b), 20(a) and 20A of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. 78j(b), 78t(a) and 78t-1.

This securities action is ideally suited for class certification because of the predominance of common issues of fact and the impracticability of bringing individual actions to redress a common wrong. As noted in the Advisory Committee comments to Rule 23:

---

[1] All paragraph references ("¶_") are to Lead Plaintiff's Amended Complaint for Violations of the Federal Securities Law ("Complaint"). Dkt. No. 18. Citations, footnotes and internal quotations omitted and emphasis added unless noted otherwise.

[2] The Class Period is March 2, 2012 through August 23, 2012.

> Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.

Fed. R. Civ. P. 23 Advisory Committee Notes (1966 Amendment). As this Court has noted, "'Predominance is a test readily met in certain cases alleging . . . securities fraud.'" *Beard v. Dominion Homes Fin. Servs.*, No. 2:06-cv-00137, 2007 U.S. Dist. LEXIS 71469, at *22-*23 (S.D. Ohio Sept. 26, 2007) (quoting *Amchem Products v. Windsor*, 521 U.S. 591, 625 (1997)); *see also Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 455 (S.D. Ohio 2009) ("'It is well-recognized that class actions are a particularly appropriate means for resolving securities fraud actions.'").

Lead Plaintiff respectfully submits that its motion for class certification should be granted.

## II. STATEMENT OF FACTS

### A. Summary of Alleged Fraud

This is a federal securities class action brought on behalf of all persons who purchased the common stock of Big Lots during the Class Period. The defendants are Big Lots; Stephen S. Fishman, Big Lots' former Chief Executive Officer, Chairman and President; Joe R. Cooper, Big Lots' former Chief Financial Officer ("CFO"); Charles W. Haubiel II, Big Lots' former General Counsel; and Timothy A. Johnson, Big Lots' former Senior Vice President of Finance and current CFO (collectively, "Defendants"). ¶¶1, 33-37. The Complaint alleges Defendants made false and misleading statements and omissions regarding Big Lots' business, results of operations and prospects and engaged in insider trading during the Class Period in violation of §§10(b), 20(a) and 20A of the Exchange Act. ¶¶2, 192-211.

The Court's January 21, 2016 order on Defendants' motion to dismiss upheld the majority of plaintiffs' allegations. *See Willis v. Big Lots, Inc.*, No. 2:12-cv-604, 2016 U.S. Dist. LEXIS 8028, at *1-*3 (S.D. Ohio Jan. 21, 2016) (granting in part and denying in part Defendants' motion to dismiss). In summary, the allegations upheld by the Court claim that during the Class Period Defendants misrepresented to the investing public that Big Lots' critical merchandising operations had substantially improved at the start of Big Lots' 2012 fiscal year[3] and that these improvements

[3] Big Lots' fiscal 2012 began January 29, 2012. ¶5 n.1.

were driving and would continue to drive substantial increases in the Company's same-store-sales and earnings results. ¶¶4-14. In truth, as Defendants knew or recklessly disregarded, Big Lots' merchandising operations had been significantly impaired, with the loss of merchandising personnel and missteps by the Company's recently-appointed Executive Vice President of Merchandising, Doug Wurl. These factors led to worsening sales trends throughout the Class Period and, ultimately, resulted in Big Lots missing its comparable store sales and earnings targets by wide margins. *Id.*

With the price of Big Lots stock artificially inflated, 17 Big Lots insiders – including the four individual defendants – sold off hundreds of thousands of their personal Big Lots shares and reaped tens of millions of dollars in insider trading proceeds. ¶¶15-17. On March 20, 2012, Fishman alone dumped 227,500 shares for more than $10 million in gross proceeds – nearly double the next highest single-day trade by a Company insider in Big Lots' history. ¶16. Unlike Company insiders, who were able to cash out at peak prices, public investors who purchased Big Lots stock during the Class Period suffered hundreds of millions of dollars in losses as the artificial inflation came out of the stock price in a series of corrective disclosures. ¶¶19-24.

**B. The Proposed Class Representatives**

On March 5, 2013, the Court appointed City of Pontiac as Lead Plaintiff and Robbins Geller as Lead Counsel for the proposed Class. *See* Dkt. No. 17. As Lead Plaintiff, City of Pontiac has expended substantial time and effort informing itself about this case and in vigorously prosecuting this action on behalf of the proposed Class. Lead Plaintiff has represented the Class by overseeing and communicating with appointed Lead Counsel while also staying apprised of the ongoing developments in the case. *See* Declaration of Walter Moore ("Moore Decl.") filed concurrently herewith, ¶¶7-8. Through Lead Counsel, Lead Plaintiff has conducted an extensive investigation into Defendants' conduct and successfully opposed Defendants' motion to dismiss. *See* Dkt. Nos. 22, 28, 31-33, 36, 38-39, 44, 46-47, 49. Since defeating Defendants' motion to dismiss, Lead Counsel has propounded discovery and, although these efforts are in the early stages, already obtained more than 9,000 pages of responsive documents.

As set forth herein, Lead Plaintiff proposes that it be appointed by the Court to serve as Class Representative. Lead Plaintiff is a 70-year-old pension fund that was established to provide pensions

to general employees of the City of Pontiac, Michigan. *See* Moore Decl., ¶2. Lead Plaintiff serves over 1,000 retirees and beneficiaries and has approximately $450 million in reserves. *See id.* Lead Plaintiff purchased shares of Big Lots common stock during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged in the Complaint. *See* Declaration of Joseph F. Murray ("Murray Decl.") filed concurrently herewith, Ex. 1.

Lead Plaintiff also proposes that the Court appoint Local 237 as an additional Class Representative. *See, e.g.*, *In re Cms Energy Erisa Litig.*, 225 F.R.D. 539, 542 ( E.D. Mich. 2004) (appointing a second class representative and certifying class). The addition of Local 237 supplements and further protects Lead Plaintiff's representation of the Class. Local 237 is a supplemental member annuity plan headquartered in New York City. *See* Declaration of Mitch Goldberg ("Goldberg Decl.") filed concurrently herewith, ¶3. It provides retirees with monthly retirement benefits and currently manages approximately $255 million in assets. Local 237 purchased shares of Big Lots common stock during the Class Period and, like Lead Plaintiff, suffered damages as a result of the violations of the federal securities laws alleged in the Complaint. *See id.*, Ex. 1.

## III. THE PROPOSED CLASS SATISFIES RULE 23

The Supreme Court has repeatedly recognized the importance of class actions in redressing wrongs committed under the federal securities laws. *See, e.g.*, *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, __ U.S. __, 133 S. Ct. 1184, 1201 (2013) ("Congress, the Executive Branch, and this Court . . . have 'recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions . . . .'"); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-14, 320 (2007) (same); *Basic Inc. v. Levinson*, 485 U.S. 224, 229-30, 246, 249-50 (1988) (finding certification of class alleging violation of §10(b) of the Exchange Act and Rule 10b-5 appropriate and noting, "Congress expressly relied on the premise that securities markets are affected by information, and enacted legislation to facilitate an investor's reliance on the integrity of those markets.").

Rule 23 allows for the effective enforcement of the securities laws for large numbers of individual investors who have suffered injuries but who do not have sufficient economic resources or

the individual interest to incur the expense or inconvenience of an individual lawsuit. Courts within this Circuit overwhelmingly find securities fraud actions appropriate for class treatment.[4] By providing a single forum to litigate the same or similar claims, a class action affords an indispensable mechanism for the conservation of judicial resources. *See, e.g.*, *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts.").

As demonstrated below, all of Rule 23's requirements are satisfied, and the proposed Class should be certified.

**A. Standards for Certification**

Certification under Rule 23 is a two-step process. First, a plaintiff "must show that all four of the prerequisites of Rule 23(a) are satisfied." *Ross*, 257 F.R.D. at 440. These prerequisites are (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. *See id.*; Rule 23(a). Second, a plaintiff must demonstrate that the action falls within at least one of the subcategories of Rule 23(b). In this action, Lead Plaintiff seeks certification under Rule 23(b)(3), which requires a showing that: (i) common questions of fact and law predominate over any individual questions; and (ii) a class action is superior to other available methods for adjudicating the controversy. *See Ross*, 257 F.R.D. at 451; Rule 23(b)(3).

A "'district court maintains substantial discretion in determining whether to certify a class.'" *Rikos v. P&G*, 799 F.3d 497, 504 (6th Cir. 2015), *cert. denied*, __ U.S. __, 136 S. Ct. 1493 (2016). Nevertheless, the "Supreme Court has made clear that 'Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.'" *Id.* at 505 (quoting *Amgen*, 133 S. Ct. at 1194-95 (2013)). "'Merits questions may be considered to the extent – ***but only to the extent*** – that they are relevant to determining whether the Rule 23 prerequisites for class certification are

4 *See, e.g.*, *Ross*, 257 F.R.D. 435; *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 600 (S.D. Ohio 2003); *Burges v. BancorpSouth, Inc.*, No. 3-14-1564, 2016 U.S. Dist. LEXIS 56802 (M.D. Tenn. Apr. 28, 2016); *Garden City Emps. Ret. Sys. v. Psychiatric Solutions, Inc.*, No. 3:09-00882, 2012 U.S. Dist. LEXIS 44445 (M.D. Tenn. Mar. 29, 2012); *Wilkof v. Caraco Pharm. Labs., Ltd.*, 280 F.R.D. 332 (E.D. Mich. 2012); *In re Direct Gen. Corp. Sec. Litig.*, No. 3:05-0077, 2006 U.S. Dist. LEXIS 56128 (M.D. Tenn. Aug. 8, 2006); *In re Accredo Health Inc. Sec. Litig.*, No. 03-2216 DP, 2006 U.S. Dist. LEXIS 97621 (W.D. Tenn. Mar. 7, 2006); *Castillo v. Envoy Corp.*, 206 F.R.D. 464 (M.D. Tenn. 2002).

satisfied.'" *Id.* (emphasis in original). Thus, while Lead Plaintiff has the burden of showing Rule 23 requirements are met, it does not have to show at the class certification stage that it will prevail on the merits of its claims. *See id.*; *Ross*, 257 F.R.D. at 441. Rather, Lead Plaintiff needs only show that the elements of the underlying claim, in this case violations of §§10(b), 20(a) and 20A of the Exchange Act, are capable of proof at trial through evidence that is common to the Class, which Lead Plaintiff has done here.

As demonstrated below, this action satisfies both the prerequisites of Rule 23(a) and the requirement of Rule 23(b)(3) in that common questions of law and fact predominate, and a class action is superior to alternative methods for the fair and efficient adjudication of Defendants' alleged violations of the federal securities laws. Accordingly, class certification is appropriate, and Lead Plaintiff respectfully submits that its motion should be granted.

### B. This Case Meets the Requirements of Rule 23(a)

#### 1. The Class Is Numerous

Rule 23(a)(1) requires the proposed class to be so numerous that joinder of all members is impracticable. "[T]here is no strict numerical test" and "'substantial' numbers usually satisfy the numerosity requirement." *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006). Importantly, "[t]he numerosity requirement 'is generally assumed to have been met in class action suits involving nationally traded securities.'" *Ross*, 257 F.R.D. at 442; *see also, e.g.*, *Accredo*, 2006 U.S. Dist. LEXIS 97621, at *17. "Plaintiffs need not demonstrate that it would be impossible to join all the putative class members; rather, they need simply show that joinder would be difficult and inconvenient." *Direct Gen.*, 2006 U.S. Dist. LEXIS 56128, at *8-*9.

Big Lots stock was actively traded on the NYSE during the Class Period. *See* Dkt. No. 57, ¶187. While the exact number of persons who purchased Big Lots stock during the Class Period is not currently known, Big Lots common stock had an average daily trading volume of more than 1.5 million shares and was owned by approximately 450 large institutional investors during the Class Period. *See* Murray Decl., Ex. 2 (Expert Report of Bjorn I. Steinholt, CFA ("Steinholt Rpt."), filed concurrently herewith), ¶¶21, 28. This evidence demonstrates that, collectively, the members of the Class likely number in the thousands and reside in many states. Joinder of parties so numerous and

widespread would therefore be burdensome and expensive and thus impracticable. The proposed Class satisfies the numerosity requirement.

### 2. Common Questions of Law and Fact Exist for All Class Members

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." To demonstrate commonality, "[t]he claims of the potential class members need not be factually identical." *Ross*, 257 F.R.D. at 442. Rather, "[t]he commonality test requires only a ***single issue*** common to all class members." *Psychiatric Solutions*, 2012 U.S. Dist. LEXIS 44445, at *93; *see also Beard*, 2007 U.S. Dist. LEXIS 71469, at *14. "The mere fact that questions peculiar to individual class members could remain does not necessarily defeat a finding of commonality." *Ross*, 257 F.R.D. at 442.

The proposed Class satisfies the Rule 23(a) commonality requirement. Defendants made uniform misrepresentations to the investing public. Defendants' material misrepresentations and omissions led to an artificially inflated price for Big Lots stock and caused injury to each Class member who purchased the stock during the Class Period. Defendants' scienter will be proven through evidence as to their own states of mind, which will not vary among class members. Thus, virtually all of the questions of law or fact at issue are common to City of Pontiac and Local 237 (the "Proposed Representatives"), and all other purchasers of Big Lots common stock during the Class Period. For instance, common questions of law and fact at issue include:

- Whether Defendants' acts and omissions violated the Exchange Act;
- Whether the documents, reports, filings, releases and statements disseminated to the Class by Defendants during the Class Period misrepresented facts about Big Lots' sales and earnings results and operational capabilities;
- Whether Defendants omitted material facts necessary to make their statements, in light of the circumstances under which they were made, not misleading;
- Whether investors suffered damages when artificial inflation in the price of Big Lots stock, created or maintained by Defendants' false statements, was eliminated; and
- Whether Defendants acted knowingly or recklessly in misrepresenting material facts.

Evidentiary proof of these claims will necessarily be common to all members of the Class. *See Rikos*, 799 F.3d at 505 (class claims need only "'a common contention . . . ***capable*** of classwide

resolution'" to satisfy commonality) (emphasis in original); *Schleicher v. Wendt*, 618 F.3d 679, 681 (7th Cir. 2010) (finding that these types of issues are common to class members).

In similar circumstances, "courts have found the commonality requirement 'easily' satisfied." *Ross*, 257 F.R.D. at 443 (collecting cases); *see also, e.g.*, *Bovee*, 216 F.R.D. at 608-09; *Psychiatric Solutions*, 2012 U.S. Dist. LEXIS 44445, at *92-*97; *Direct Gen.*, 2006 U.S. Dist. LEXIS 56128, at *10. "Questions of misrepresentation, materiality, and scienter are the 'paradigmatic common question[s] of law in a securities fraud class action.'" *Ross*, 257 F.R.D. at 443. Because absent Class members would have to prove identical facts and address identical legal issues if they pursued their claims individually, the proposed Class satisfies the commonality requirement of Rule 23(a)(2).

### 3. The Proposed Representatives' Claims Are Typical of the Class

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims and defenses of the class." A proposed class representative's claim is "typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and [the] claims are based on the same legal theory.'" *Rikos v. P&G*, No. 1:11-cv-226, 2014 U.S. Dist. LEXIS 109302, at *27 (S.D. Ohio June 19, 2014), *affd*, 799 F.3d 497 (6th Cir. Ohio 2015); *see also Beard*, 2007 U.S. Dist. LEXIS 71469, at *15. "'Typical does not mean identical, and the typicality requirement is liberally construed.'" *Rikos*, 2014 U.S. Dist. LEXIS 109302, at *27; *see also Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 429 (N.D. Ohio 2008) ("'The requirement of typicality is not onerous.'"). In cases alleging a common course of conduct or remedial theory, "'[t]he commonality and typicality requirements of Rule 23(a) tend to merge.'" *Rikos*, 799 F.3d at 509.

Here, the claims asserted by City of Pontiac and Local 237 are typical of, if not identical to, the claims of the other Class members. The City of Pontiac, Local 237 and the Class allege that Defendants violated §§10(b), 20(a) and 20A of the Exchange Act by making statements that misrepresented or omitted material facts. The claims of the Proposed Representatives and the Class involve the exact same security – Big Lots common stock. *See* Murray Decl., Ex. 1; Goldberg Decl., Ex. 1. As this Court found in appointing City of Pontiac as Lead plaintiff, "[City of Pontiac]

purchased shares of Big Lots during the proposed Class period, relied on the allegedly fraudulent information, and consequently suffered damages." Dkt. No. 17 at 8. The same is true for Local 237. *See* Goldberg Decl., Ex. 1. Thus, the Proposed Representatives' claims are typical of the Class.

**4. Lead Plaintiff and Local 237 Will Fairly and Adequately Protect the Interests of the Class**

Adequacy under Rule 23(a) requires that the proposed class representatives: (i) "'have common interests with unnamed members of the class'"; and (ii) appear willing to "'vigorously prosecute the interests of the class through qualified counsel.'" *Rikos*, 2014 U.S. Dist. LEXIS 109302, at *30. "The first requirement overlaps with the commonality and typicality requirements and acts to ensure that the representative have interests co-extensive with, rather than antagonistic to, the interests of the other class members." *Ross*, 257 F.R.D. at 447. The second requirement considers whether the class representative has "sufficient financial and personal involvement to encourage it to prosecute the action vigorously, and adequate resources and legal representation to meet the demands of maintaining the action." *Id.* at 450. Lead Plaintiff and Local 237 clearly satisfy both prongs.

The Proposed Representatives' interests are neither antagonistic to nor in conflict with the interests of the other Class members. To the contrary, City of Pontiac and Local 237 purchased Big Lots common stock during the Class Period and sustained damages as a result of the same alleged material misrepresentations and omissions as other Class members. *See* Murray Decl., Ex. 1; Goldberg Decl., Ex. 1. In prosecuting their claims to achieve maximum recovery, the Proposed Representatives will also vigorously prosecute the claims of other Class members. *See* Moore Decl., ¶¶7-8; Goldberg Decl., ¶¶5-6. Indeed, City of Pontiac has already been vigorously prosecuting this action to date as the Court-appointed Lead Plaintiff. No Class members have been or will be disadvantaged by City of Pontiac's and Local 237's representation of the action.

The Proposed Representatives also have a substantial financial stake in this litigation and have demonstrated a willingness and ability to take an active role in and control over the litigation to protect the interests of absent Class members. *See* Moore Decl., ¶¶6-9; Goldberg Decl., ¶¶4-8 & Ex. 1; Murray Decl., Ex. 1. As set forth in their respective declarations, the Proposed Representatives:

(i) are institutional investors with decades of experience serving in a fiduciary capacity; (ii) understand the requirements and responsibilities of serving as a class representative in a securities class action; (iii) have consulted with counsel in service of the Class; (iv) intend to do all that is necessary to protect the best interests of the Class and to supervise and monitor the progress of this litigation; (v) intend to obtain the largest recovery for the Class consistent with good faith and sound judgment; and (vi) will provide testimony at deposition and trial, if necessary. *See* Moore Decl.; Goldberg Decl. In addition, since the Court appointed the City of Pontiac as Lead Plaintiff on March 5, 2013, Lead Plaintiff has faithfully discharged its obligations and has protected and continues to protect the Class members' interests. *See* Dkt. No. 17. Through its experienced counsel, Lead Plaintiff has, *inter alia*, investigated and filed the Complaint, successfully opposed a motion to dismiss the Complaint and propounded discovery requests on Defendants and various non-parties. In short, the Proposed Representatives are precisely the type of institutional investors the Private Securities Litigation Reform Act was designed to promote as class representatives for securities fraud class actions such as this. *See Ross*, 257 F.R.D. at 450 (finding institutional investor satisfied Rule 23(a) adequacy requirements in securities fraud class action); *Accredo*, 2006 U.S. Dist. LEXIS 97621, at *15-*16 (same).

The Proposed Representatives are also adequate because they have retained attorneys with considerable experience in securities class actions and complex litigation. It is beyond dispute that Lead Counsel is competent and qualified to lead this action on behalf of the Class. As the Court noted in appointing Robbins Geller as Lead Counsel, the firm "has extensive experience in prosecuting securities class actions, including serving as lead counsel in *In re Enron Corporation Securities Litigation* [, 2005 U.S. Dist. Lexis 3987 (E.D. Tex. Dec. 22, 2005)], in which Robbins Geller obtained the largest recovery to date in a shareholder class action." Dkt. No. 17 at 9; *see also* Murray Decl., Ex. 3; §III.D, *infra*.

City of Pontiac and Local 237 satisfy the adequacy requirements of Rule 23(a)(4) as they have "vigorously prosecuted the interests of the class through qualified counsel" and will "continue to do so." *See Ross*, 257 F.R.D. at 451.

### C. This Case Satisfies the Requirements of Rule 23(b)(3)

In addition to meeting the prerequisites of Rule 23(a), this action also satisfies Rule 23(b)(3)'s requirements that common questions of law or fact predominate over individual questions and that a class action is the superior method to adjudicate this dispute. *See Rikos*, 799 F.3d at 509-510 & n.5.

#### 1. Legal Standard Set Forth in *Halliburton II*

In *Halliburton Co. v. Erica P. John Fund, Inc.*, __ U.S. __, 134 S. Ct. 2398, 2405 (2014) ("*Halliburton II*"), the Supreme Court reaffirmed *Basic's* fraud-on-the-market ("FOTM") presumption of reliance, "which holds that 'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations'" and that whenever an "investor buys or sells stock at the market price, his 'reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action.'" *Id.* at 2408. The Supreme Court also held that once plaintiffs established the presumption, it is indirect evidence of the price impact of defendants' false statements or omissions. *Id.* at 2417. Defendants may attempt to rebut that presumption at the class certification stage with direct evidence of a ***lack*** of any price impact. *Id.* at 2416. The Court held it is defendants' burden to show "the absence" of any price impact, and "[t]he Court's judgment, therefore, should impose no heavy toll on securities-fraud plaintiffs with tenable claims." *Id.* at 2417 (Ginsburg, J., concurring).

Addressing *Halliburton II*, the Sixth Circuit has held that the "Court's holding is limited to allowing rebuttal evidence on issues that affect predominance, not evidence that affects only the merits of a case." *Rikos*, 799 F.3d at 523; *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 858-59 (6th Cir. 2013), *cert. denied*, __ U.S. __, 134 S. Ct. 1277 (2014) (holding merits issues such as materiality not prerequisite to class certification). Accordingly, pursuant to Supreme Court authority, determinations as to materiality and loss causation should not be made at the class certification stage of litigation. *See Erica P. John Fund, Inc. v. Halliburton Co.*, __ U.S. __, 131 S. Ct. 2179, 2186 (2011) ("*Halliburton I*") ("Loss causation has no logical connection to the facts necessary to establish the efficient market predicate to the

fraud-on-the-market theory."); *Amgen*, 133 S. Ct. at 1197 (holding a plaintiff is "not required to prove the materiality" of "alleged misrepresentations and omissions at the class-certification stage").

### 2. Common Questions of Law and Fact Predominate

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. As the Supreme Court has held, "[p]redominance is a test readily met in certain cases alleging . . . securities [claims]." *Id.* at 625; *see also Basic*, 485 U.S. 224; *Beard*, 2007 U.S. Dist. LEXIS 71469, at *22-*23. Rule 23(b)(3) "does ***not*** require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.'" *Amgen*, 133 S. Ct. at 1196 (emphasis in original). Issues such as whether or not a defendant knowingly and/or recklessly made public material misstatements and/or omissions (*i.e.*, scienter, falsity and materiality) and whether the revelation(s) of the alleged fraud proximately caused that company's stock price to decline (*i.e.*, loss causation) involve common questions of law and fact that predominate over individualized ones. *Id.* at 1196-97, 1200; *see also Halliburton I*, 131 S. Ct. at 2186.

As the above analysis of the allegations under Rule 23(a)(2)'s commonality standard demonstrates (§III.B.2., *supra*), there is an overwhelming number of questions of law and fact common to the Proposed Representatives and the Class. Section 10(b) claims for securities fraud require proof of: (1) a misleading statement or omission; (2) made by a defendant; (3) while acting with scienter; (4) that is material; (5) that was relied upon; (6) causing damage to the plaintiff. *E.g.*, *Ross*, 257 F.R.D. at 439-40. The §§20(a) and 20A claims are predicated on Defendants' alleged violations of the securities laws. *Id.* It is readily apparent that, as in most such cases, each of these elements will be tried and proven (or rejected) by common evidence. *See Amchem*, 521 U.S. at 625; *Ross*, 257 F.R.D. at 452; *Bovee*, 216 F.R.D. at 607; *Psychiatric Solutions*, 2012 U.S. Dist. LEXIS 44445, at *105.

With respect to the element of reliance, the predominance requirement is usually met in a securities fraud class action, because the plaintiffs are entitled to rely on the FOTM presumption of reliance where the security trades in an efficient market. *Basic*, 485 U.S. at 241; *Halliburton II*, 134 S. Ct. at 2405, 2408; *Amgen*, 133 S. Ct. at 1192. "When a company's stock trades in a large and

efficient market, the contestable elements of the Rule 10b-5 claim reduce to false-hood, scienter, materiality, and loss." *Schleicher*, 618 F.3d at 682. "Because each investor's loss usually can be established mechanically, common questions predominate and class certification is routine, if a suitable representative steps forward." *Id.*

**a. Big Lots Stock Traded in an Efficient Market**

In the Sixth Circuit, courts generally use five factors to determine whether stocks trade in an efficient market: (1) whether there was large average weekly trading volume during the class period; (2) whether a significant number of securities analysts followed the company's stock during the class period; (3) whether the company's stock had market markers; (4) whether the company was entitled to file an S-3 Registration Statement; and (5) whether empirical facts showed a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price. *See, e.g.*, *Wilkof*, 280 F.R.D. at 343. "In order for the court to conclude that a market is efficient, 'it is not necessary that a stock satisfy all five factors.'" *Accredo*, 2006 U.S. Dist. LEXIS 97621, at *33.

Applying these factors, Big Lots stock traded in an efficient market. This is unsurprising given that Big Lots stock traded on the NYSE during the Class Period. *See* Dkt. No. 57, ¶187; Steinholt Rpt., ¶¶18-19. "Courts and commentators have noted that certain markets, such as the NYSE, are particularly efficient" and thus "'well suited for application of the fraud on the market theory.'" *Bovee*, 216 F.R.D. at 606 (collecting cases); *see also, e.g.*, *Ross*, 257 F.R.D. at 442 (noting NYSE is a "recognized efficient market"); *Burges*, 2016 U.S. Dist. LEXIS 56802, at *7-*8 (finding the NYSE to be a "well-developed and impersonal market" that "will instantaneously incorporate all publicly available information about a given security into the market price of that security"); *Wilkof*, 280 F.R.D. at 343 ("'[C]ertain markets [such as the NYSE] are developed and efficient for virtually all the securities trade there.'"). In support of its motion, Lead Plaintiff submits the Steinholt Report. Mr. Steinholt is a Managing Director at Caliber Advisors, Inc., an economic consulting and valuation firm, and has rendered an opinion on market efficiency in this case. *See* Steinholt Rpt., ¶¶1-7. Mr. Steinholt analyzed Big Lots stock using the relevant factors (as well as certain additional factors considered by some courts) and concluded that the market for Big Lots Stock was efficient

during the Class Period. *See* Steinholt Rpt., ¶¶7, 17-52, 59.[5] In light of this showing, the Class is entitled to the FOTM presumption of reliance, and thus the claims of the Class "will prevail or fail in unison" and predominance is satisfied.[6] *See Whirlpool*, 722 F.3d at 858.

**(1) Average Trading Volume**

During the Class Period, Big Lots common stock had a reported trading volume exceeding 185 million shares with a dollar trading volume of approximately $7.2 billion. *See* Steinholt Rpt., ¶21. The reported daily trading volume for Big Lots common stock was more than 1.5 million shares with an average daily dollar volume exceeding $58.9 million. *Id.*, ¶21. An average weekly trading volume that exceeds 2% triggers a "'strong presumption'" of market efficiency, while a 1% average warrants a "'substantial presumption.'" *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, 967 F. Supp. 2d 1143, 1149 (N.D. Ohio 2013); *see also, e.g.*, *Wilkof*, 280 F.R.D. at 343; *Accredo*, 2006 U.S. Dist. LEXIS 97621, at *22 n.3. Here, the benchmark was far exceeded, as Big Lots average weekly turnover rate during the Class Period was approximately 11% of its outstanding shares. *See* Steinholt Rpt., ¶22.

**(2) Number of Analysts**

The existence of numerous analysts is another indicator of an efficient market, as it indicates that new information is rapidly being disseminated to and acted upon by investors. Here, there were at least 16 different firms that covered Big Lots during the Class Period. *See* Steinholt Rpt., ¶24. This factor also supports a finding of market efficiency. *See, e.g.*, *Burns*, 967 F. Supp. 2d at 1162 (15 analysts sufficient); *City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*, 270 F.R.D. 247, 256 (D.S.C. 2010) (six analysts sufficient); *Levine v. SkyMall, Inc.*, No. civ-99-166-PHX-ROS, 2001 U.S. Dist. LEXIS 24705, at *15 (D. Ariz. May 24, 2001) (nine analysts sufficient). In addition, Big

---

5 Some district courts consider additional factors when determining whether a company's stock traded efficiently: (1) the company's market capitalization; (2) the stock's bid-ask spread; and (3) the "float," or number/percentage of shares not held by company insiders. *See, e.g.*, *Smilovitz v. First Solar, Inc.*, 295 F.R.D. 423, 432 n.3 (D. Ariz. 2013). These additional factors all favor certification. *See* Steinholt Rpt., ¶¶46-52.

6 Mr. Steinholt's event study methodology is also fully capable of adequately calculating damages on a class-wide basis at a later stage of the litigation. *See* Steinholt Rpt., ¶¶8, 53-58, 60. Mr. Steinholt's declaration sets forth the methodology that will be used to calculate damages. *Id.*

Lots' press releases and other Company events were widely followed and discussed in the media, including on *Bloomberg*, a major news source for the investment industry, which further indicates an efficient market. *See* Steinholt Rpt., ¶24.

**(3) Presence of Market Makers**

A market maker is an entity that agrees to purchase or sell securities on demand to support a liquid market for the shares. Market makers encourage liquidity, and the more traders there are the more efficient the market will be in responding to new information about the issuer, thereby incorporating that information into the market price. Transactions on the NYSE – a highly automated and efficient market – do not go through market makers, as the term was used in *Cammer*. *See* Steinholt Rpt., ¶27. Rather, transactions on the NYSE go through a designated market maker ("DMM") responsible for maintaining a fair, competitive, orderly and efficient market for the security assigned to them. *Id.* Because Big Lots was listed on the NYSE, it had its own DMM that was responsible for maintaining orderly trading for the Company's common stock, while continually showing the best bids and offers, and would enter into a transaction using its own capital if there was a willing buyer or seller with no counter party. *Id.* As a result, Big Lots' DMM had a substantial economic interest in closely monitoring all the publicly available information relating to the Company and enabled investors to trade continuously during market hours in an orderly and liquid market, thereby facilitating market efficiency. *Id.* There were also 12 supplemental liquidity providers for Big Lots common stock with volume of more than 1 million shares from March 2012 through August 2012. *Id.*, n.28. This factor also supports market efficiency. *See, e.g.*, *Vinh Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 573 (C.D. Cal. 2012) (dedicated DMM supports finding of market efficiency).

In addition to a dedicated DMM and numerous additional market makers, nearly all of Big Lots stock was owned by almost 450 institutional investors. *See* Steinholt Rpt., ¶28. It has been recognized that institutional investors also support a finding of market efficiency because such investors quickly analyze and act upon new company-specific information, thereby ensuring that it quickly becomes reflected in the stock price. *E.g.*, *In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616, 637 (N.D. Ala. 2009).

**(4) Eligibility to File an S-3 Registration Statement**

The Securities and Exchange Commission ("SEC") only permits the use of an S-3 short form Registration Statement by issuers whose securities are presumed to be actively traded and widely followed, as demonstrated by a history of making required SEC filings and a market capitalization in excess of $75 million. *E.g.*, *Accredo*, 2006 U.S. Dist. LEXIS 97621, at *24 n.4 ("[E]ligibility to file the S-3 form is predicated upon the SEC's belief that the market for the company's stock already operates efficiently."). As a public company with a market capitalization of approximately $2 billion, Big Lots was eligible to use the Form S-3 Registration Statement throughout the Class Period. *See* Steinholt Rpt., ¶¶30, 47. Accordingly, this factor also supports a finding that the market for Big Lots stock was efficient.

**(5) Reaction of Stock to Unexpected Corporate Events or Financial Releases**

Evidence that the price of a security regularly reacts to news about the issuer is strong evidence of an efficient market. *E.g.*, *Burns*, 967 F. Supp. 2d at 1155. Using an event study, Mr. Steinholt found that five out of Big Lots' six financial releases in 2012 were followed by statistically significant price movements at the 5% level. *See* Steinholt Rpt., ¶¶31-37. Mr. Steinholt calculated that the cumulative probability of five or more days out of six being statistically significant at the 5% level simply by chance is less than one in more than half a million. *See id.*, ¶37. Here, the event study test conducted by Mr. Steinholt demonstrates without any reasonable doubt that Big Lots stock reacted rapidly to new and unexpected information. *See id.*, ¶¶31-45.

**b. Plaintiffs Are Also Entitled to Rely on the *Affiliated Ute* Presumption of Reliance**

In an action involving material omissions, plaintiffs can rely on the *Affiliated Ute* presumption to establish reliance. *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972) ("All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision."); *Van Dyke v. Sovereign Int'l Asset Mgmt.*, No. 4:09CV2823, 2011 U.S. Dist. LEXIS 113227, at *19 (N.D. Ohio Sept. 30, 2011) ("reliance is presumed where the omitted information is material"). The *Affiliated*

*Ute* presumption applies to claims "involving primarily a failure to disclose." 406 U.S. at 153. In such circumstances, "positive proof of reliance is ***not*** a prerequisite to recovery." *Id.* at 153. Instead, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of [their] decision." *Id.* at 153-54.

The *Affiliated Ute* presumption reflects the reality that where information is omitted, "'reliance as a practical matter is impossible to prove.'" *In re Facebook, Inc., IPO & Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 469 (S.D.N.Y. 2013). As Judge Pauley in the Southern District of New York recently explained:

> The *Affiliated Ute* doctrine, in other words, is a pragmatic one. When a defendant's fraud consists primarily of omissions, "[r]equiring a plaintiff to show a speculative set of facts, *i.e.*, how he would have behaved if omitted material information had been disclosed, places an unrealistic evidentiary burden on the 10(b) plaintiff." . . . Accordingly, reliance is presumed when it would be impossible to prove.

*In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 47 (S.D.N.Y. 2013).

Furthermore, because materiality itself is a common question, a plaintiff need not prove materiality in order to invoke the *Affiliated Ute* presumption at the class certification stage; it need only be alleged. *See Amgen*, 133 S. Ct. at 1195. ("[B]ecause '[t]he question of materiality . . . is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor,' materiality can be proved through evidence common to the class."). Here, the Court has already found that Lead Plaintiff has alleged actionable omissions. In denying Defendants' motion to dismiss, the Court upheld statements Lead Plaintiff had alleged "were fraudulent for omitting and/or concealing information concerning the true state of Big Lots' performance and merchandising operations." Dkt. No. 49 at 30, 83-84.

Because the Complaint alleges actionable omissions, the Proposed Representatives and the Class are also entitled to rely on the *Affiliated Ute* presumption to establish reliance. *See Stoller v. Baldwin-United Corp.*, C-1-82-1438, 1985 U.S. Dist. LEXIS 19241, at *27 (S.D. Ohio June 4, 1985)

(holding that under either *Affiliated Ute* or FOTM presumption of reliance "proof of individual reliance will not be part of plaintiff's *prima facie* case" and certifying class).

**3. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action**

"Courts have generally considered that class actions are the most favorable means of adjudicating federal securities fraud claims." *Castillo*, 206 F.R.D. at 474; *see also Ross*, 257 F.R.D. at 455 ("'It is well-recognized that class actions are a particularly appropriate means for resolving securities fraud actions.'"); *Direct Gen.*, 2006 U.S. Dist. LEXIS 56128, at *21 (agreeing that "class actions are particularly appropriate means for resolving securities fraud litigation"). To determine whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the Court must consider the following:

> (A) the class members' interests in individually controlling the prosecution . . . of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*See* Fed. R. Civ. P. 23(b)(3). Here, each factor weighs strongly in favor of class certification.

In this case, the Class members' interests in individually controlling the prosecution of separate actions are likely minimal – Lead Counsel is not aware of any individual securities fraud actions that have been filed since this action was filed in July 2012. *See* Dkt. No. 1. Furthermore, because the harm each individual Class member suffered may be relatively small, the expense and burden to individual Class members of initiating litigation makes it virtually impossible for members of the Class to individually seek redress for the wrongs done to them. Additionally, the maintenance of a consolidated class action in this District ensures an efficient expenditure of resources as individual Class members are most likely located in geographically dispersed areas. Finally, the Proposed Representatives do not foresee any management difficulties that will preclude this action from being maintained as a class action. "Given that the proposed class consists of thousands of

members and that the legal claims are narrowed to whether defendants committed securities violations, a class action will be the most fair and efficient way to resolve this dispute." *Bovee*, 216 F.R.D. at 607; *see also, e.g.*, *Ross*, 257 F.R.D. at 455; *Psychiatric Solutions*, 2012 U.S. Dist. LEXIS 44445, at *105.

### D. The Court Should Appoint the Proposed Representatives' Choice of Counsel as Class Counsel Under Rule 23(g)

In deciding to appoint class counsel under Rule 23(g), the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's relevant experience and knowledge of applicable law; and (iii) the resources that counsel will commit to representing the class. *See* Rule 23(g)(1)(A). The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. *See id.* Robbins Geller satisfies these requirements.

Robbins Geller has committed extensive resources to investigating and prosecuting this litigation and will continue to do so. In addition to investigating the facts and filing the initial and amended complaints, Robbins Geller has successfully opposed a motion to dismiss and diligently pursued discovery. Further, its substantial experience and knowledge of applicable law is not in doubt. Robbins Geller has either served or is serving as lead counsel in many of the largest and most significant securities class actions in history. *See* Murray Decl., Ex. 3. Among its accomplishments, Robbins Geller (then known as Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia")) served as lead counsel in *In re Cardinal Health Inc. Sec. Litig.*, obtaining the then-largest securities settlement in the Sixth Circuit. In approving the requested attorneys' fees, Judge Marbley noted that "[t]he quality of representation in this case was superb." 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007). Similarly, after the firm secured the largest securities class action recovery in history in *Enron*, the trial court, commenting on counsel's "clearly superlative litigating and negotiating skills" and "outstanding reputation, experience, and success in securities litigation nationwide," observed: "[t]he experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country." *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 789-90, 797 (S.D. Tex. 2008). Just in the

last two years, Robbins Geller has secured several notable recoveries under the federal securities laws for investors in the Sixth Circuit, including: *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033 (M.D. Tenn.) ($215 million) and *Garden City Employees' Retirement System v. Psychiatric Solutions Inc.*, No. 3:09-cv-00882, (M.D. Tenn.) ($65 million).

In light of the firm's expertise and diligent prosecution of the litigation to date, the Proposed Representatives respectfully submit that the Court should honor their choice of counsel and appoint Robbins Geller as Class Counsel.

## IV. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (i) certify this action as a class action pursuant to Rule 23(a) and (b)(3); (ii) appoint City of Pontiac and Local 237 as representatives of the proposed Class; and (iii) appoint Robbins Geller as Class Counsel.

DATED: May 27, 2016

Respectfully submitted,

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY, Trial Attorney (0063373)
BRIAN K. MURPHY (0070654)

s/ JOSEPH F. MURRAY
JOSEPH F. MURRAY, Trial Attorney (0063373)

1114 Dublin Road
Columbus, OH 43215
Telephone: 614/488-0400
614/488-0401 (fax)
E-mail: murray@mmmb.com
E-mail: murphy@mmmb.com

Liaison Counsel

ROBBINS GELLER RUDMAN
& DOWD LLP
DAVID W. MITCHELL
LUCAS F. OLTS
AUSTIN P. BRANE
BRIAN E. COCHRAN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
E-mail: davidm@rgrdlaw.com
E-mail: lolts@rgrdlaw.com
E-mail: abrane@rgrdlaw.com
E-mail: bcochran@rgrdlaw.com

Lead Counsel for Plaintiff

SULLIVAN, WARD, ASHER & PATTON, P.C.
CYNTHIA J. BILLINGS
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48075-1000
Telephone: 248/746-0700
248/746-2760 (fax)
E-mail: cbillings@swappc.com

BOTTINI & BOTTINI, INC.
FRANCIS A. BOTTINI
YURY A. KOLESNIKOV
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Telephone: 858/914-2001
858/914-2002 (fax)
E-mail: fbottini@bottinilaw.com
E-mail: ykolesnikov@bottinilaw.com

Additional Counsel for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 27, 2016.

s/ JOSEPH F. MURRAY

JOSEPH F. MURRAY
Trial Attorney (0063373)

MURRAY MURPHY MOUL + BASIL LLP
1533 Lake Shore Drive
Columbus, OH 43204
Telephone: 614/488-0400
614/488-0401 (fax)

E-mail: murray@mmmb.com

# Mailing Information for a Case 2:12-cv-00604-MHW-NMK Willis v. Big Lots, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Austin P Brane**
  abrane@rgrdlaw.com
- **Timothy G Cameron**
  tcameron@cravath.com,mao@cravath.com,tsyverson@cravath.com,ascolnik@cravath.com,dlisner@cravath.com,hyan@cravath.com,bmcnamara@cravath.com
- **Brian E Cochran**
  bcochran@rgrdlaw.com
- **William Darrell Kloss , Jr**
  wdklossjr@vorys.com,crmarioth@vorys.com
- **John Joseph Kulewicz**
  jjkulewicz@vssp.com
- **David W Mitchell**
  davidm@rgrdlaw.com,hectorm@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **Brian K Murphy**
  murphy@mmmb.com,tiffany@mmmb.com
- **Joseph F Murray**
  murray@mmmb.com,tiffany@mmmb.com
- **Lucas F Olts**
  lolts@rgrdlaw.com
- **Michael A. Paskin**
  mpaskin@cravath.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)