# EXHIBIT H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION
----------------------------------------------x
ALAN WILLIS, Individually and on Behalf of
All Others Similarly Situated,

Plaintiffs,

NO. 2:12-cv-00604-MHW-NMK

vs.

BIG LOTS, INC., STEVEN S. FISHMAN,
JOE R. COOPER, CHARLES W. HAUBIEL II and
TIMOTHY A. JOHNSON,

Defendants.

----------------------------------------------x
C O N F I D E N T I A L

July 20, 2016

9:39 a.m.

30(b)(6) Video Deposition of: Paradigm Capital
Management by:

ROBERT ALBERT BENTON

30(b)(6) Video Deposition of Paradigm Capital Management by its corporate representative ROBERT ALBERT BENTON, pursuant to subpoena, at the offices of Cravath, Swaine & Moore, Worldwide Plaza, New York, New York, before Mark Richman, a Certified Shorthand Reporter, Registered Professional Reporter and Notary Public of the State of New York

A P P E A R A N C E S:

ROBBINS GELLER RUDMAN & DOWD LLP
Lead Counsel for Lead Plaintiff
655 West Broadway, Suite 1900
San Diego, CA 92101

BY: BRIAN E. COCHRAN, ESQ.
bcochran@rgrdlaw.com

FERBER CHAN ESSNER & COLLER, LLP
Attorneys for the Witness
One Grand Central Place
Suite 2050
New York, NY 10165

BY: ROBERT M. KAPLAN, ESQ.
(rkaplan@ferberchan.com)

A P P E A R A N C E S (Continued):

CRAVATH, SWAINE & MOORE LLP
Attorneys for Defendants
Worldwide Plaza
825 8th Avenue
New York, NY 10019

BY: CAITLIN N. FITZPATRICK, ESQ.
DAVID A. HERMAN, ESQ.
cfitzpatrick@cravath.com
dherman@cravath.com

ALSO PRESENT:
Claire O'Brien, Summer Assoc.
Adam Kowalczyk, Videographer

E X H I B I T S

| DESCRIPTION | PAGE | LINE |
|---|---|---|
| (Whereupon Benton Exhibit 1 was marked for identification, Paradigm deposition subpoena.) | 18 | 12 |
| (Whereupon Benton Exhibit 2 was marked for identification, Investment Management Agreement between Paradigm and Gray & Company, dated December 15th, 2010.) | 24 | 2 |
| (Whereupon Benton Exhibit 3 was marked for identification, ERISA disclosure from Paradigm prepared for Teamsters.) | 28 | 24 |
| (Whereupon Benton Exhibit 4 was marked for identification, email chain, first page email from Gordon Sacks to Yolanda Foreman.) | 32 | 24 |

| | | |
|---|---|---|
| (Whereupon Benton Exhibit 5 was marked for identification, email from Jason Ronovech to Candace King Weir, dated Thursday, May 19, 2011.) | 53 | 16 |
| (Whereupon Benton Exhibit 6 was marked for identification, email from Gordon Sacks to Tiffany Heartley, dated Tuesday, October 18, 2011, with attachment.) | 58 | 18 |
| (Whereupon Benton Exhibit 7 was marked for identification, email from Gordon Sacks to Yolanda Foreman, dated Wednesday, April 11, 2012 with attachment.) | 67 | 23 |



Case: 2:12-cv-00604-MHW-KAJ Doc #: 75-4 Filed: 07/29/16 Page: 7 of 148 PAGEID #: 3013

| | | |
|---|---|---|
| (Whereupon Benton Exhibit 8 was marked for identification, letter dated April 18, 2012 to Yolanda Waggoner Foreman from Jason Ronovech.) | 79 | 19 |
| (Whereupon Benton Exhibit 9 was marked for identification, email from Gordon Sacks to Kurt Lofters, dated Monday, August 13, 2012 with attachment.) | 85 | 12 |
| (Whereupon Benton Exhibit 10 was marked for identification, email from Gordon Sacks to Yolanda Foreman, dated Friday, October 19, 2012 with attachment.) | 93 | 23 |

| | | |
|---|---|---|
| (Whereupon Benton Exhibit 11 was marked for identification, quarterly reports by Gray & Company for the Teamsters accounts dated October 15, 2012.) | 99 | 3 |
| (Whereupon Benton Exhibit 12 was marked for identification, termination letter from Gray & Company to Paradigm, dated September 17th, 2013.) | 105 | 23 |
| (Whereupon Benton Exhibit 13 was marked for identification, Paradigm marketing material from website entitled "How We Approach Our Craft.") | 107 | 18 |
| (Whereupon Benton Exhibit 14 was marked for identification, Paradigm marketing material from website entitled "What We Stand For.") | 110 | 19 |

(Whereupon Benton Exhibit 15 112 5
was marked for
identification, Paradigm
marketing material from
website entitled "Why Small
Cap?")

EXAMINATION BY:

MS. FITZPATRICK: PG: 11

MR. COCHRAN: PG: 115

CONFIDENTIAL

THE VIDEOGRAPHER: Good morning. This is the video operator speaking, Adam Kowalczyk of DTI Court Reporting. Today's date is Wednesday, July 20, 2016 and the time is approximately 9:39 a.m. 09:39:22 09:39:22 09:39:23 09:39:25 09:39:28 09:39:35 09:39:38

We are at the location of Cravath, Swaine & Moore, 825 Eighth Avenue, New York, New York to take the videotaped deposition of Robert Albert Benton in the matter of Alan Willis versus Big Lots Incorporated, et al., in the United States District Court, Southern District of Ohio Eastern Division, case number 2:12-CV-00604-MHW-NMK. 09:39:38 09:39:40 09:39:43 09:39:44 09:39:47 09:39:50 09:39:53 09:39:55 09:39:58 09:39:59

Will all counsel present please introduce themselves for the record and whom they represent. 09:40:09 09:40:11 09:40:12

MS. FITZPATRICK: Caitlin Fitzpatrick, from Cravath Swaine & Moore, representing Big Lots and the individual defendants in this 09:40:14 09:40:15 09:40:17 09:40:18

CONFIDENTIAL

matter. 09:40:20

MR. HERMAN: David Herman, also from Cravath. With me to my left is Claire O'Brien who is a summer associate in our office. 09:40:21 09:40:22 09:40:25 09:40:27

MR. KAPLAN: Robert Kaplan of Ferber Chan Essner & Coller, LLP representing the witness. 09:40:29 09:40:31 09:40:34

MR. COCHRAN: Brian Cochran, from Robbins Geller, on behalf of plaintiffs and the class. 09:40:36 09:40:38 09:40:41

THE VIDEOGRAPHER: Thank you. Will the court reporter, Mark Richman of DTI please swear in the witness. 09:40:42 09:40:43 09:40:45 09:40:46

ROBERT ALBERT BENTON, Having been called as a witness, having been first duly sworn by the Notary Public (Mark Richman), was examined and testified as follows: 09:40:58 09:40:58 09:40:58 09:40:58 09:41:12

EXAMINATION BY MS. FITZPATRICK: 09:41:12

Q. Good morning. 09:41:13
A. Good morning. 09:41:13
Q. Could you please state your 09:41:14

CONFIDENTIAL

full name for the record. 09:41:15
A. It's Robert Albert Benton. 09:41:16
Q. Can you spell your last name, please. 09:41:19 09:41:20
A. B-E-N-T-O-N. 09:41:21
Q. And where do you reside, Mr. Benton? 09:41:22 09:41:24
A. Albany, New York. 09:41:25
Q. And what is the full name of the company that you are representing today? 09:41:26 09:41:28 09:41:29
A. Paradigm Capital Management, Inc. 09:41:30 09:41:32
Q. Okay. And what is the current address of Paradigm? 09:41:32 09:41:35
A. 9 Elk Street, Albany, New York. 09:41:37 09:41:40
Q. Today, when I'm referring to Paradigm Capital Management, I'll just use the word Paradigm; is that okay? 09:41:40 09:41:42 09:41:43
A. Okay. 09:41:45
Q. Do you understand that you are answering on behalf of Paradigm today? 09:41:45 09:41:47
A. I do. 09:41:48

CONFIDENTIAL

Q. And do you understand that Paradigm will be bound by the testimony that you give here today? 09:41:49 09:41:51 09:41:52
A. I do. 09:41:54
MR. COCHRAN: Objection. 09:41:54
Pardon me, Mr. Benton. Objection, calls for legal conclusion. 09:41:55 09:41:58
Q. When was Paradigm founded? 09:42:00
A. 1992. 09:42:02
Q. And what is the nature of its business? 09:42:04 09:42:07
A. It's a registered investment advisor, registered with the SEC. 09:42:07 09:42:09
Q. Can you describe some of the services that Paradigm provides? 09:42:12 09:42:15
A. It manages money for third parties, individuals, funds, both registered and unregistered, corporations, pension funds, ERISA money. 09:42:17 09:42:19 09:42:24 09:42:29
Q. Does Paradigm special in any -- specialize in a particular type of equity, equities? 09:42:32 09:42:35 09:42:37
A. It specializes in small cap for the most part, small cap, and its 09:42:38 09:42:41

CONFIDENTIAL

approach is fundamental research. 09:42:46
Q. And why does it specialize in 09:42:48
small cap? 09:42:49
A. It's an area that the 09:42:50
principal of the firm is -- was familiar 09:42:53
with, grew up, or career has been mostly 09:42:57
in small cap. 09:43:01
Q. And when you say the principal 09:43:03
of the firm, who are you referring to? 09:43:05
A. Candace King Weir. 09:43:06
Q. You mentioned its approach is 09:43:10
fundamental research. Can you describe 09:43:13
that for me? 09:43:14
A. It analyzes the balance sheet, 09:43:15
the financials, talks to management, 09:43:18
understands the strategy, doesn't look 09:43:23
necessarily at recent prices, it looks 09:43:27
more at long-term trends. 09:43:31
Q. And just to clarify, when you 09:43:33
said "doesn't look necessarily at recent 09:43:36
prices," do you mean the market price of 09:43:38
the stock? 09:43:39
A. Correct. 09:43:40
Q. Paradigm sometimes invests in 09:43:40

CONFIDENTIAL

mid cap companies as well; is that correct? 09:43:45 09:43:46
A. Correct. 09:43:46
Q. And what is the cutoff generally between small cap and mid cap? 09:43:47 09:43:49
A. About one and a half billion, give or take. 09:43:51 09:43:54
Q. I want to cover a little bit of your educational background. Where did you go to college? 09:43:55 09:44:00 09:44:02
A. University of Vermont. 09:44:03
Q. And what year did you graduate? 09:44:04 09:44:06
A. 1983. 09:44:06
Q. What degree did you earn? 09:44:07
A. Bachelor of Science, major in accounting. 09:44:10 09:44:12
Q. Did you attend graduate school? 09:44:13 09:44:15
A. I did not. 09:44:15
Q. Do you hold any professional licenses? 09:44:16 09:44:19
A. CPA in New York. 09:44:20
Q. What is your current position 09:44:21

CONFIDENTIAL

at Paradigm? 09:44:23
A. I am chief financial officer. 09:44:24
I'm a director of the company. And as of 09:44:28
last month, I am also the chief 09:44:31
compliance officer. 09:44:33
Q. In those various roles, can 09:44:33
you describe your responsibilities? 09:44:37
MR. KAPLAN: Do you mean his 09:44:40
current responsibilities, his 09:44:42
responsibilities since he's been 09:44:43
there? 09:44:44
MS. FITZPATRICK: His current 09:44:45
responsibilities. 09:44:45
MR. KAPLAN: Okay. 09:44:46
A. Chief financial officer, 09:44:47
responsible for closing the books on a 09:44:48
monthly basis, budgeting, forecasting. 09:44:50
As compliance officer, making sure that 09:44:55
the individuals in Paradigm comply with 09:44:57
our policies and procedures as they're 09:45:01
written. Also filing SEC filings, such 09:45:05
as form 13F, 13G's, where appropriate, 09:45:09
updating the form ADV. As a director, 09:45:14
helping with the strategic direction of 09:45:18

CONFIDENTIAL

the company. 09:45:19

Q. How long have you worked prior to -- worked at Paradigm? 09:45:20 09:45:24

A. On and off, since 2001. 09:45:25

Q. And have you held any other roles at Paradigm? 09:45:28 09:45:31

A. At Paradigm, no. 09:45:33

Q. Where did you work prior to Paradigm? 09:45:34 09:45:38

A. I worked for Key Bank, regional bank headquartered in Cleveland, Ohio. 09:45:39 09:45:41 09:45:44

Q. And what was your position there? 09:45:45 09:45:46

A. At the time I left I was the financial officer supporting their operations and technology line of business. 09:45:46 09:45:51 09:45:53 09:45:55

Q. Had you had prior roles before that? 09:45:56 09:45:58

A. I did. I was there fourteen years. When I first joined I was in the financial reporting, the corporate financial reporting, shareholders as well 09:45:59 09:46:01 09:46:06 09:46:08

CONFIDENTIAL

as regulatory. 09:46:11
Q. What is the relationship between CL King and Associates and Paradigm? 09:46:12 09:46:15 09:46:19
A. Common ownership. Candace King was principal shareholder of CL King. 09:46:22 09:46:25 09:46:28
MS. FITZPATRICK: I'd like to mark the first document, tab 1, please. 09:46:30 09:46:31 09:46:35
(Whereupon Benton Exhibit 1 was marked for identification, Paradigm deposition subpoena.) 09:46:36 09:46:36 09:47:00
MR. KAPLAN: Are you marking this as Paradigm 1, as Benton 1? 09:47:00 09:47:01
MS. FITZPATRICK: Benton 1. 09:47:05
MR. KAPLAN: Okay. 09:47:06
Q. You've just been handed the Paradigm deposition subpoena. Do you recognize this document? 09:47:11 09:47:13 09:47:16
A. Yes. 09:47:17
Q. And have you read this previously? 09:47:18 09:47:20
A. I've seen it previously, yes. 09:47:21

CONFIDENTIAL

Q. When did you first review this document? 09:47:23 09:47:25
A. Approximately two weeks ago. 09:47:26
Q. Let me direct you to page 2 of schedule A. You'll see number 6 defines the relevant time period, which means the time period between April 1st, 2001 and December 31st, 2012 inclusive. Do you see that? 09:47:27 09:47:31 09:47:38 09:47:41 09:47:43 09:47:48
A. Yes. 09:47:48
Q. So when I refer to the relevant time period today, that's the time period that I'll be referring to. 09:47:48 09:47:50 09:47:51
A. Okay. 09:47:53
Q. And generally when I ask you questions about what Paradigm did or things that occurred, that's the time period I'll be asking about. 09:47:53 09:47:55 09:47:57 09:47:59
A. Okay. 09:48:00
Q. What have you done to prepare for this deposition? 09:48:00 09:48:03
A. I've spoken with my attorney. I've reviewed some documents. 09:48:05 09:48:09
Q. Which documents did you 09:48:11

CONFIDENTIAL

review? 09:48:13
A. I reviewed Teamsters -- 09:48:14
actually it was Gray & Company, I think, 09:48:21
agreement related to the Teamsters' 09:48:25
accounts that we manage, or Paradigm 09:48:28
managed during the relevant time period. 09:48:31
I reviewed a presentation, PowerPoint 09:48:34
presentation that was presented I think 09:48:39
to Gray & Company during the relevant 09:48:42
time period. I looked at some emails of 09:48:45
portfolio manager Jason Ronovech related 09:48:50
to Big Lots. There may have been a 09:48:55
couple of other documents as well. 09:48:58
MR. COCHRAN: And I would just 09:49:01
like to interject an objection to 09:49:02
reflect that there's a disagreement 09:49:04
between the parties in terms of the 09:49:06
relevant time period as it relates 09:49:08
to plaintiffs' documents. 09:49:10
Q. When did you meet with 09:49:14
counsel? 09:49:15
A. It was over a telephone call I 09:49:18
think about a week ago and then 09:49:24
yesterday. 09:49:26

CONFIDENTIAL

Q. And with whom specifically did you speak? 09:49:26 09:49:28

A. Mr. Kaplan. 09:49:28

Q. About how long were those conversations? 09:49:29 09:49:31

A. Probably about anywhere from 15 minutes to half an hour. 09:49:31 09:49:35

Q. When did Paradigm first form a relationship with Teamsters Local 237 Additional Security Benefit Fund? 09:49:36 09:49:44 09:49:48

MR. KAPLAN: Object to form. 09:49:50

MR. COCHRAN: Object to form. 09:49:51

MR. KAPLAN: You can answer. 09:49:55

A. Okay. I believe we actually had an agreement with Gray & Company that was acting on behalf of Teamsters. That was in January of 2011. 09:49:56 09:50:01 09:50:04 09:50:06

Q. And just to note when I'm referring, when I'm referring to that full entity, I'll just use the word Teamsters as well -- 09:50:10 09:50:14 09:50:16 09:50:18

A. Okay. 09:50:19

Q. -- for ease. So can you describe this relationship between 09:50:20 09:50:22

CONFIDENTIAL

Paradigm, Teamsters, and Gray & Company? 09:50:23

MR. KAPLAN: Object to form. 09:50:26

A. We, Paradigm, was retained to manage two separately managed accounts for Teamsters Local 237 in its SMid, small cap, mid cap strategy that it had in place at the time. 09:50:28 09:50:32 09:50:37 09:50:45 09:50:47

Q. And you contracted directly with Gray & Company or directly with Teamsters? 09:50:51 09:50:52 09:50:56

A. I believe it was with Gray & Company. 09:50:56 09:50:58

Q. Did you interact with a company called Greystone during the relevant period? 09:50:58 09:51:00 09:51:02

A. I've seen the name. I'm not familiar with the company. 09:51:04 09:51:06

Q. So you can't recall the specific relationship between Paradigm and Greystone? 09:51:07 09:51:09 09:51:11

A. I -- 09:51:13

MR. COCHRAN: Object to form. 09:51:13

I don't believe it's been established that there was a 09:51:15 09:51:16

CONFIDENTIAL

relationship. 09:51:17
A. I've seen the name on documents. 09:51:17 09:51:18
Q. But you're not sure whether there was a relationship? 09:51:20 09:51:22
A. I'm not. 09:51:24
Q. And who at Paradigm made the investment decisions for Teamsters portfolio during the relevant period? 09:51:26 09:51:30 09:51:32
A. At the beginning of the relationship there were two portfolio managers, Jason Ronovech and Jonathan Vyorst. In 2000 -- well during the relevant period, that would cover the entire relevant period. Mr. Ronovech left Paradigm in early 2013. 09:51:34 09:51:36 09:51:38 09:51:45 09:51:49 09:51:51 09:51:53
Q. Okay. Who replaced Mr. Ronovech with respect to portfolio -- Paradigm -- 09:51:55 09:51:58 09:52:01
A. In 2013 -- 09:52:02
MR. COCHRAN: Object to form. 09:52:03
A. It was Amelia Weir. 09:52:04
MS. FITZPATRICK: Let's mark the next exhibit which is tab 2. 09:52:09 09:52:09

CONFIDENTIAL

(Whereupon Benton Exhibit 2 was marked for identification, Investment Management Agreement between Paradigm and Gray & Company, dated December 15th, 2010.) 09:52:13 09:52:13 09:52:13 09:52:13 09:52:58 09:53:01

Q. You've just been handed Benton Exhibit 2 which is the Investment Management Agreement between Paradigm and Gray & Company, correct? 09:52:43 09:52:45 09:52:46 09:52:49

A. Yes. 09:52:53

Q. And this document is dated December 15th, 2010, right? 09:52:54 09:52:59

A. Yes. 09:53:07

Q. On page 13 you'll see that it was executed by Lawrence Gray as well as Candace King Weir, correct? 09:53:07 09:53:13 09:53:18

MR. COCHRAN: Object, calls for speculation, lack of foundation. 09:53:21 09:53:23 09:53:24

A. Those are the names under the signatures, yes. 09:53:25 09:53:26

Q. Was this the agreement that was in effect during the relevant period? 09:53:30 09:53:31

CONFIDENTIAL

MR. COCHRAN: Objection, calls for speculation, lack of foundation. 09:53:34 09:53:34 09:53:35

MR. KAPLAN: Objection to the form. 09:53:36 09:53:36

A. I believe it was. 09:53:37

Q. So Teamsters was Gray & Company's client and then Gray & Company hired Paradigm to invest Teamsters' portfolio? 09:53:38 09:53:45 09:53:47 09:53:50

MR. COCHRAN: Objection, calls for speculation, lack of foundation, also to form. 09:53:50 09:53:52 09:53:52

A. That's my understanding. 09:53:54

Q. Did Gray & Company delegate to Paradigm all discretion to invest Teamsters' assets? 09:53:55 09:53:59 09:54:01

MR. KAPLAN: Objection to the form. 09:54:03 09:54:03

MR. COCHRAN: Same objections as before. 09:54:03 09:54:04

A. I don't know if it delegated all, but it certainly gave full discretionary powers to invest the 09:54:09 09:54:10 09:54:14

CONFIDENTIAL

monies. 09:54:16

Q. So Paradigm didn't need to get approval before investing in specific stocks? 09:54:17 09:54:19 09:54:21

MR. KAPLAN: Objection to the form. 09:54:23 09:54:23

MR. COCHRAN: Also misstates testimony. 09:54:24 09:54:25

A. I believe that's the case, yes. 09:54:26 09:54:28

Q. If you turn to the last page, page 16 -- 09:54:28 09:54:32

A. May I just clarify. As long as it was within the strategy that Gray & Company contracted with Paradigm. 09:54:33 09:54:35 09:54:38

Q. And do you recall what that strategy was? 09:54:40 09:54:41

A. SMid. 09:54:42

MR. COCHRAN: Object to form, lack of foundation. 09:54:45 09:54:46

A. SMid cap. 09:54:46

Q. SMid? 09:54:49

A. Small cap, mid cap. 09:54:49

Q. Turning to page 16. So this 09:54:52

CONFIDENTIAL

is what you were referring to at the top where it says products, Smid equity, yes? 09:54:54 09:54:56

MR. COCHRAN: Object to form. 09:55:01

MR. KAPLAN: Objection. 09:55:03

A. Page 16? 09:55:03

Q. 16. 09:55:04

A. Correct. 09:55:05

Q. And can you explain what that means? 09:55:06 09:55:08

A. Small cap, mid cap, US equities, for the most part. 09:55:13 09:55:15

Q. So what would the market capitalization of the securities invested through this product be? 09:55:22 09:55:23 09:55:25

MR. COCHRAN: Object to form. 09:55:27

MR. KAPLAN: Object to form. 09:55:28

A. Approximately half a billion dollars, all the way up to five billion dollars of market capitalization. 09:55:29 09:55:31 09:55:34

Q. And you'll see it says the comparison benchmark was the Russell 2500 index, do you see that? 09:55:35 09:55:36 09:55:41

A. Yes. 09:55:42

Q. What is that? 09:55:43

CONFIDENTIAL
A. I believe that is a Smid index. 09:55:43 09:55:46
Q. And how is Paradigm expected to perform relative to that index? 09:55:49 09:55:50
MR. COCHRAN: Object to form, lack of foundation. 09:55:53 09:55:54
A. The expectation is that we would outperform. 09:55:55 09:56:04
Q. Was there a specific percentage point that Paradigm was expected to outperform by? 09:56:05 09:56:06 09:56:11
A. Not that I'm aware of. 09:56:13
MR. COCHRAN: Same objections. 09:56:13
A. Not that I'm aware of. 09:56:14
Q. And Teamsters did not enter into a separate investment management agreement with Paradigm, correct? 09:56:15 09:56:17 09:56:20
MR. COCHRAN: Object to form, lack of foundation. 09:56:21 09:56:22
A. I do not believe so. 09:56:23
MS. FITZPATRICK: Let's take a look at the next document. 09:56:26 09:56:26
(Whereupon Benton Exhibit 3 was marked for identification, 09:56:35 09:56:35

CONFIDENTIAL
ERISA disclosure from Paradigm prepared for Teamsters.) 09:56:35 09:56:35
Q. You've just been handed Benton Exhibit 3. Please take a moment to review this document. Do you recognize this document? 09:56:54 09:56:56 09:56:57 09:57:13
A. I think it's an ERISA disclosure. 09:57:14 09:57:18
Q. So this is an ERISA disclosure from Paradigm prepared for Teamsters, correct? 09:57:20 09:57:22 09:57:24
A. Correct. 09:57:25
MR. COCHRAN: Object, lack of foundation. 09:57:25 09:57:26
Q. I'll read the description of services paragraph allowed. It says "Paradigm shall have full power and authority as the plan's agent and attorney-in-fact to supervise and direct the investment of the plan, making and implements decisions, all without prior consultation with the plan, in accordance with the plan's investment objectives, and subject to such limitations or 09:57:28 09:57:31 09:57:34 09:57:36 09:57:37 09:57:40 09:57:42 09:57:44 09:57:46 09:57:48

CONFIDENTIAL

restrictions as the plan may add from 09:57:50
time to time." 09:57:51
And plan under this agreement 09:57:54
is defined as Teamsters Local 237, 09:57:56
correct? 09:57:58
MR. COCHRAN: Objection, lack 09:58:00
of foundation. Are you asking him 09:58:01
if the statement is correct or is 09:58:03
that what it says on the page? 09:58:05
A. That's what it says on the 09:58:06
page. 09:58:08
Q. So pursuant to the description 09:58:08
of the services here, Paradigm had full 09:58:11
authority to invest on behalf of 09:58:14
Teamsters, correct? 09:58:15
MR. COCHRAN: Objection, lack 09:58:16
of foundation. 09:58:17
MR. KAPLAN: Objection to the 09:58:19
form. 09:58:20
MR. COCHRAN: Calls for legal 09:58:20
conclusion. 09:58:21
A. Subject to the investment 09:58:22
objectives, yes. 09:58:25
Q. Would you describe this 09:58:26

CONFIDENTIAL

paragraph as an accurate description of Paradigm's authority over Teamsters' investment portfolio? 09:58:46 09:58:49 09:58:52

MR. COCHRAN: Objection, calls for legal conclusion, object to form, lack of foundation. 09:58:52 09:58:54 09:58:56

A. This is generally what Paradigm did, yes. 09:58:57 09:59:01

Q. And can you describe what you mean by generally? 09:59:02 09:59:04

MR. COCHRAN: Same objections. 09:59:06

A. As is described on here. 09:59:07

Q. So as is described, Paradigm had the full power and authority as the plan's agent to supervise and direct investment of the plan, correct? 09:59:11 09:59:14 09:59:15 09:59:18

MR. KAPLAN: Objection. 09:59:20

MR. COCHRAN: Same objection. 09:59:21

MR. KAPLAN: I mean if you're going to ask him if it's correct, do we really need to read the whole paragraph again? 09:59:22 09:59:23 09:59:26 09:59:28

MR. COCHRAN: Same objections as before. 09:59:29 09:59:30

CONFIDENTIAL

Q. I'll clarify. Within the confines of the strategy that Teamsters defined for Paradigm? 09:59:33 09:59:35 09:59:37

MR. COCHRAN: Same objections, calls for legal conclusion, object to form, lack of foundation. 09:59:38 09:59:39 09:59:43

MR. KAPLAN: For the purpose of the record, could you just restate the question. 09:59:45 09:59:46 09:59:47

Q. Is it correct that Paradigm had the full power and authority as the plan's agent to supervise and direct investment of the plan within the confines of the strategy that Teamsters defined for Paradigm? 09:59:52 09:59:54 09:59:55 09:59:57 09:59:59 10:00:01

MR. COCHRAN: Calls for legal conclusion, object to form, lack of foundation. 10:00:03 10:00:04 10:00:05

A. That's generally correct, yes. 10:00:06

Q. Okay. 10:00:10

MS. FITZPATRICK: Let's move to the next exhibit. 10:00:15 10:00:15

(Whereupon Benton Exhibit 4 was marked for identification, 10:00:25 10:01:00

CONFIDENTIAL

email chain, first page email from Gordon Sacks to Yolanda Foreman.) 10:01:00 10:01:01

Q. You've just been handed what's marked as Benton Exhibit 4. On the first page this is an email from Gordon Sacks to Yolanda Foreman, correct? 10:00:52 10:00:54 10:00:59 10:01:03

MR. COCHRAN: Objection, lack of foundation and also I would just like to note for the record there are no Bates stamps on this document. Appears to be two different documents put together. So I don't know if this is how this was produced but there's no indication it's the same document. 10:01:06 10:01:07 10:01:08 10:01:10 10:01:12 10:01:13 10:01:20 10:01:21 10:01:23

A. Appears to be, yes. 10:01:29

Q. Who is Gordon Sacks? 10:01:30

A. He was a marketing representative for Paradigm. 10:01:32 10:01:33

Q. And when you say marketing representative, what were his responsibilities? 10:01:36 10:01:38 10:01:39

A. Marketing director I think was his title. 10:01:39 10:01:42

CONFIDENTIAL

Q. So he interfaced with Paradigm's clients? 10:01:42 10:01:44

MR. COCHRAN: Object to form. 10:01:47

A. He was one of the interfaces, yes, from a sales perspective, marketing perspective. 10:01:48 10:01:50 10:01:52

Q. Do you know who Yolanda Foreman is? 10:01:53 10:01:56

A. From this document, I believe, as well as the other one, I believe she's a representative of Gray & Company. 10:01:59 10:02:02 10:02:04

MR. COCHRAN: Objection, lack of foundation. 10:02:06 10:02:07

Q. You'll see this email mentions that Gordon was, quote, just about to send this over. I am looking forward to meeting the investment committee on Monday. Do you see that? 10:02:14 10:02:17 10:02:19 10:02:21 10:02:23

A. Yes. 10:02:25

Q. And this email is dated Thursday, April 14th, 2011, correct? 10:02:26 10:02:28

A. Yes. 10:02:31

Q. Attached, you can move to the attachment -- 10:02:31 10:02:38

CONFIDENTIAL

MR. COCHRAN: Objection. Same objection as before. There's no indication this is in fact an attachment. And in fact, I don't think that's, when I looked at these documents, I think they were separate documents, but. 10:02:39 10:02:40 10:02:42 10:02:43 10:02:48 10:02:49 10:02:51

MS. FITZPATRICK: We received these as emails and attachments. 10:02:53 10:02:53

MR. COCHRAN: Well, it doesn't reflect it in the record. 10:02:57 10:02:59

MS. FITZPATRICK: And these documents were not Bates stamped when we received them. So this presentation was attached to this email. 10:03:00 10:03:02 10:03:03 10:03:06 10:03:07

MR. COCHRAN: Objection, lack of foundation, in that it, you know, to the extent you're representing that it was a presentation, object to that as well. 10:03:09 10:03:10 10:03:13 10:03:14 10:03:14 10:03:16

Q. Given that the email notes that the attached presentation would be 10:03:22 10:03:25

CONFIDENTIAL

presented at a meeting on Monday and the email is dated Thursday, April 14th, do you think it's fair to say that this was presented on Monday, April 18th, 2011? 10:03:28 10:03:30 10:03:33 10:03:34

MR. COCHRAN: Objection, lack of foundation, calls for speculation. There's no indication Mr. Benton received this email, attended this presentation, has ever seen these documents previously. 10:03:37 10:03:38 10:03:40 10:03:42 10:03:44 10:03:46 10:03:47

A. I have no personal knowledge, but certainly from these documents it appears that way. 10:03:51 10:03:53 10:03:54

Q. Let's take a look at the first slide. So this is a description of the firm and SMid strategy -- 10:03:57 10:03:59 10:04:10

MR. KAPLAN: The attachment does have page numbers on it so could you just refer to the page numbers. 10:04:13 10:04:15 10:04:16 10:04:18

Q. Sure, slide 1. 10:04:18

MR. KAPLAN: Page 1. 10:04:20

Q. Page 1? 10:04:21

CONFIDENTIAL

A. So the cover page? 10:04:22
Q. The cover page, exactly. Is it accurate to say that this is a firm and SMid-cap strategy overview that Paradigm gave to Teamsters? 10:04:24 10:04:26 10:04:29 10:04:32
MR. COCHRAN: Objection, lack of foundation, calls for speculation, not been established Mr. Benton was privy to this presentation. 10:04:34 10:04:35 10:04:36 10:04:37 10:04:39
A. Appears to be. 10:04:44
Q. Can you -- I'll read the line on that first page. "Exploiting market inefficiency through fundamental research." Can you explain what that means to me? 10:04:45 10:04:47 10:04:49 10:04:52 10:04:54
MR. COCHRAN: Object to form. 10:04:57
A. In general terms, I think as I described Paradigm's management approach was to fully understand the company based on analyzing its balance sheet, income statement, various financial information, as well as talking to the management of the company regarding results and 10:04:58 10:05:00 10:05:04 10:05:08 10:05:12 10:05:15 10:05:17

CONFIDENTIAL

strategy, and to identify companies, in essence, that based on that knowledge they thought were, Paradigm believed was undervalued in terms of market price. 10:05:20 10:05:26 10:05:27 10:05:31

Q. And when you say undervalued, so does that mean that the market price was lower than the intrinsic value of the company? 10:05:34 10:05:38 10:05:40 10:05:43

MR. KAPLAN: Objection to the form. 10:05:44 10:05:46

A. I'm not sure I would use the word intrinsic value, but the value that Paradigm had put, had placed upon it through its analysis. 10:05:46 10:05:48 10:05:50 10:05:53

Q. And can you explain the phrase market inefficiency as it is used in this line? 10:05:54 10:05:59 10:06:01

MR. COCHRAN: Objection, asked and answered. Also calls for speculation, lack of foundation. 10:06:01 10:06:03 10:06:07

A. Well, if the market was efficient it would have the same price that Paradigm placed on it. 10:06:12 10:06:13 10:06:17

Q. I see. So given that Paradigm 10:06:22

CONFIDENTIAL

viewed stocks as being undervalued by the market this, means that it viewed market inefficiency as an opportunity to capitalize? 10:06:26 10:06:33 10:06:36 10:06:37

MR. COCHRAN: Object to form, calls for speculation, lack of foundation, also misstates testimony. 10:06:38 10:06:39 10:06:40 10:06:42

A. An opportunity for the price to go up. 10:06:42 10:06:44

Q. Can you explain that? 10:06:46

A. Buy low, maybe sell high. 10:06:47

Q. And buy low because the market price wasn't reflecting Paradigm's valuation of that company? 10:06:51 10:06:53 10:06:56

A. Correct. 10:06:57

Q. I see. 10:06:59

MS. FITZPATRICK: Let's take a short break, please. 10:07:02 10:07:03

THE VIDEOGRAPHER: This is the end of file 1, time is 10:07, off the record. 10:07:04 10:07:10 10:07:15

(A recess was had.) 10:07:15

THE VIDEOGRAPHER: Here marks 10:20:33

CONFIDENTIAL
the beginning of file number 2, we 10:20:39
are back on the record, the time is 10:20:41
10:20 a.m. 10:20:42
MS. FITZPATRICK: Before the 10:20:47
break Mr. Cochran mentioned that 10:20:47
there were no Bates numbers on this 10:20:50
document and it wasn't clear that 10:20:52
it was an attachment to the email. 10:20:54
Mr. Kaplan, would you be 10:20:59
willing to stipulate that Paradigm 10:21:01
did produce this email and 10:21:02
attachment to us? 10:21:04
MR. COCHRAN: Counsel, just to 10:21:05
be clear, are you asking him to 10:21:06
clarify that both were produced or 10:21:08
that it was produced as one 10:21:10
document? 10:21:11
MS. FITZPATRICK: First, that 10:21:13
both were produced. 10:21:14
MR. KAPLAN: I do not have 10:21:21
sufficient recall precisely what 10:21:22
was produced to, to say one way or 10:21:24
the other. I mean you have the 10:21:28
production, you can look at it. 10:21:29

CONFIDENTIAL

Q. Okay, well let's take a quick look at the cover email. Do you still have that document in front of you? 10:21:33 10:21:35 10:21:36
A. This is Benton 4? 10:21:38
Q. Yes. 10:21:39
A. Yes. 10:21:40
Q. So you'll see at the top the from field is Gordon Sacks, correct? 10:21:41 10:21:43
A. Correct. 10:21:46
Q. And the to field is Yolanda Foreman? 10:21:46 10:21:49
A. Correct. 10:21:49
Q. The subject line is Teamsters Local 237 presentations, right? 10:21:50 10:21:52
A. Correct. 10:21:54
Q. And it notes that there's an attachment, Paradigm Capital Smid introduction.pptx? 10:21:55 10:21:57 10:21:59
MR. COCHRAN: Counsel, where are you at? 10:22:03 10:22:05
MS. FITZPATRICK: In the attachment field of the email. 10:22:05 10:22:07
MR. COCHRAN: Oh, okay. 10:22:08
A. That's correct. 10:22:09

CONFIDENTIAL

Q. Moving back to the attached presentation, let's take a look at page 4, please. This appears to be a quote from Candace King Weir; is that correct? 10:22:11 10:22:27 10:22:29 10:22:35

MR. COCHRAN: Object to form, lack of foundation. 10:22:38 10:22:39

Q. And I'll read this quote aloud. "Discipline and hard work are the cornerstones of our success as a small-cap investment management firm. We will not overpay for earnings and we are relentless in our efforts to uncover high-quality but undervalued investment ideas. Paradigm's adherence to these beliefs has resulted in superior long-term returns for our clients." 10:22:45 10:22:46 10:22:48 10:22:51 10:22:51 10:22:53 10:22:56 10:22:58 10:23:00 10:23:03

So what does Paradigm mean when it says "uncover high-quality but undervalued investment ideas"? 10:23:05 10:23:07 10:23:10

MR. COCHRAN: Object to form, lack of foundation. Obviously this is a quote from Ms. Weir, not Mr. Benton. 10:23:11 10:23:12 10:23:13 10:23:18

A. My general understanding is as 10:23:18

CONFIDENTIAL

we were discussing before the break, where Paradigm believed the market had not appropriately valued a company's stock based on Paradigm's fundamental research. 10:23:20 10:23:24 10:23:28 10:23:32 10:23:35

Q. Okay. And you would consider this to be a tenet of Paradigm's investment philosophy? 10:23:37 10:23:40 10:23:43

MR. KAPLAN: Object to form. 10:23:44

MR. COCHRAN: Object to form, lack of foundation, vague and ambiguous. 10:23:46 10:23:47 10:23:51

A. Certainly their approach. 10:23:52

Q. So you would consider this a tenet of Paradigm's investment approach, correct? 10:23:53 10:23:54 10:23:56

A. Correct. 10:23:56

MR. COCHRAN: Same objections. 10:23:57

MR. KAPLAN: Same objections. 10:23:58

Q. Let's turn to page 6. The top of the slide reads Investment Philosophy and the first bullet states "Stock market is inefficient." Do you see that? 10:23:59 10:24:14 10:24:17 10:24:20

A. Yes. 10:24:25

CONFIDENTIAL

Q. So is it Paradigm's view that the stock market is inefficient? 10:24:25 10:24:27

MR. COCHRAN: Object to form, and also object to you asking for a legal conclusion versus an investment line of questioning. 10:24:29 10:24:30 10:24:33 10:24:34

A. Generally speaking, yes. 10:24:36

Q. And so the stock market being inefficient is a tenet of Paradigm's investment approach; is that right? 10:24:38 10:24:41 10:24:45

MR. COCHRAN: Objection, asked and answered, calls for expert testimony, calls for legal conclusion, vague and ambiguous, lack of foundation. 10:24:46 10:24:47 10:24:50 10:24:52 10:24:53

A. It is a basis for its approach, yes. 10:24:54 10:24:57

Q. Okay. Let's go down the page to the following bullet point. "Investor psychology and sentiment impact stock prices significantly." Can you explain to me what that means? 10:24:57 10:25:01 10:25:06 10:25:08 10:25:10

MR. COCHRAN: Lack of foundation. 10:25:11 10:25:12

CONFIDENTIAL

A. In very general terms? 10:25:20
Q. Yes, your understanding. 10:25:21
A. My understanding is investors can be influenced by many factors to buy or sell in the market, and that can impact stock prices. 10:25:23 10:25:27 10:25:32 10:25:35
Q. And when you say many factors, what factors are you referring to? 10:25:38 10:25:41
A. Things that they read in the media or hear in the media, their own conclusions. 10:25:44 10:25:45 10:25:50
Q. And you noted that this sentiment can impact stock prices, right? 10:25:54 10:25:56
MR. COCHRAN: Object to form, lack of foundation, calls for expert testimony. 10:25:59 10:26:00 10:26:03
A. Yes. 10:26:07
Q. Let's go to the next bullet. "Investor expectations are volatile and based on short-term information." Can you explain your understanding of that phrase? 10:26:09 10:26:10 10:26:15 10:26:18 10:26:20
MR. COCHRAN: Lack of foundation. 10:26:20 10:26:21

CONFIDENTIAL

A. General understanding is some investor expectations are short term; they're not looking long term. 10:26:23 10:26:28 10:26:33

Q. Okay. Let's look at the next one. "Opportunity exists for disciplined active investment management to capitalize on market inefficiencies and outperform over a business cycle." Can you explain what this means? 10:26:35 10:26:38 10:26:41 10:26:43 10:26:45 10:26:49

MR. COCHRAN: Object to form, again. Same objection to the extent you're asking for expert opinion or legal conclusion, same objections, but. 10:26:50 10:26:51 10:26:52 10:26:55 10:26:57

A. I should indicate I am not a portfolio manager. My general understanding, though, is that, in essence, is to capitalize on the above two bullet points Paradigm, based on its fundamental research, understanding of the company and longer-term approach, talks about over a business cycle believes it can earn a return on the stock by identifying those such 10:27:02 10:27:04 10:27:06 10:27:07 10:27:11 10:27:14 10:27:17 10:27:21 10:27:24 10:27:29

CONFIDENTIAL

companies. 10:27:34

Q. Can you explain to me what over a business cycle means? 10:27:36 10:27:37

MR. COCHRAN: Lack of foundation. 10:27:42 10:27:42

A. General understanding, most companies will, you know, to the extent they provide a service or a product, there is kind of a beginning and end to that. Some companies' business cycles are longer than others, such as, a litigation begins when you're engaged and it ends, you know, when either you're fired or it comes to a termination. That's the business cycle. 10:27:43 10:27:47 10:27:49 10:27:54 10:27:56 10:27:59 10:28:02 10:28:08 10:28:10 10:28:12

Q. Okay. Moving to the next bullet, the presentation notes "Holdings should be comprised of quality companies selling at substantial discounts to our assessment of our intrinsic value." Can you expand upon that a little bit as well? 10:28:15 10:28:21 10:28:26 10:28:28 10:28:31 10:28:34 10:28:36

MR. COCHRAN: Objection. 10:28:36

MR. KAPLAN: Objection. Is it 10:28:37

CONFIDENTIAL

possible to ask him since he's not the author of this document, you haven't established any connection with what's in this document, isn't the appropriate question his understanding of that? 10:28:39 10:28:40 10:28:41 10:28:42 10:28:44 10:28:46

MR. COCHRAN: And also following on that objection, lack of foundation, calls for speculation. 10:28:46 10:28:47 10:28:49 10:28:54

MS. FITZPATRICK: I'll rephrase. 10:28:54 10:28:54

Q. What is your understanding of this statement? 10:28:55 10:28:56

MR. COCHRAN: Object to form. 10:28:57

A. Again, it's identifying those companies where Paradigm, based on its fundamental research and analysis, believes the market has not fully valued that company. 10:28:59 10:29:01 10:29:04 10:29:06 10:29:10

Q. And so speaking as a representative of Paradigm here today, would you state that this is an investment tenet of Paradigm? 10:29:11 10:29:12 10:29:15 10:29:18

CONFIDENTIAL

MR. KAPLAN: Object to form. 10:29:20
MR. COCHRAN: Object to form. 10:29:21
MR. KAPLAN: Can you please define what you mean by tenet? 10:29:22 10:29:23
MR. COCHRAN: And also "it," please. 10:29:25 10:29:29
Q. This is an aspect of Paradigm's investment philosophy, right? 10:29:31 10:29:33
MR. COCHRAN: What is an aspect? 10:29:35 10:29:36
MR. KAPLAN: At what point in time? 10:29:36 10:29:38
Q. You can answer. 10:29:39
MR. KAPLAN: If you can. 10:29:41
A. It's a general approach of Paradigm's. 10:29:42 10:29:44
Q. And given that we've just established that this document was emailed to Teamsters in 2011, was this part of Paradigm's general approach in 2011? 10:29:46 10:29:48 10:29:49 10:29:52 10:29:54
MR. KAPLAN: Objection to the form. 10:29:55 10:29:56
MR. COCHRAN: Objection. And 10:29:56

CONFIDENTIAL

that is -- that was not established. 10:29:57 10:29:59

A. I believe it was part of Paradigm's approach in 2011. 10:30:01 10:30:02

MR. COCHRAN: Lack of foundation, calls for speculation. 10:30:04 10:30:05

Q. Let's take a look at page 7. The top of this page reads "Investment process: Idea generation and research," correct? 10:30:06 10:30:19 10:30:22 10:30:26

MR. COCHRAN: Lack of foundation. 10:30:26 10:30:27

A. Yes. 10:30:28

Q. And in the middle of the page you'll see it reads "Fundamental analysis: Income, cash flow, and balance sheet examination." Can you explain your understanding of that statement? 10:30:28 10:30:29 10:30:33 10:30:35 10:30:37

MR. COCHRAN: Lack of foundation, calls for speculation. 10:30:38 10:30:39

A. It would be analyzing the financial statements of the potential target companies. 10:30:42 10:30:45 10:30:49

Q. Does Paradigm look at the 10:30:53

CONFIDENTIAL

current value of assets and liabilities when it researches companies? 10:30:56 10:30:57

MR. COCHRAN: Object to form, lack of foundation, calls for speculation. 10:30:59 10:31:00 10:31:02

A. When you say current values, you mean as it's valued in the financial statement, published financial statements? 10:31:02 10:31:04 10:31:07 10:31:09

Q. Yes. 10:31:09

A. I believe it does. 10:31:09

Q. And it looks at its ability to generate free cash flow; is that correct? 10:31:10 10:31:13

MR. COCHRAN: Same objections. 10:31:15

A. I believe it does cash flow analysis. 10:31:16 10:31:17

Q. Moving down to the last main bullet point, it notes "In-depth knowledge of management and industry: Ongoing dialogue with management and other sources." Do you see that? 10:31:18 10:31:24 10:31:28 10:31:29 10:31:31

A. Yes. 10:31:33

Q. Can you explain what it means to be -- means by ongoing dialogue with 10:31:33 10:31:34

CONFIDENTIAL

management? 10:31:37

MR. KAPLAN: Objection to the form. Can you just ask him his understanding? 10:31:38 10:31:39 10:31:40

A. My -- 10:31:44

MR. COCHRAN: Objection, lack of foundation. Sorry, I thought she was going to rephrase. Objection, lack of foundation, calls for speculation. 10:31:45 10:31:45 10:31:47 10:31:48 10:31:49

A. My understanding is Paradigm portfolio managers will participate in various quarterly earnings calls, sometimes the company management would give presentations here in New York or other cities that portfolio managers may attend. And on occasion, I believe, the portfolio managers may even have spoken directly to various officers in the company. 10:31:50 10:31:54 10:31:57 10:32:00 10:32:03 10:32:07 10:32:11 10:32:15 10:32:19 10:32:20

Q. Other than the items mentioned on this page, analysis of income, cash flow, balance sheet examination and dialogue with management, are there any 10:32:21 10:32:25 10:32:29 10:32:30

CONFIDENTIAL

other factors that Paradigm uses in analyzing fundamental value of companies? 10:32:31 10:32:33

MR. COCHRAN: Object to form, lack of foundation, calls for speculation. 10:32:36 10:32:40 10:32:45

A. Not -- 10:32:45

MR. COCHRAN: Not been established, those different factors listed have not been established were in fact considered. 10:32:46 10:32:46 10:32:47 10:32:49 10:32:51

A. Not that I'm aware of. 10:32:52

Q. We can move to the next document. 10:33:01 10:33:02

(Whereupon Benton Exhibit 5 was marked for identification, email from Jason Ronovech to Candace King Weir, dated Thursday, May 19, 2011.) 10:33:03 10:33:03 10:33:03 10:33:03 10:33:25

MR. COCHRAN: And I'm going to strike my objection. 10:33:25 10:33:26

Q. You've just been handed what's been marked as Benton Exhibit 5. Can you take a moment to review the email, 10:33:44 10:33:45 10:33:49

CONFIDENTIAL

please. 10:33:51
A. Yes. 10:34:18
Q. So in the from field of this email is Jason Ronovech, correct? 10:34:18 10:34:20
A. Yes. 10:34:23
Q. And Jason was a portfolio manager responsible for Teamsters at the relevant time? 10:34:24 10:34:27 10:34:31
MR. COCHRAN: Objection, lack of foundation. 10:34:31 10:34:32
A. He was one of two portfolio managers responsible for Teamsters. 10:34:32 10:34:34
Q. And the recipient of this email is Candace King Weir, correct? 10:34:38 10:34:41
A. Correct. 10:34:44
MR. COCHRAN: Objection, lack of foundation. 10:34:45 10:34:46
Q. You'll see the subject line reads "Institutional portfolio request." Do you see that? 10:34:47 10:34:49 10:34:52
A. Yes. 10:34:52
Q. And this email is dated Thursday, May 19, 2011, correct? 10:34:52 10:34:54
A. Yes. 10:34:58

CONFIDENTIAL

Q. Now this email begins "Candace - Big Lots has sold down after deciding not to sell the company to private equity." Can you explain to me your understanding of the phrase Big Lots "has sold down"? 10:35:00 10:35:06 10:35:08 10:35:09 10:35:12 10:35:14

MR. COCHRAN: Counsel, I have to object. Calls for speculation, lack of foundation. To the extent you're asking questions about an email he's never received and what the meaning of those are, I think it's an inappropriate line of questioning. 10:35:14 10:35:15 10:35:17 10:35:19 10:35:21 10:35:22 10:35:24 10:35:25

MR. KAPLAN: You can answer. 10:35:27

A. My understanding is that the price of Big Lots' shares in the market went down after news of, came out of not selling the company to private equity. 10:35:29 10:35:34 10:35:37 10:35:43

Q. And continuing on through the email to the third sentence it notes "While the market cap is $2.5B," meaning billion, I assume, "and above the $1.8B cut off, this provides potentially a nice 10:35:44 10:35:46 10:35:49 10:35:53 10:35:58

CONFIDENTIAL

entry point to a well run quality business and I would like to have the option to add to institutional portfolios." Do you see that? 10:36:01 10:36:04 10:36:07 10:36:09

MR. COCHRAN: Same objection to the extent you're asking him what this document means, other than what's stated on the page; lack of foundation; calls for speculation. 10:36:09 10:36:10 10:36:11 10:36:12 10:36:13 10:36:14

A. I do see that. 10:36:16

Q. Do you have an understanding of what the $1.8B cut off is? 10:36:18 10:36:18

MR. COCHRAN: Same set of objections. 10:36:21 10:36:22

A. My general understanding that the B is for billion. So $1.8 billion. Paradigm Capital also had a small cap strategy, and the 1.8 billion would be at the upper limit of that small cap strategy. 10:36:23 10:36:26 10:36:32 10:36:34 10:36:38 10:36:43

Q. And so is it correct to say that Paradigm sometimes invests in companies above the $1.8 billion market 10:36:43 10:36:45 10:36:49

CONFIDENTIAL

cap threshold? 10:36:52
MR. COCHRAN: Object to form. 10:36:53
MR. KAPLAN: I believe that what you said is the reverse of what he said. It's not the threshold, it's the ceiling. 10:36:58 10:36:59 10:37:01 10:37:03
A. The strategy that the accounts we're talking about were in was small cap, mid cap. Mid cap is above the $1.8 billion threshold, or ceiling. 10:37:07 10:37:14 10:37:16 10:37:19
Q. Is it your understanding that after Jason emailed Candace asking for this institutional portfolio addition, Teamsters' portfolio began investing in Big Lots' stock? 10:37:23 10:37:26 10:37:29 10:37:33 10:37:37
MR. COCHRAN: Objection, lack of foundation, calls for speculation. 10:37:39 10:37:39 10:37:40
A. I don't know. 10:37:40
Q. Do you know when Teamsters began investing in Big Lots? 10:37:42 10:37:44
MR. COCHRAN: Same objections. 10:37:46
A. I believe it was some time in 2011. I don't know the exact time. 10:37:47 10:37:49

CONFIDENTIAL

Q. Okay. And I'd just like to point you back to the phrase a nice entry point to a well run quality business. Is it your understanding that Paradigm viewed Big Lots as a well run quality business during this time?

MR. COCHRAN: Object to form, calls for speculation, lack of foundation. Unclear whether you are talking about the author of this email versus Paradigm as an institution.

A. Mr. Ronovech did apparently believe that when he wrote this email.

MS. FITZPATRICK: Let's move to the next document.

(Whereupon Benton Exhibit 6 was marked for identification, email from Gordon Sacks to Tiffany Heartley, dated Tuesday, October 18, 2011, with attachment.)

Q. You've just been handed what's been marked Benton Exhibit 6. Please take a moment to review the email on the

CONFIDENTIAL

first page. 10:39:20

MR. COCHRAN: While Mr. Benton is reviewing this, I'm going to note similar objection as before. This is not a Bates stamped document. It appears to be two separate documents that have been placed together for the purpose of creating this exhibit. 10:39:21 10:39:22 10:39:23 10:39:26 10:39:29 10:39:31 10:39:33 10:39:34

MS. FITZPATRICK: Mr. Kaplan, can you stipulate that Paradigm's production to defendants was not Bates stamped? 10:39:41 10:39:42 10:39:44 10:39:45

MR. KAPLAN: Yes. 10:39:46

Q. Let me know when you're ready, Mr. Benton. 10:39:50 10:39:51

A. I am. 10:40:05

Q. At the top of the email it notes that this email is from Gordon Sacks, correct? 10:40:06 10:40:08 10:40:12

A. Correct. 10:40:12

Q. And this email was to Tiffany Heartley, correct? 10:40:12 10:40:17

A. Correct. 10:40:17

CONFIDENTIAL

Q. Do you have an understanding of who Tiffany Heartley is? 10:40:18 10:40:19
MR. COCHRAN: Object to form. 10:40:21
A. I do not. 10:40:23
Q. The subject line is "Teamsters Local 237 info from Paradigm Capital," correct? 10:40:24 10:40:26 10:40:30
A. Yes. 10:40:30
Q. And this email was dated Tuesday, October 18, 2011, right? 10:40:31 10:40:33
A. Yes. 10:40:36
Q. And you'll note there are two attachments indicated on this email, the first being preliminary performance and positions 9/30/11.PDF, yes? 10:40:37 10:40:39 10:40:42 10:40:44
A. Yes. 10:40:48
Q. And the second being SMid-cap institutional portfolio fact sheet 9/30/11draft.pdf, right? 10:40:49 10:40:52 10:40:54
A. Yes. 10:40:57
Q. Moving to the body of the email, the first paragraph reads, "As you'll see in the attached performance update, Paradigm's portion of the 10:40:58 10:40:59 10:41:01 10:41:03

CONFIDENTIAL

Teamsters' SMid strategy has outperformed its benchmark by 566 bps (prelim net) since inception earlier this year." Do you see that? 10:41:04 10:41:08 10:41:14 10:41:16

MR. COCHRAN: I would like to just note for the record you pointed out two attachments, yet the document has been put together with only one other document, which I think adds to the inference that these were not together. 10:41:16 10:41:17 10:41:19 10:41:21 10:41:22 10:41:24 10:41:26

A. I do see that. 10:41:31

Q. And do you see the following line noting an attached fact sheet? 10:41:32 10:41:34

A. Yes. 10:41:38

MR. COCHRAN: Object to form. 10:41:39

Q. Let's turn to that fact sheet. 10:41:49

MR. COCHRAN: Calls for speculation, lack of foundation. It hasn't been established that this is in fact the fact sheet being referenced in the email and I don't believe Mr. Benton has ever -- he's not a party to the email, 10:41:50 10:41:54 10:41:55 10:41:56 10:41:58 10:41:59 10:42:01

CONFIDENTIAL

so I don't know how he would know. 10:42:04

Q. This attachment is titled Paradigm Smid-cap Portfolio, correct? 10:42:08 10:42:10

A. Yes. 10:42:13

Q. And it's dated September 30th, 2011, right? 10:42:14 10:42:16

A. Yes. 10:42:18

Q. I'll read the first paragraph under investment objective aloud: "Paradigm's SMid-cap portfolio focuses on SMid-cap equities whose price does not accurately reflect what we believe to be the true earnings potential of the company. Rigorous in-house analysis informed by ongoing dialogue with management and industry leaders culminates in an insight into corporate strategy, competitive dynamics, near-term risks, and a long-term earnings outlook. Stocks are selected for the portfolios based on return potential, conviction and an evaluation of stock-specific and portfolio risk. Our goal is to outperform the Russell 2500 over time." 10:42:18 10:42:22 10:42:27 10:42:30 10:42:32 10:42:34 10:42:35 10:42:38 10:42:39 10:42:41 10:42:44 10:42:47 10:42:50 10:42:52 10:42:54 10:42:56 10:42:59

CONFIDENTIAL

Do you see that? 10:43:02

MR. COCHRAN: Object to form. 10:43:02

A. I do see that. 10:43:03

Q. And was this an accurate characterization of Paradigm's Smid-cap portfolio investment objective during the relevant period? 10:43:05 10:43:06 10:43:08 10:43:10

MR. COCHRAN: Object to form, lack of foundation, calls for speculation. 10:43:11 10:43:12 10:43:17

A. My understanding is that is correct. 10:43:17 10:43:19

Q. Looking back at the first sentence, it notes the portfolio focuses on equities whose price does not accurately reflect what Paradigm believes to be the true earnings potential of the company. Is that right? 10:43:24 10:43:26 10:43:30 10:43:32 10:43:34 10:43:35

MR. COCHRAN: Same objection. To the extent you're asking what's on the page, that's fine. But to the extent you're asking as to the meaning of what's on the page, lack of foundation, calls for 10:43:38 10:43:39 10:43:40 10:43:43 10:43:45 10:43:47

CONFIDENTIAL

speculation. 10:43:48
A. I see it does say that, yes. 10:43:48
Q. So is it your understanding that Paradigm looked for stocks where the market price did not accurately measure the intrinsic value of the company as determined by Paradigm? 10:43:53 10:43:54 10:43:57 10:43:59 10:44:02
MR. COCHRAN: Objection. 10:44:03
MR. KAPLAN: Objection to the form. 10:44:04 10:44:05
MR. COCHRAN: Lack of foundation, calls for speculation. 10:44:05 10:44:06
A. Again, you used the term intrinsic value. 10:44:07 10:44:11
MR. COCHRAN: Misstates testimony. 10:44:11 10:44:12
A. But, yeah, the fundamental value as Paradigm understood of the company. 10:44:13 10:44:16 10:44:18
Q. So it is your understanding that Paradigm looked for stocks where the market price did not accurately measure the fundamental value of the company as determined by Paradigm, correct? 10:44:22 10:44:26 10:44:27 10:44:29 10:44:31

CONFIDENTIAL

MR. KAPLAN: Objection to form. 10:44:33 10:44:34

MR. COCHRAN: Lack of foundation, calls for speculation, misstates testimony. 10:44:34 10:44:35 10:44:36

A. Yes. 10:44:37

Q. And so the fundamental value of the company, as determined by Paradigm, as opposed to the market price of the stock, was the motivating and driving force behind Paradigm's investments; is that right? 10:44:37 10:44:41 10:44:44 10:44:46 10:44:49 10:44:51

MR. COCHRAN: Object to form, lack of foundation, calls for speculation. 10:44:52 10:44:53 10:44:55

A. Could you repeat that. 10:44:55

MR. COCHRAN: Misstates testimony. 10:44:59 10:45:00

A. Could you repeat that question. 10:45:00 10:45:01

Q. Certainly. The fundamental value of the company, as determined by Paradigm, as opposed to the market price of the stock, was the motivating driving 10:45:02 10:45:04 10:45:06 10:45:08

CONFIDENTIAL

force behind Paradigm's investments; is that right? 10:45:11 10:45:13

MR. COCHRAN: Same objections. 10:45:13

A. Paradigm sought out companies that it believed, they believed were undervalued as to the market price. 10:45:15 10:45:18 10:45:20

Q. So the market price didn't reflect the fundamental value, right? 10:45:23 10:45:24

A. Correct. 10:45:26

MR. COCHRAN: Same objections. 10:45:27

Q. And Paradigm invested for Teamsters during the relevant period pursuant to this philosophy; is that right? 10:45:29 10:45:32 10:45:34 10:45:36

MR. COCHRAN: Calls for speculation, lack of foundation, object to form. 10:45:37 10:45:37 10:45:38

A. That's my understanding, yes. 10:45:39

Q. So Paradigm would have purchased Big Lots stock for Teamsters pursuant to this philosophy; is that right? 10:45:40 10:45:43 10:45:45 10:45:47

MR. COCHRAN: Object to form, calls for speculation, lack of 10:45:47 10:45:48

CONFIDENTIAL

foundation. 10:45:49

A. My understanding, yes. 10:45:51

MR. COCHRAN: And, counsel, is 10:45:57 this a Teamsters' specific 10:45:58 document? I think now is a good 10:46:02 time to note for the record many of 10:46:03 these documents were produced 10:46:09 without confidentiality 10:46:10 designations. 10:46:13

We, plaintiffs' counsel has 10:46:14 made a request to Paradigm as well 10:46:16 as defense counsel to mark 10:46:17 documents that reflect Teamsters' 10:46:23 personal financial information, 10:46:24 investment philosophies as 10:46:27 confidential and it was not done 10:46:29 so. So we're marking those for the 10:46:31 record as well as the transcript 10:46:32 confidential. 10:46:35

MS. FITZPATRICK: Let's move 10:46:42 on to the next document. 10:46:43

(Whereupon Benton Exhibit 7 10:46:44 was marked for identification, 10:46:44 email from Gordon Sacks to Yolanda 10:46:44

CONFIDENTIAL

Foreman, dated Wednesday, April 11, 2012 with attachment.) 10:46:44 10:47:16

Q. You've just been handed what's marked as Benton Exhibit 7. Please take a moment to review this document. 10:47:16 10:47:18 10:47:20

MR. COCHRAN: And I think this is a perfect example of a document that should have been marked confidential prior to production, and we are marking it as such. I'm not going to say that every time, but pursuant to the protective order we're just going to mark the whole thing discuss -- all documents discussed today confidential. 10:47:26 10:47:27 10:47:28 10:47:30 10:47:33 10:47:35 10:47:38 10:47:40 10:47:41 10:47:43 10:47:45

Q. Mr. Benton, let me know when you're ready. 10:47:53 10:47:56

A. Yes. 10:48:14

Q. In the from line of this email is the name Gordon Sacks, right? 10:48:14 10:48:19

A. Correct. 10:48:22

Q. And this email was sent to Yolanda Foreman, 10:48:23 10:48:25

CONFIDENTIAL

Charles.sheats@Egrayco.com and Gray & Company manager research; is that right? 10:48:28 10:48:34

MR. COCHRAN: Lack of foundation. 10:48:35 10:48:37

A. Yes, that's what it says. 10:48:38

Q. And as we discussed earlier, Paradigm contracted with Gray & Company in order to invest Teamsters' portfolio, correct? 10:48:39 10:48:42 10:48:45 10:48:47

MR. COCHRAN: Object to form, misstates testimony. 10:48:47 10:48:48

A. That's my understanding. 10:48:50

Q. Subject line is "Paradigm SMid-cap update for 1Q 2012," correct? 10:48:51 10:48:54

A. Yes. 10:48:58

Q. And this email was dated April 11, 2012, right? 10:48:59 10:49:01

A. Yes. 10:49:02

Q. And you'll see there are four attachments, one of which is Brokerage (Commission) Report-ASBF 2012 1Q.pdf, right? 10:49:03 10:49:06 10:49:09 10:49:18

A. Yes. 10:49:18

Q. And the first line in the 10:49:18

CONFIDENTIAL

email reads "Attached please find the quarterly information requested for the Teamsters accounts, as well as the general manager update." Do you see that? 10:49:21 10:49:23 10:49:24 10:49:28

A. Yes. 10:49:30

Q. Let's turn the page to the attachment. 10:49:30 10:49:32

MR. COCHRAN: Same objection, there's no Bates numbers; therefore it's unclear whether this is in fact the attachment to the email. Also it appears there were several attachments so I don't even know, it appears this may not have actually been the attachment because only one is combined with the cover email, one document. 10:49:36 10:49:37 10:49:39 10:49:40 10:49:44 10:49:45 10:49:47 10:49:49 10:49:50 10:49:54

Q. At the top of this chart it reads "Paradigm Capital Management Trade Activity Teamsters Local 237 (ASBF)." Do you see that? 10:49:57 10:49:59 10:50:01 10:50:04

A. Yes. 10:50:04

Q. And the date range is 01-01-12 to 03-31-12, right? 10:50:05 10:50:10

CONFIDENTIAL

A. Yes. 10:50:19
Q. Now, as Mr. Cochran mentioned, these pages are not paginated or Bates stamped, but if you'll turn with me to the fourth page of the table. 10:50:19 10:50:22 10:50:24 10:50:26
A. Okay. 10:50:28
Q. And if you'll look -- 10:50:30
MR. KAPLAN: This is the one that has Endo Pharmaceuticals as the first entry? 10:50:32 10:50:33 10:50:34
MS. FITZPATRICK: Yes. 10:50:35
Q. Looking down a little more than halfway in the chart, do you see the name Big Lots Inc.? 10:50:36 10:50:38 10:50:42
A. I do. 10:50:43
Q. And so this shows a purchase on March 20th, 2012, correct? 10:50:44 10:50:49
MR. COCHRAN: Object to form, calls for speculation, lack of foundation. 10:50:52 10:50:54 10:50:56
A. That's what it indicates, yes. 10:50:56
Q. And if moving over on the row you'll see 400 shares were purchased; is that right? 10:50:59 10:51:02 10:51:04

CONFIDENTIAL

MR. COCHRAN: Same objections. 10:51:04
A. Yes. 10:51:07
Q. At a price of 45.23; is that correct? 10:51:08 10:51:15
MR. COCHRAN: Same objections. 10:51:15
A. Yes. 10:51:16
Q. Let's move back up to the first page of the table looking at the column headings. Can you explain to me what broker means? 10:51:17 10:51:19 10:51:25 10:51:27
MR. COCHRAN: Calls for speculation, lack of foundation. 10:51:28 10:51:29
A. That's the broker the trade was transacted with. 10:51:33 10:51:36
Q. And what is your understanding of the heading Trade Date? 10:51:37 10:51:39
MR. COCHRAN: Same objections. I don't think it's been established he received this document. 10:51:44 10:51:48 10:51:49
A. My understanding is that's the date the trade was initiated. 10:51:50 10:51:51
Q. What's your understanding of the heading Settle Date? 10:51:53 10:51:55
MR. COCHRAN: Same objections. 10:52:00

CONFIDENTIAL

A. My understanding it's trade plus three days settle period. So three, three business days after the trade date, generally, a trade would settle. 10:52:01 10:52:03 10:52:06 10:52:09

Q. And then Security, can you explain what that is? 10:52:16 10:52:19

MR. COCHRAN: Same objection. 10:52:20

A. The name of the security in the trade. 10:52:21 10:52:26

Q. Security Symbol, what is your understanding of that? 10:52:26 10:52:28

MR. COCHRAN: Same objections. 10:52:28

A. Just that, it's the security symbol. 10:52:29 10:52:31

Q. Tran Code, do you understand what that means? 10:52:33 10:52:35

MR. COCHRAN: Same objections. 10:52:36

A. My understanding is "by" would be a buy, "sl" would be a sale. 10:52:37 10:52:41

Q. And Quantity, what is your understanding of that? 10:52:44 10:52:46

MR. COCHRAN: Same objections. 10:52:46

A. Number of shares in the trade. 10:52:47

Q. Price, what is your 10:52:50

CONFIDENTIAL

understanding of that? 10:52:51

MR. COCHRAN: Same objections. 10:52:52

A. The price the trade was consummated at. 10:52:53 10:52:56

Q. Principle, what is your understanding of that column? 10:52:58 10:53:01

MR. COCHRAN: Same objections. 10:53:02

A. Share quantity times price. 10:53:03

Q. How about commission? 10:53:06

MR. COCHRAN: Same objection. 10:53:08

A. To the extent there's a broker commission charged, it would appear there, generally. 10:53:09 10:53:13 10:53:16

Q. And what does SEC fee mean? 10:53:17

MR. COCHRAN: Same objection. 10:53:22

A. Most trades there is an SEC fee involved. 10:53:23 10:53:26

Q. And finally, what is your understanding of the column Amount? 10:53:28 10:53:31

MR. COCHRAN: Same objections. 10:53:33

A. That that would be the principal less any brokerage commission less any SEC fee. 10:53:34 10:53:38 10:53:41

Q. Is this a document that was 10:53:46

CONFIDENTIAL

created by Paradigm? 10:53:48
MR. COCHRAN: Calls for speculation, lack of foundation. 10:53:49 10:53:50
A. My understanding, it is created from a system that Paradigm has. 10:53:54 10:53:56
Q. And so who would have -- would Paradigm have created the document through this system? 10:54:01 10:54:03 10:54:05
MR. COCHRAN: Object to form, calls for speculation, lack of foundation. 10:54:06 10:54:07 10:54:08
A. I believe so. 10:54:08
Q. Okay. Did Paradigm perform any independent analysis of Big Lots securities during the relevant period? 10:54:09 10:54:17 10:54:19
MR. COCHRAN: Object to form. I believe he testified he was not the portfolio manager. Calls for speculation, lack of foundation. 10:54:21 10:54:23 10:54:24 10:54:27
A. When you say independent analysis, do you mean fundamental research as we talked earlier? 10:54:28 10:54:29 10:54:31
Q. Yes. 10:54:33
A. My understanding -- 10:54:34

Case: 2:12-cv-00604-MHW-KAJ Doc #: 75-4 Filed: 07/29/16 Page: 77 of 148 PAGEID #: 3083



CONFIDENTIAL

MR. COCHRAN: Same objections. 10:54:35

A. My understanding is that they would have. 10:54:37 10:54:39

Q. And speaking on behalf of Paradigm, what did that analysis show about Big Lots? 10:54:40 10:54:43 10:54:45

MR. KAPLAN: Objection, objection to the form. I mean I have no idea what you mean by speaking on behalf of Paradigm. Could you rephrase that question? 10:54:47 10:54:48 10:54:49 10:54:51 10:54:53

Q. As a 30(b)(6) witness here to testify on behalf of the entity Paradigm, what did that analysis show about Big Lots? 10:54:56 10:54:58 10:55:02 10:55:04

MR. COCHRAN: Objection. 10:55:05

MR. KAPLAN: Well, again, I mean... 10:55:05 10:55:07

MR. COCHRAN: Object to form. Calls for speculation. Lack of foundation. Calls for a legal conclusion. 10:55:11 10:55:12 10:55:15 10:55:16

MR. KAPLAN: I mean given the fact that -- I mean the question 10:55:21 10:55:22

CONFIDENTIAL

and answer would never be admissible anywhere. But you can answer the question if you know. 10:55:29 10:55:30 10:55:32

A. Could you repeat the question, please. 10:55:34 10:55:36

MS. FITZPATRICK: Could you read back the question. 10:55:38 10:55:39

(The requested portion of the record was read.) 10:55:51 10:55:52

MR. COCHRAN: Object to form, calls for speculation, lack of foundation, calls for a legal conclusion. 10:55:52 10:55:53 10:55:55 10:55:57

A. My understanding would be, based on this trade activity document, that it indicated, as of the date of the purchase of 400 shares of Big Lots, that it was based on that fundamental analysis based on the market price of Big Lots during that -- on that day that the portfolio manager believed it was a, a good investment for the portfolio. 10:56:00 10:56:03 10:56:08 10:56:13 10:56:17 10:56:20 10:56:23 10:56:26 10:56:32

Q. And just to make sure I understand, so you mean the portfolio 10:56:36 10:56:37

CONFIDENTIAL

manager would have thought that this security was undervalued as compared to Paradigm's assessment of its value, correct? 10:56:38 10:56:40 10:56:43 10:56:45

MR. COCHRAN: Object to form, lack of foundation, calls for speculation, misstates testimony. 10:56:46 10:56:47 10:56:49

A. My understanding is that's generally correct, yes. 10:56:50 10:56:53

Q. Okay. And so did Paradigm purchase Big Lots in accordance with its general philosophy that we've been discussing today? 10:56:54 10:56:57 10:56:58 10:57:00

A. It's -- 10:57:01

MR. COCHRAN: Object to form, lack of foundation, calls for speculation. 10:57:01 10:57:02 10:57:04

A. It's general approach, yes. 10:57:05

MS. FITZPATRICK: Let's move to the next document. 10:57:18 10:57:19

MR. COCHRAN: Counsel, you mind if we take a quick five-minute break? 10:57:19 10:57:20 10:57:22

MS. FITZPATRICK: Sure. 10:57:23

CONFIDENTIAL

MR. COCHRAN: That's okay with you guys? 10:57:23 10:57:25

THE VIDEOGRAPHER: That is the end of file number 2, time is 10:57 a.m., off the record. 10:57:26 10:57:28 10:57:31

(A recess was had.) 10:57:35

THE VIDEOGRAPHER: Here marks the beginning of file number 3, we are back on the record, time is 11:21 a.m. 11:20:48 11:20:49 11:20:50 11:20:53

MS. FITZPATRICK: Let's mark the next document as Benton Exhibit 8, please. 11:20:58 11:20:59 11:21:01

MR. KAPLAN: By the way, I just want to note for the record there was really no reason for us to be sitting here 25 minutes, so. 11:21:03 11:21:04 11:21:05 11:21:07

(Whereupon Benton Exhibit 8 was marked for identification, letter dated April 18, 2012 to Yolanda Waggoner Foreman from Jason Ronovech.) 11:21:10 11:21:10 11:21:10 11:21:10 11:21:14

MR. KAPLAN: I mean it's not courteous to the witness, it's not 11:21:14 11:21:15

CONFIDENTIAL

courteous to us. 11:21:16

Q. You've just been handed a document marked Benton Exhibit 8. Do you recognize this document? 11:21:44 11:21:46 11:21:49

A. I never received it when it was sent, but I recognize what it is, yes. 11:21:52 11:21:54 11:21:56

Q. And can you describe what it is? 11:21:57 11:22:00

MR. COCHRAN: Object to form, lack of foundation. 11:22:00 11:22:02

A. I believe it's one of the quarterly updates that Paradigm portfolio managers would give to Gray & Company regarding the Teamsters' accounts. 11:22:03 11:22:05 11:22:10 11:22:14

Q. And what can you tell me about Gray & Company beyond what we've discussed previously? 11:22:17 11:22:20 11:22:21

MR. COCHRAN: Object to form, calls for speculation, lack of foundation. 11:22:22 11:22:24 11:22:25

A. Really nothing except they were acting for the Teamsters. 11:22:31 11:22:33

Q. And when you say acting for 11:22:35

CONFIDENTIAL

Teamsters, what does that mean? 11:22:37

MR. COCHRAN: Object to form, lack of foundation, calls for speculation. 11:22:39 11:22:40 11:22:41

A. They appeared to be acting for Teamsters, I should say. 11:22:41 11:22:43

Q. When you say appeared to be acting for Teamsters, what does that mean? 11:22:46 11:22:49 11:22:51

MR. COCHRAN: Same objection. 11:22:51

A. Well, they were the ones, I believe, that placed the accounts, Teamsters' accounts originally at Paradigm, and were managing that process. 11:22:51 11:22:53 11:22:56 11:22:59

Q. So Gray & Company was managing Paradigm's investments and Paradigm was investing for Teamsters, correct? 11:23:05 11:23:07 11:23:11

MR. COCHRAN: Objection, no foundation, lack of -- calls for speculation, form. 11:23:12 11:23:13 11:23:15

A. I'm not sure you phrased that correctly. 11:23:16 11:23:19

Q. Can you explain it to me? 11:23:19

MR. COCHRAN: Same objections. 11:23:21

CONFIDENTIAL

A. My understanding was that Gray & Company, in some capacity, was acting as an agent for Teamsters and placing the money to be invested, identifying money managers, registered investment advisors such as Paradigm, placing the money with Paradigm. 11:23:22 11:23:26 11:23:28 11:23:32 11:23:37 11:23:39 11:23:41

Q. Okay. Turning back to the document, you'll see that this is dated April 18, 2012, correct? 11:23:45 11:23:47 11:23:49

A. Yes. 11:23:51

Q. And it's addressed to Ms. Yolanda Waggoner Foreman at Gray & Company, correct? 11:23:51 11:23:54 11:23:57

A. Yes. 11:23:58

Q. And in the first paragraph it notes that this report is for the quarter ended March 31st, 2012, right? 11:23:59 11:24:02 11:24:04

MR. COCHRAN: And again I'm going to make similar objection I made before. Calls for speculation, lack of foundation, to the extent you're asking him what actually happened or what the 11:24:07 11:24:08 11:24:10 11:24:11 11:24:14 11:24:15

CONFIDENTIAL

meaning is. But to the extent you're saying, asking what's on the page, no objection to that. 11:24:17 11:24:18 11:24:20
A. It does say that, yes. 11:24:23
Q. Turning to the first sentence in the fourth paragraph, I'll read it aloud. "While the market appears to be driven primarily by macro factors, the lack of focus on company fundamentals may be an opportunity for us." Do you have an understanding of what that sentence means? 11:24:24 11:24:29 11:24:32 11:24:36 11:24:39 11:24:40 11:24:44 11:24:45
MR. COCHRAN: Lack of foundation, calls for speculation, form. 11:24:45 11:24:46 11:24:48
A. Again, I think it's somewhat in line with Paradigm's approach of fundamental analysis of certain companies, rather than looking at the way the market was acting overall. 11:24:54 11:24:56 11:24:58 11:25:00 11:25:02
Q. Just to note, you have an understanding of how Paradigm invests, generally, right? 11:25:08 11:25:10 11:25:12
A. General understanding. 11:25:13

CONFIDENTIAL

Q. And you understand -- 11:25:14
MR. COCHRAN: Object to form. 11:25:16
Sorry, just wait one second. 11:25:17
Object to form. 11:25:19
Q. And you have an understanding of how Paradigm invested for Teamsters, is that correct? 11:25:20 11:25:21 11:25:25
MR. COCHRAN: Object to form, lack of foundation, calls for speculation. 11:25:25 11:25:26 11:25:28
A. General understanding is they wanted to invest in the SMid-cap strategy. 11:25:28 11:25:30 11:25:32
Q. Right. So you have an understanding of how Paradigm invested for Teamsters in the SMid strategy during the relevant period, right? 11:25:34 11:25:35 11:25:37 11:25:40
A. Yes -- 11:25:42
MR. COCHRAN: Objection, misstates testimony, form, lack of foundation, calls for speculation. 11:25:42 11:25:43 11:25:45
A. A general understanding of the approach that Paradigm took during that period, yes. 11:25:47 11:25:50 11:25:51

CONFIDENTIAL

Q. So even though you weren't personally the portfolio manager, you were prepared to testify here today about Paradigm's general approach to investing for Teamsters, correct? 11:25:52 11:25:54 11:25:56 11:25:58 11:26:00

MR. COCHRAN: Object to form. 11:26:01

A. Yes. 11:26:03

Q. Okay. 11:26:03

MS. FITZPATRICK: Let's go to the next document. 11:26:05 11:26:06

(Whereupon Benton Exhibit 9 was marked for identification, email from Gordon Sacks to Kurt Lofters, dated Monday, August 13, 2012 with attachment.) 11:26:07 11:26:07 11:26:07 11:26:07 11:26:54

Q. You've just been handed what's marked Benton Exhibit 9. Can you take a moment to look over this email and attachment. 11:26:54 11:26:56 11:26:58 11:27:00

MR. COCHRAN: And while the witness looks over the email, I'm going to make the same objection as before with similar documents, in that it's not clear that the two 11:27:00 11:27:01 11:27:02 11:27:04 11:27:05

CONFIDENTIAL

documents that were put together for the purposes of this exhibit are in fact an email and attachment. There are no Bates numbers in the document. And I believe they were produced separately. 11:27:11 11:27:12 11:27:14 11:27:16 11:27:17 11:27:19 11:27:23

Q. Let me know when you're ready. 11:27:25
A. Yes. 11:28:08
Q. In the from field of this email it notes that Gordon Sacks sent the email, correct? 11:28:09 11:28:14 11:28:18
A. Yes. 11:28:19
MR. COCHRAN: Lack of foundation. 11:28:19 11:28:20
Q. And in the to field it reads Kurt Lofters; is that right? 11:28:21 11:28:24
A. Yes. 11:28:26
Q. Do you have an understanding of who Kurt Lofters is? 11:28:27 11:28:29
A. I do not. 11:28:31
Q. Okay. The subject line reads SMid update, right? 11:28:35 11:28:38
A. Yes. 11:28:39

CONFIDENTIAL

Q. And the date is Monday, August 13, 2012, correct? 11:28:39 11:28:41

A. Yes. 11:28:43

Q. And in the attachment field it notes, "Paradigm funds 2Q 12 conference call.PDF," correct? 11:28:43 11:28:45 11:28:50

A. Yes. 11:28:52

Q. Moving into the body of the email the second paragraph reads "The SMid-cap Paradigm select fund (PFSLX) had a challenging second quarter, but the fund is rebounding nicely in the third quarter." Do you see that? 11:28:53 11:28:54 11:28:57 11:29:02 11:29:04 11:29:06

A. Yes. 11:29:08

Q. And moving down to the bottom postscript it reads, "The attached transcript gives you a brief summary of our outlook and positioning for the funds." Do you see that? 11:29:08 11:29:11 11:29:14 11:29:15 11:29:17

A. Yes. 11:29:18

Q. Now let's turn to the next page. 11:29:19 11:29:27

MR. COCHRAN: And I'm just going to note that it's unclear 11:29:27 11:29:28

CONFIDENTIAL

this is in fact the next page. 11:29:29
It's the next page of the exhibit 11:29:31
but I think they are two separate 11:29:33
documents. 11:29:34
Q. This appears to be the 11:29:36
attached conference call transcript 11:29:38
referenced in the email, correct? 11:29:40
MR. COCHRAN: Lack of 11:29:41
foundation, calls for speculation. 11:29:42
I don't think Mr. Benton has 11:29:44
testified he received this 11:29:46
conference call transcript and he's 11:29:47
clearly not on the email. 11:29:49
A. It appears to be, yes. 11:29:54
Q. And the title reads Paradigm 11:29:55
conference call 2Q 2012, right? 11:29:56
A. Yes. 11:29:59
Q. And the transcript is dated 11:30:00
July 27, 2012; is that right? 11:30:02
A. Yes. 11:30:06
Q. Moving to the second page of 11:30:13
the exhibit about halfway down there's an 11:30:14
exchange between Gordon Sacks and 11:30:16
Jonathan Vyorst? 11:30:23

CONFIDENTIAL

A. Yes. 11:30:23

Q. I'll read that exchange aloud. 11:30:24
Gordon says: "Great. Jonathan, as you look at this as a fundamental bottom up investor are you seeing opportunities that are being opened up in this type of environment?" 11:30:27 11:30:31 11:30:34 11:30:36 11:30:38

Jonathan replies: 11:30:38
"Absolutely. We have been actively looking and we have been using our screens to focus on the stocks that have fallen out of favor that have the types of financial characteristics we like. We have been buying companies in this environment. We think that the volatility that the market experiences even if the economic news is real is usually exaggerated. You see movements in individual stocks that are very wide in a short period of time. These are the types of environments that allow long-term investors to buy good companies that are out of favor. And we have bought several of them over the last 11:30:40 11:30:41 11:30:43 11:30:45 11:30:47 11:30:50 11:30:52 11:30:53 11:30:53 11:30:54 11:30:55 11:30:56 11:30:58 11:31:00 11:31:02 11:31:04

CONFIDENTIAL

quarter and we're very comfortable with them." Do you see that description? 11:31:05 11:31:07

A. Yes. 11:31:11

MR. COCHRAN: Again, I'm going to object to the extent you're asking him about what the content of the actual dialogue was, that this is in fact an accurate transcript. It hasn't been established he was at this presentation, has ever seen this transcript. But if you're just asking him what the document says, there's no objection to that. 11:31:11 11:31:12 11:31:14 11:31:16 11:31:17 11:31:19 11:31:20 11:31:22 11:31:23 11:31:25 11:31:26

Q. Is it your understanding that Paradigm views volatility that the market experiences as often exaggerated? 11:31:30 11:31:32 11:31:35

MR. COCHRAN: Objection to form, lack of foundation, calls for speculation. 11:31:38 11:31:40 11:31:42

A. I'm sorry, could you repeat that question. 11:31:45 11:31:46

Q. Sure. So looking at the third paragraph that I read aloud, the one 11:31:47 11:31:48

CONFIDENTIAL

starting that we think that the volatility that the market experiences, do you see that? 11:31:50 11:31:52 11:31:54

A. Yes. 11:31:54

MR. COCHRAN: Objection, lack of foundation, calls for speculation. 11:31:54 11:31:55 11:31:56

Q. So is it Paradigm's belief that volatility in the market is usually exaggerated? 11:31:57 11:32:00 11:32:03

MR. COCHRAN: Object to form, lack of foundation, calls for speculation. He's not the speaker of this transcript. 11:32:04 11:32:05 11:32:08 11:32:09

MR. KAPLAN: Objection to the form. 11:32:11 11:32:12

A. I'm not sure I read it that way. 11:32:13 11:32:17

Q. Can you explain how you read it? 11:32:17 11:32:18

MR. COCHRAN: Same objections. 11:32:20

A. Actually, in essence, again, I'm purely speculating because I wasn't on this call. I'm just reading from this 11:32:32 11:32:35 11:32:36

CONFIDENTIAL

document, he does appear to be saying that the market reaction to news or other events can be exaggerated or is usually exaggerated. That's Mr. Vyorst's opinion as is written here. 11:32:39 11:32:41 11:32:51 11:32:55 11:33:02

Q. And does Paradigm consider itself a long-term investor? 11:33:03 11:33:04

MR. COCHRAN: Object to form. 11:33:08

A. Generally, yes. 11:33:11

Q. So does Paradigm seek to buy good companies that are out of favor with the market? 11:33:13 11:33:17 11:33:18

MR. COCHRAN: Object to form. 11:33:18

A. That is part of the approach, based on its fundamental analysis. 11:33:20 11:33:23

Q. Okay. So during the relevant period, part of Paradigm's approach was to purchase companies with solid fundamentals in accordance with its analysis, but that may have been out of favor with the market? 11:33:26 11:33:28 11:33:31 11:33:33 11:33:34 11:33:37

MR. COCHRAN: Okay, object to form, misstates testimony, calls for speculation, lack of 11:33:38 11:33:39 11:33:42

CONFIDENTIAL

foundation. Prior questions were not time, did not refer to a particular time frame. 11:33:44 11:33:46 11:33:49

A. I would just add the market wasn't pricing the securities as Paradigm, based on its analysis, had valued them. 11:33:50 11:33:55 11:33:57 11:34:00

Q. So is it Paradigm's view that if the fundamentals are strong but the price is down due to a short-term concern, then that might be a good buying opportunity for that stock? 11:34:07 11:34:08 11:34:10 11:34:13 11:34:15

MR. KAPLAN: Objection to the form. 11:34:16 11:34:17

MR. COCHRAN: And also misstates testimony. 11:34:17 11:34:20

A. Potentially. 11:34:23

Q. Can you describe when that -- strike that. 11:34:23 11:34:33

MS. FITZPATRICK: Let's move on to the next document. 11:34:35 11:34:36

(Whereupon Benton Exhibit 10 was marked for identification, email from Gordon Sacks to Yolanda 11:35:07 11:35:07 11:35:07

CONFIDENTIAL

Foreman, dated Friday, October 19, 2012 with attachment.) 11:35:07 11:35:14

MR. COCHRAN: While the witness is perusing the document, I'll note for the record again a document has been presented to the witness as a single document that is clearly two documents and they're not consecutively Bates stamped and there's no other indication that the first document, which is an email, is in fact attaching the second document. And the email notes three attachments and there's only one purported attachment in the exhibit. 11:35:14 11:35:14 11:35:15 11:35:17 11:35:18 11:35:19 11:35:24 11:35:26 11:35:28 11:35:29 11:35:31 11:35:36 11:35:38 11:35:43

Q. Let me know when you've had a chance to review the document. 11:35:50 11:35:51

A. Yes. 11:35:52

Q. This email appears to be from Gordon Sacks, correct? 11:35:54 11:35:58

A. Yes. 11:35:59

Q. And this email -- 11:36:00

MR. COCHRAN: Object to form, 11:36:00

CONFIDENTIAL

lack of foundation. 11:36:01

Q. This email was sent to YolandaForeman@EGrayco.com as well as CharlesSheats@EGrayco.com, right? 11:36:02 11:36:04 11:36:09

MR. COCHRAN: Again, objection. Object, saying that the letter was actually sent, lack of foundation, calls for speculation. 11:36:12 11:36:13 11:36:16 11:36:18

A. That's what it says. 11:36:19

Q. The subject line reads "Teamsters Local 237 Information-Quarterly Reports," correct? 11:36:20 11:36:23 11:36:25

A. Correct. 11:36:27

Q. And it's dated October 19th, 2012, right? 11:36:28 11:36:30

A. Yes. 11:36:31

Q. And you'll see a list of three attachments, one of which is brokerage (commission) report ASBF-2012-3Q.PDF, do you see that? 11:36:32 11:36:34 11:36:39 11:36:48

A. Yes. 11:36:48

Q. Moving down to the body of the email it says "Good afternoon Yolanda and Charles. Attached please find standard 11:36:48 11:36:49 11:36:52

CONFIDENTIAL

quarterly reports for the Teamsters accounts." Do you see that? 11:36:55 11:36:57
A. Yes. 11:36:59
Q. Now let's move to the attachment. 11:36:59 11:37:01
MR. COCHRAN: Objection, not established it's an attachment. 11:37:05 11:37:06
Q. This appears to be a list of Paradigm Capital Management trade activity for Teamsters Local 237 ASBF, correct? 11:37:12 11:37:15 11:37:15 11:37:19
A. It -- 11:37:20
MR. COCHRAN: Objection, lack of foundation, calls for speculation. 11:37:21 11:37:22 11:37:23
A. It appears to be for the third quarter of 2012. 11:37:23 11:37:26
Q. And is it your understanding that ASBF stands for Additional Security Benefit Fund? 11:37:28 11:37:30 11:37:33
MR. COCHRAN: Lack of foundation, calls for speculation. 11:37:34 11:37:34
A. I do not know. 11:37:42
Q. Okay. Are you aware of 11:37:43

CONFIDENTIAL

whether Paradigm refers to these reports as brokerage commission reports? 11:37:44 11:37:46

MR. COCHRAN: Object to form. 11:37:49

A. I believe it's the brokerage commission report that's referenced in the attachment on the email. 11:37:50 11:37:52 11:37:53

Q. Okay. Again, these are not paginated but turn with me to page 6 of the chart. 11:37:56 11:38:01 11:38:05

MR. COCHRAN: Counsel, is that the last page? 11:38:10 11:38:11

MS. FITZPATRICK: It is not. 11:38:12

MR. COCHRAN: Four, six, okay. 11:38:15

A. It starts American Eagle Outfitters? 11:38:17 11:38:20

Q. It does. Three lines down do you see where it says Big Lots Inc.? 11:38:20 11:38:23

A. I do. 11:38:24

Q. And the column headings, sorry to take you back to the first page again, the column headings on this chart are the same as those that we previously discussed that you explained for me, right? 11:38:29 11:38:31 11:38:33 11:38:34 11:38:35 11:38:37

CONFIDENTIAL

MR. COCHRAN: Object to form, calls for speculation, lack of foundation. 11:38:38 11:38:39 11:38:40

A. I believe that's correct. 11:38:41

Q. So you'll see on August 17th, 2012 there was a purchase of Big Lots' stock, correct? 11:38:43 11:38:51 11:38:57

MR. COCHRAN: Object to form, lack of foundation, calls for speculation. 11:38:58 11:39:00 11:39:03

A. Appears to be, yes. 11:39:03

Q. And this was of 125 shares, correct? 11:39:04 11:39:08

MR. COCHRAN: Same objections. Mr. Benton testified he was not the portfolio manager at the time. 11:39:09 11:39:11 11:39:14

A. Yes. 11:39:16

Q. And it appears to be at a stock price of 38.477, right? 11:39:17 11:39:18

MR. COCHRAN: Lack of foundation, calls for speculation. 11:39:23 11:39:23

A. Yes. 11:39:24

Q. Thank you. 11:39:35

MS. FITZPATRICK: Let's move 11:39:36

CONFIDENTIAL
on to the next document. 11:39:37
(Whereupon Benton Exhibit 11 11:39:39
was marked for identification, 11:40:40
quarterly reports by Gray & Company 11:40:40
for the Teamsters accounts dated 11:40:45
October 15, 2012.) 11:40:28
Q. You've just been handed what 11:40:28
has been marked Benton Exhibit 11. Do 11:40:29
you recognize this document? 11:40:32
A. I didn't receive it at the 11:40:36
time but I recognize it as a, one of the 11:40:37
quarterly reports required by Gray & 11:40:40
Company for the Teamsters accounts. 11:40:45
MR. COCHRAN: Object to form. 11:40:47
Sorry, lack of foundation, calls 11:40:48
for speculation. 11:40:50
Q. This document is dated October 11:40:51
15, 2012, correct? 11:40:53
A. Yes. 11:40:55
Q. And it was sent to Ms. Yolanda 11:40:55
Waggoner Foreman, right? 11:41:00
MR. COCHRAN: Lack of 11:41:02
foundation, calls for speculation. 11:41:03
A. Appears to have been, yes. 11:41:04

CONFIDENTIAL

Q. And it appears to be sent to Ms. Foreman at Gray & Company, right? 11:41:06 11:41:08
MR. COCHRAN: Same objections. 11:41:11
A. Yes. 11:41:13
Q. And reading the first sentence of the first paragraph it notes that the report is for the quarter ending September 30th, 2012, correct? 11:41:13 11:41:15 11:41:17 11:41:18
MR. COCHRAN: Object to form, lack of foundation, calls for speculation. 11:41:20 11:41:24 11:41:31
A. Yes. 11:41:31
Q. We just spoke about a purchase of Big Lots stock that occurred on August 17, 2012, right? 11:41:31 11:41:33 11:41:39
MR. KAPLAN: Object to form. 11:41:39
A. Yes. 11:41:40
Q. So this would cover the quarter that included that purchase of Big Lots' stock, right? 11:41:40 11:41:42 11:41:43
A. Yes. 11:41:44
MR. COCHRAN: Object to form, calls for speculation, lack of foundation. 11:41:45 11:41:46 11:41:47

CONFIDENTIAL

Q. Let's turn to the second page of the letter. Moving down to the third full paragraph, I'll read a segment of that paragraph. "We are neither market timers nor political pundits, and thus we continue to follow our investment philosophy and process of identifying undervalued companies with solid balance sheets, strong free cash flows, and the prospect of real growth even in an anemic economic environment. We continue to believe that these attributes will be rewarded over time and maintain our long-term investment perspective." Do you see that? 11:41:48 11:41:50 11:41:58 11:42:00 11:42:04 11:42:07 11:42:08 11:42:10 11:42:12 11:42:15 11:42:19 11:42:20 11:42:22 11:42:25 11:42:27
A. Yes. 11:42:27
Q. And so is this an accurate description of Paradigm's general approach to investing during the relevant period? 11:42:27 11:42:29 11:42:31 11:42:33
MR. COCHRAN: Object to form, calls for speculation, lack of foundation. 11:42:34 11:42:35 11:42:36
A. I believe it is. 11:42:38

CONFIDENTIAL

Q. So during the period when Paradigm purchased Big Lots' stock on behalf of Teamsters, it was following its investment philosophy, correct? 11:42:40 11:42:42 11:42:44 11:42:46

MR. COCHRAN: Object to form, calls for speculation, lack of foundation. He was not the portfolio manager at the time. 11:42:48 11:42:49 11:42:51 11:42:52

A. I believe that's generally correct, yes. 11:42:54 11:42:56

Q. Okay. Looking to the third page at the very top, it reads "This is not the first time over the past several decades that markets have been disconnected from fundamentals, and to a disciplined investor, this is always unsettling. Nonetheless, having prevailed over such periods in the past, we are convinced that while markets may fluctuate, true fundamentals will prevail over time." 11:42:57 11:43:02 11:43:06 11:43:08 11:43:10 11:43:12 11:43:15 11:43:17 11:43:19 11:43:21 11:43:24

Can you explain to me your understanding of the phrase "markets have been disconnected from fundamentals"? 11:43:25 11:43:27 11:43:30

CONFIDENTIAL

MR. COCHRAN: Object to form, calls for speculation, lack of foundation. He didn't write the letter. 11:43:31 11:43:33 11:43:34 11:43:36

A. My general understanding is, I think it was referenced in one of the earlier exhibits, that the market can react to a number of external events unrelated to the actual performance of the companies in the market. And I think that's what this is referring to. 11:43:37 11:43:40 11:43:41 11:43:44 11:43:49 11:43:53 11:43:56

Q. And so during this period of time, in 2012, did Paradigm view the markets as behaving inefficiently? 11:43:58 11:44:04 11:44:07

MR. COCHRAN: Object to form, lack of foundation, calls for expert testimony, calls for legal conclusion, calls for speculation. 11:44:11 11:44:12 11:44:14 11:44:16

A. Well, my general understanding is the markets for the most part will always perform inefficiently. So you make or lose money in the market. 11:44:19 11:44:22 11:44:25 11:44:29

Q. Okay. And so that's the environment in which Paradigm was 11:44:32 11:44:33

CONFIDENTIAL

purchasing stocks on behalf of Teamsters, right? 11:44:36 11:44:40

MR. COCHRAN: Same objections. 11:44:41

A. That was the environment? I'm sorry. 11:44:42 11:44:44

MR. COCHRAN: Also, in addition, object to form, vague and ambiguous. Do you want to re -- do you want to ask the question differently? 11:44:44 11:44:45 11:44:49 11:44:51 11:44:52

Q. Sure, I'll clarify. So the letter notes this is not the first time over the past several decades that markets have been disconnected from fundamentals. So is it your understanding that that is saying at this time markets were disconnected from fundamentals? 11:44:52 11:44:54 11:44:55 11:44:58 11:45:01 11:45:02 11:45:04 11:45:07

MR. COCHRAN: Object to form, calls for legal conclusion, calls for expert testimony, lack of foundation, calls for speculation, misstates testimony. 11:45:09 11:45:10 11:45:11 11:45:15 11:45:17

A. General understanding, yes. 11:45:19

CONFIDENTIAL

Q. Okay. And so this was the period in which Paradigm purchased Big Lots' stock on behalf of Teamsters, right? 11:45:22 11:45:23 11:45:27 11:45:29

MR. COCHRAN: Calls for speculation, lack of foundation, object to form. 11:45:31 11:45:32 11:45:34

A. It's my understanding, yes. 11:45:35

Q. You'll see at the bottom the cc lines indicate Charles Sheats at Gray & Company, Marla Oster at the Rhodes Group at Greystone Consulting and Medina Huertas at the Rhodes Group at Greystone Consulting. 11:45:37 11:45:39 11:45:44 11:45:48 11:45:51 11:45:54

Do you have an understanding of what the Rhodes Group at Greystone Consulting is? 11:45:55 11:45:56 11:45:58

A. I do not. 11:45:59

Q. Okay. 11:46:00

MS. FITZPATRICK: All right. Let's go to the next document. 11:46:05 11:46:05

(Whereupon Benton Exhibit 12 was marked for identification, termination letter from Gray & 11:46:46 11:46:46 11:46:46

CONFIDENTIAL

Company to Paradigm, dated September 17th, 2013.) 11:46:46 11:46:46

Q. You've just been handed what's marked Benton Exhibit 12. Do you recognize this document? 11:46:46 11:47:06 11:47:08

A. I didn't see it at the time but it appears to be a termination notice. 11:47:10 11:47:13 11:47:14

MR. COCHRAN: Lack of foundation, calls for speculation. 11:47:16 11:47:16

Q. This document is dated September 17th, 2013, correct? 11:47:18 11:47:20

A. Yes. 11:47:23

Q. And so this appears to be a termination letter from Gray & Company to Paradigm, correct? 11:47:24 11:47:26 11:47:30

MR. COCHRAN: Lack of foundation, calls for speculation. 11:47:31 11:47:32

A. Yes. 11:47:32

Q. Do you have an understanding of why Gray & Company terminated the services of Paradigm? 11:47:33 11:47:36 11:47:39

MR. COCHRAN: Lack of foundation, calls for speculation. 11:47:41 11:47:43

CONFIDENTIAL

A. I don't have a definitive understanding, no. 11:47:43 11:47:45

Q. Do you have a general understanding? 11:47:45 11:47:47

A. General understanding -- 11:47:47

MR. COCHRAN: Same objections. 11:47:48

Sorry. 11:47:49

A. My general understanding would be that we didn't perform against the benchmarks sufficient to what they were looking for. 11:47:50 11:47:51 11:47:58 11:47:59

Q. Do you have any further knowledge or detail about the reason the relationship ended? 11:48:02 11:48:04 11:48:09

A. I do not. 11:48:10

Q. Okay. 11:48:12

(Whereupon Benton Exhibit 13 was marked for identification, Paradigm marketing material from website entitled "How We Approach Our Craft.") 11:48:33 11:48:33 11:48:33 11:48:33 11:48:56

Q. You've just been handed what's marked Benton Exhibit 13. Do you recognize this document? 11:48:56 11:49:04 11:49:11

CONFIDENTIAL

A. Not specifically, but appears to be a marketing piece. 11:49:11 11:49:15
Q. Do you see the text at the bottom right-hand corner which says copyright 2016 Paradigm Capital Management, Inc.? 11:49:22 11:49:26 11:49:29 11:49:32
A. Yes. 11:49:32
Q. So does this appear to be a printout of the Paradigm website? 11:49:33 11:49:36
MR. COCHRAN: Lack of foundation, calls for speculation. 11:49:38 11:49:39
A. I don't know if it's a printout of the Paradigm website. Appears to be maybe a document obtained from the Paradigm website. I'm not sure. 11:49:40 11:49:44 11:49:47 11:49:51
Q. And the heading reads "How We Approach Our Craft," correct? 11:49:55 11:49:57
A. Yes. 11:50:00
Q. Is this, does this document accurately represent how Paradigm approaches its craft of investing currently? 11:50:04 11:50:06 11:50:08 11:50:11
MR. COCHRAN: Object to form, lack of foundation, calls for 11:50:12 11:50:13

CONFIDENTIAL

speculation. 11:50:17
A. May I just read it? 11:50:17
Q. Sure. 11:50:20
A. Could you repeat the question. 11:50:49
Q. Sure. Does this document accurately represent how Paradigm currently approaches its craft of investing? 11:50:50 11:50:51 11:50:54 11:50:56
MR. COCHRAN: Object to form, vague and ambiguous, lack of foundation, calls for speculation. 11:50:58 11:51:00 11:51:01
A. Generally, that's correct, yes. 11:51:01 11:51:04
Q. And does this document accurately characterize how Paradigm approached its craft of investing during the relevant period? 11:51:04 11:51:07 11:51:10 11:51:13
MR. COCHRAN: Same objections. I don't -- 11:51:14 11:51:15
A. Generally, yes. 11:51:16
Q. When you say generally, can you describe what you mean? 11:51:17 11:51:19
A. Well I'm not a portfolio manager so I wouldn't know the -- nor an 11:51:21 11:51:22

CONFIDENTIAL

analyst, so I wouldn't know the specifics of those determinations. 11:51:26 11:51:28

Q. So based on your understanding as a representative of Paradigm, this is an accurate characterization of Paradigm's approach to investing, right? 11:51:30 11:51:31 11:51:33 11:51:36

MR. KAPLAN: Asked and answered. 11:51:38 11:51:39

MR. COCHRAN: And misstates testimony. He said he's not a portfolio manager or an analyst. Lack of foundation, calls for speculation. 11:51:39 11:51:40 11:51:42 11:51:45 11:51:50

A. That's generally correct. 11:51:50

Q. Great. 11:51:54

MS. FITZPATRICK: Let's move to the next document. 11:51:56 11:51:56

(Whereupon Benton Exhibit 14 was marked for identification, Paradigm marketing material from website entitled "What We Stand For.") 11:51:58 11:51:58 11:51:58 11:51:58 11:52:25

Q. You've just been handed Benton Exhibit 14. You can take a moment to 11:52:25 11:52:38

CONFIDENTIAL

review the document. 11:52:40
A. Yes. 11:53:09
Q. Do you recognize this document? 11:53:09 11:53:11
A. It appears to be, again, a document, a marketing piece I describe it from Paradigm Capital Management. 11:53:11 11:53:13 11:53:19
MR. COCHRAN: Lack of foundation, calls for speculation. 11:53:20 11:53:22
Q. And would you say that this description of what Paradigm stands for is an accurate characterization of Paradigm's approach to investing? 11:53:23 11:53:27 11:53:30 11:53:32
MR. COCHRAN: Object to form, vague and ambiguous, lack of foundation, calls for speculation. 11:53:35 11:53:37 11:53:38
A. Generally, yes. 11:53:38
Q. And it's your understanding that this approach to investing was the same during the relevant period, correct? 11:53:42 11:53:47 11:53:50
MR. COCHRAN: Object to form, vague and ambiguous, lack of foundation, calls for speculation. 11:53:53 11:53:55 11:53:56
A. It's my understanding, yes. 11:53:57

CONFIDENTIAL

Q. Okay. 11:54:02

MS. FITZPATRICK: Let's move to the next document. 11:54:03 11:54:04

(Whereupon Benton Exhibit 15 was marked for identification, Paradigm marketing material from website entitled "Why Small Cap?") 11:54:05 11:54:05 11:54:05 11:54:08

Q. You've just been handed what's been marked Benton Exhibit 15. Take a moment to review the document. 11:54:08 11:54:43 11:54:45

A. Yes. 11:55:43

Q. Do you recognize this document? 11:55:43 11:55:44

MR. COCHRAN: Object to form, lack of foundation, calls for speculation. 11:55:45 11:55:46 11:55:48

A. Not specifically, but generally I believe it to be a marketing piece of Paradigm Capital Management. 11:55:48 11:55:51 11:55:53

Q. And does this explain, in marketing terms, Paradigm's approach to investing in securities? 11:55:55 11:56:00 11:56:03

MR. COCHRAN: Objection to form, vague and ambiguous. 11:56:04 11:56:05

CONFIDENTIAL
MR. KAPLAN: Object to form. 11:56:07
MR. COCHRAN: Vague and ambiguous, calls for speculation, lack of foundation. 11:56:08 11:56:09 11:56:11
Q. I'll rephrase. Does this document additionally explain Paradigm's approach to investing? 11:56:11 11:56:13 11:56:16
MR. COCHRAN: Same objections. 11:56:17
A. Amongst other things, yes, generally. 11:56:24 11:56:26
Q. And it is your understanding that this approach was the same -- the approach described herein is the same as that which Paradigm took during the relevant period? 11:56:26 11:56:27 11:56:30 11:56:32 11:56:35
A. Can you -- 11:56:36
MR. COCHRAN: Same objections. Sorry. Go ahead. 11:56:37 11:56:39
A. Can you reference me the paragraph that you're referring to when you say that? Because some of the things here really appear to be statements about small cap stocks versus long cap, large cap stocks. 11:56:40 11:56:41 11:56:42 11:56:45 11:56:49 11:56:52

CONFIDENTIAL

Q. I'll point to the second sentence in the fourth paragraph. "By remaining grounded in the fundamentals, a skilled active manager with a long-term outlook can both recognize and capitalize on these disconnects as they arise." Do you see that? 11:56:53 11:56:56 11:56:59 11:57:01 11:57:04 11:57:06 11:57:10

A. Yes. 11:57:10

Q. And is that an accurate description of Paradigm's approach to investing? 11:57:11 11:57:16 11:57:20

A. In -- 11:57:21

MR. COCHRAN: Object to form, lack of foundation, calls for speculation. 11:57:22 11:57:23 11:57:25

A. In general terms, yes. 11:57:25

Q. And it's your understanding that that approach to investing has remained consistent since the relevant period, right? 11:57:27 11:57:28 11:57:31 11:57:33

MR. COCHRAN: Same objections. 11:57:34

A. My understanding, yes. 11:57:35

MS. FITZPATRICK: I have no further questions. 11:57:42 11:57:43

CONFIDENTIAL

MR. COCHRAN: I'm going to need -- let's go off the record. 11:57:43 11:57:44

THE VIDEOGRAPHER: Here marks the end of file number 3, we are going off the record, time is 11:57 a.m. 11:57:46 11:57:47 11:57:49 11:57:51

(A recess was had.) 11:57:52

THE VIDEOGRAPHER: Here marks the beginning of file number 4, we are back on the record, the time is 12:09 p.m. 12:09:29 12:09:30 12:09:32 12:09:33

EXAMINATION BY MR. COCHRAN: 12:09:35

Q. Mr. Benton, earlier you testified that you are not a portfolio manager; is that correct? 12:09:36 12:09:38 12:09:39

A. That is correct. 12:09:40

Q. And you are not an analyst; is that correct? 12:09:40 12:09:42

A. That is correct. 12:09:42

Q. And you were not an analyst in 2012; is that correct? 12:09:43 12:09:48

A. Correct. 12:09:48

Q. And you were not a portfolio manager in 2012, correct? 12:09:49 12:09:50

CONFIDENTIAL

A. Correct. 12:09:52

Q. And you were not a portfolio manager for Teamsters 237 Additional Security Benefit Fund, correct? 12:09:52 12:09:53 12:09:58

A. Correct. 12:09:58

Q. And you are not an analyst for the account of Teamsters additional -- 237 Additional Security Benefit Fund, correct? 12:09:58 12:10:00 12:10:03 12:10:05

A. That is correct. 12:10:05

Q. Okay. And who were the investment managers at Paradigm for Teamsters 237 during 2012? 12:10:06 12:10:08 12:10:12

A. The portfolio managers were Jason Ronovech and Jonathan Vyorst. 12:10:17 12:10:19

Q. And did you speak with those individuals in preparing for today's deposition? 12:10:24 12:10:25 12:10:27

A. I did not. 12:10:28

Q. Okay. Have you ever spoken with those individuals about Teamsters 237's accounts? 12:10:28 12:10:29 12:10:32

A. Not to my best recollection. 12:10:33

Q. Have you ever spoken with 12:10:35

CONFIDENTIAL

either Jason Ronovech and Jonathan Vyorst? 12:10:38 12:10:43
A. Vyorst. 12:10:43
Q. Vyorst, about Teamsters's 237's investments in Big Lots? 12:10:44 12:10:46
A. Not that I recall. 12:10:50
Q. Now, based on your understanding, does Paradigm Capital invest in securities no matter what the price of the security is? 12:10:58 12:11:00 12:11:05 12:11:07
MR. KAPLAN: Objection to the form. 12:11:10 12:11:10
A. Could you elaborate a little more? 12:11:11 12:11:16
Q. Sure. So, for example, would Paradigm purchase Big Lots' common stock at any price? 12:11:17 12:11:19 12:11:24
MR. KAPLAN: Objection to the form. 12:11:26 12:11:27
A. No, I don't think that's correct. 12:11:28 12:11:29
Q. They would consider what the current market price of the security is prior to investing, correct? 12:11:30 12:11:32 12:11:35

CONFIDENTIAL

A. They consider the current market price versus their fundamental analysis and valuation of the company. 12:11:37 12:11:40 12:11:44

Q. And part of that analysis would include a consideration of the current market price, correct? 12:11:45 12:11:46 12:11:48

A. They'd reference that, yes. 12:11:49

Q. Because they would believe that the security would increase in value over time, correct? 12:11:50 12:11:52 12:11:53

A. That was, yes, general understanding, yes. 12:11:56 12:11:58

Q. Okay. Now if we turn to exhibit, previously marked exhibit 4 which is a document titled Paradigm Capital Management. And if you look at the first page it says firm and Smid strategy overview for Teamsters Local 237. Do you have that document? 12:11:59 12:12:02 12:12:12 12:12:16 12:12:18 12:12:21 12:12:24

A. Are you looking at the attachment or -- 12:12:25 12:12:26

Q. The first page of the, quote, unquote, attachment. 12:12:28 12:12:31

A. The first page, the cover 12:12:35

CONFIDENTIAL

page. 12:12:37
Q. The cover page, slide 1, 12:12:38
titled Paradigm -- 12:12:40
A. Yes. 12:12:42
Q. -- Capital Management Firm and 12:12:42
Smid Strategy Overview for Teamsters 12:12:44
Local 237? 12:12:47
A. Yes. 12:12:48
Q. Okay. If you turn to page 7 12:12:48
of that document there is a slide 12:12:56
entitled investment process: Idea 12:12:57
generation and research. Do you see that 12:13:00
that document? 12:13:02
A. I see that page, yes. 12:13:03
Q. And does this page reflect 12:13:04
your understanding of Paradigm Capital's 12:13:10
investment process with respect to 12:13:12
Teamsters' 237 account? 12:13:14
A. My general understanding, yes. 12:13:20
Q. And part of that process 12:13:22
Paradigm would look at the earnings, cash 12:13:23
flow and balance sheet criteria, correct? 12:13:25
A. Yes. 12:13:30
Q. And that information would 12:13:30

CONFIDENTIAL

generally be on a company's SEC filings, correct? 12:13:34 12:13:37

A. Yes. 12:13:39

Q. Paradigm Capital Management would generally consider the SEC filings of companies whose securities they were considering purchasing, correct? 12:13:40 12:13:43 12:13:47 12:13:50

A. That's correct. 12:13:53

Q. And if you go down to the next bullet point it's titled "Fundamental analysis and it says income, cash flow, and balance sheet examination," do you see that line? 12:13:54 12:13:58 12:14:01 12:14:04 12:14:07

A. Yes. 12:14:08

Q. And in deciding whether to invest in a company, Paradigm Capital would look at the company's income, cash flow and balance sheet, correct? 12:14:08 12:14:11 12:14:14 12:14:17

A. Yes. 12:14:18

Q. And that information would be contained in the company's SEC filings, correct? 12:14:19 12:14:22 12:14:25

A. Yes. 12:14:26

Q. And Paradigm Capital would 12:14:27

CONFIDENTIAL

consider the company's SEC filings in deciding whether to invest, correct? 12:14:28 12:14:32

A. Yes. 12:14:33

Q. If you look at the next subbullet point it says, "Focus on improvements to return on invested capital and operating margins." Do you see that? 12:14:34 12:14:36 12:14:38 12:14:40 12:14:43

A. Yes. 12:14:43

Q. And does that sentence mean that Paradigm would consider the expected future return on invested capital from the company in deciding whether to invest? 12:14:43 12:14:47 12:14:51 12:14:57 12:15:00

A. It's expectation of those expected improvements, yes. 12:15:00 12:15:02

Q. So, for example, would it look at a company's expected future cash flows? 12:15:04 12:15:06 12:15:10

A. Based on its current financials and its understanding of strategies in the future, yes. 12:15:10 12:15:13 12:15:16

Q. Would it consider a company's sale projections? 12:15:17 12:15:19

CONFIDENTIAL

A. Yes. 12:15:20

Q. Would it consider a company's expected earnings? 12:15:21 12:15:26

A. Yes. 12:15:28

Q. Would it consider a company's expected revenue? 12:15:28 12:15:30

A. Yes. 12:15:32

Q. And this would be based on company's statements regarding its expected revenue, correct? 12:15:33 12:15:37 12:15:39

A. Correct. 12:15:43

Q. Looking at the next bullet point, it says "In-Depth knowledge of management and industry." So Paradigm, as part of its investment process, would attempt to gather in-depth knowledge of management and industry, correct? 12:15:44 12:15:49 12:15:53 12:15:55 12:15:58 12:16:01

A. Correct. 12:16:03

Q. And part of that would include dialogue with the company's management and other sources, correct? 12:16:04 12:16:07 12:16:09

A. Yes. 12:16:11

Q. So the company would consider statements of management in deciding 12:16:11 12:16:13

CONFIDENTIAL

whether to invest in that company, correct? 12:16:15 12:16:17

A. Yes. 12:16:17

Q. Mr. Benton, have you previously testified -- have you ever testified as a legal expert in a securities fraud class action? 12:16:18 12:16:24 12:16:25 12:16:31

A. No. 12:16:33

Q. Are you trained as an attorney? 12:16:34 12:16:35

A. No. 12:16:35

Q. Have you ever provided an expert report in a securities fraud class action? 12:16:36 12:16:38 12:16:41

A. No. 12:16:42

Q. Have you ever given expert testimony regarding an efficient market? 12:16:42 12:16:44

A. No. 12:16:49

Q. Are you familiar with the Cammer factors? 12:16:49 12:16:51

A. No. 12:16:52

Q. Are you familiar with the factors courts consider in determining whether a market is efficient or not? 12:16:53 12:16:55 12:16:58

CONFIDENTIAL

A. No. 12:17:00

Q. Are you prepared to testify as to whether or not a market is efficient in the legal sense of the term? 12:17:01 12:17:05 12:17:06

A. No. 12:17:09

Q. So earlier you mentioned Paradigm Capital looked for inefficient markets, correct? 12:17:10 12:17:16 12:17:20

A. Inefficiencies, yes. 12:17:21

Q. And those inefficiencies you meant from an investing standpoint, correct? 12:17:24 12:17:26 12:17:28

A. Correct. 12:17:28

Q. Not from a legal standpoint? 12:17:28

A. Correct. 12:17:30

Q. And by inefficiencies you meant you believed that -- strike that. 12:17:31 12:17:34

By inefficiencies Paradigm believes securities are worth more than their current market price, correct? 12:17:37 12:17:45 12:17:47

A. Based on their analysis, correct. 12:17:48 12:17:50

Q. Based on their analysis, correct? 12:17:50 12:17:51

Case: 2:12-cv-00604-MHW-KAJ Doc #: 75-4 Filed: 07/29/16 Page: 126 of 148 PAGEID #: 3132



CONFIDENTIAL

A. Correct.

Q. And by that, that's what you -- and so currently -- previously when you testified as to inefficient markets, you were referring to investing inefficiencies, correct?

A. Correct.

MR. COCHRAN: Okay, no further questions.

MS. FITZPATRICK: Let's go off the record.

THE VIDEOGRAPHER: Here marks the end of file number 4, we are going off the record, the time is 12:18 p.m.

(A recess was had.)

THE VIDEOGRAPHER: Here marks the beginning of file number 5, we are back on the record, the time is 12:26 p.m.

MS. FITZPATRICK: I have no further questions for the witness.

MR. COCHRAN: I have no further questions.

CONFIDENTIAL

THE VIDEOGRAPHER: Here marks the end of file number 5, we are going off the record, the time is 12:27 p.m. 12:26:45 12:26:46 12:26:48 12:26:50

(Time noted: 12:27 p.m.)

C E R T I F I C A T E

STATE OF NEW YORK )
: ss.
COUNTY OF NEW YORK )

I, MARK RICHMAN, a Certified Shorthand Reporter, Registered Professional Reporter and Notary Public within and for the State of New York, do hereby certify:

That prior to being examined, the witness named in the foregoing deposition was duly sworn to testify the truth, the whole truth, and nothing but the truth.

That said deposition was taken down by me in shorthand at the time and place therein named and thereafter reduced by me to typewritten form and that the same is a true, correct, and complete transcript of said proceedings.

Before completion of the deposition, review of the transcript {} was {x} was not requested. If requested, any changes made by the deponent (and provided to the reporter) during the period allowed are appended hereto.

I further certify that I am not interested in the outcome of this matter.

Witness my hand this 21st day of July, 2016.

______________________________

MARK RICHMAN, C.S.R., RPR

**$**

**$1.8** 56:18,25 57:10
**$1.8B** 55:24 56:14
**$2.5B** 55:23

**0**

**01-01-12** 70:24
**03-31-12** 70:25

**1**

**1** 18:10,12,16,17 36:23, 24,25 39:22 119:3
**1.8** 56:20
**10** 93:23
**10:07** 39:22
**10:20** 40:4
**10:57** 79:5
**11** 68:2 69:18 99:3,9
**11:21** 79:11
**11:57** 115:6
**12** 87:6 105:23 106:5
**125** 98:13
**12:09** 115:12
**12:18** 125:16
**12:26** 125:21
**12:27** 126:5,6
**13** 24:16 85:15 87:3 107:18,24
**13F** 16:23
**13g's** 16:23
**14** 110:19,25
**14th** 34:22 36:3
**15** 21:8 99:7,19 112:5,10
**15th** 24:6,14
**16** 26:13,25 27:6,7
**17** 100:16
**17th** 98:6 106:3,13
**18** 58:22 60:11 79:21 82:11
**18th** 36:5
**19** 53:20 54:24 94:2
**1983** 15:15
**1992** 13:10
**19th** 95:15
**1Q** 69:15
**1q.pdf** 69:22
**1st** 19:8

**2**

**2** 19:5 23:25 24:2,9 40:2 79:5
**20** 10:6
**2000** 23:14
**2001** 17:5 19:8
**2010** 24:7,14
**2011** 21:18 34:22 36:5 49:20, 22 50:5 53:20 54:24 57:25 58:22 60:11 62:7
**2012** 19:9 68:3 69:15,18,22 71:18 79:21 82:11,19 85:16 87:3 88:17,20 94:3 95:16 96:18 98:7 99:7,19 100:9,16 103:14 115:22,25 116:14
**2013** 23:17,21 106:3,13
**2016** 10:6 108:6
**20th** 71:18
**237** 21:10 22:6 30:5 41:15 60:7 70:21 95:12 96:11 116:4,9,14 118:20 119:8,19
**237's** 116:23 117:6
**25** 79:18
**2500** 27:22 62:25
**27** 88:20
**2:12-CV-00604-MHW-NMK** 10:18
**2Q** 87:6 88:17

**3**

**3** 28:24 29:5 79:9 115:5
**30(b)(6)** 76:13
**30th** 62:6 100:9
**31st** 19:9 82:19
**38.477** 98:20

**4**

**4** 32:24 33:5 41:5 42:4 115:10 118:15 125:14
**400** 71:24 77:18
**45.23** 72:4

**5**

**5** 53:16,24 125:19 126:3
**566** 61:3

**6**

**6** 19:6 43:21 58:18,24 97:9

**7**

**7** 50:8 67:23 68:5 119:10

**8**

**8**
79:14,19 80:4

**825**
10:10

**9**

**9**
12:17 85:12,18

**9/30/11.PDF**
60:16

**9/30/11draft.pdf**
60:20

**9:39**
10:7

**A**

**a.m.**
10:8 40:4 79:6,11 115:7

**ability**
51:13

**Absolutely**
89:10

**account**
116:8 119:19

**accounting**
15:18

**accounts**
20:6 22:5 57:8 70:4 80:16 81:13,14 96:3 99:6,14 116:23

**accurate**
31:2 37:4 63:5 90:9 101:18 110:6 111:13 114:10

**accurately**
62:13 63:17 64:6,23 108:21 109:7,16

**acting**
21:17 80:24,25 81:6,9 82:3 83:21

**action**
123:8,15

**active**
46:7 114:5

**actively**
89:10

**activity**
70:21 77:16 96:11

**actual**
90:8 103:10

**Adam**
10:4

**add**
30:2 56:4 93:5

**addition**
57:14 104:8

**additional**
21:11 96:20 116:4,8,9

**additionally**
113:7

**address**
12:16

**addressed**
82:13

**adds**
61:11

**adherence**
42:15

**admissible**
77:3

**ADV**
16:24

**advisor**
13:14

**advisors**
82:6

**afternoon**
95:24

**agent**
29:19 31:16 32:13 82:4

**ago**
19:4 20:24

**agreement**
20:5 21:16 24:4,10,24 28:18 30:4

**ahead**
113:19

**Alan**
10:13

**Albany**
12:9,17

**Albert**
10:13 11:17 12:3

**allow**
89:22

**allowed**
29:17

**aloud**
42:9 62:10 83:8 89:3 90:25

**ambiguous**
43:13 44:15 104:9 109:11 111:16,23 112:25 113:4

**Amelia**
23:23

**American**
97:15

**Amount**
74:20

**analysis**
38:15 48:19 50:17 51:17 52:23 62:15 75:15,22 76:6,15 77:19 83:19 92:16,21 93:7 118:4,5 120:12 124:22, 24

**analyst**
110:2,12 115:18,21 116:7

**analyzes**
14:15

**analyzing**
37:22 50:22 53:3

**anemic**
101:11

**answer**
21:14 49:14 55:16 77:2, 4

**answered**
38:20 44:13 110:9

**answering**
12:24

**apparently**
58:14

**appear**
74:13 92:2 108:9 113:23

**appeared**
81:6,8

**appears**
33:12,17 36:15 37:12 42:4 59:7 70:13,15 83:8 88:6,15 94:21 96:9,17 98:12,19 99:25 100:2 106:8,15 108:2,15 111:6

**approach**
14:2,12 37:20 43:14,16 44:11,18 46:22 49:16, 21 50:5 78:19 83:18 84:24 85:5 92:15,18 101:20 107:21 108:18 110:7 111:14,20 112:22 113:8,13,14 114:11,19

**approached**
109:17

**approaches**
108:22 109:8

**appropriate**
16:23 48:6

**appropriately**
43:4

**approval**
26:4

**approximately**
10:7 19:4 27:18

**April**
19:8 34:22 36:3,5 68:2 69:17 79:21 82:11

**area**
14:5

**ASBF**
70:21 96:11,20

**ASBF-2012-3Q.PDF**
95:20

**asked**
38:19 44:12 110:8

**asking**
19:19 30:8 40:15 44:5 46:13 55:11 56:7 57:13 63:21,23 82:24 83:3 90:7,14

**aspect**
49:8,11

**assessment**
47:21 78:4

**assets**
25:18 51:2

**associate**
11:6

**Associates**
18:4

**assume**
55:24

**attached**
34:24 35:16,25 42:2 60:24 61:15 70:2 87:17 88:7 95:25

**attaching**
94:14

**attachment**
34:25 35:5 36:19 40:9, 13 41:18,23 58:22 62:3 68:3 70:8,12,16 85:16, 20 86:5 87:5 94:3,17 96:6,8 97:7 118:22,24

**attachments**
35:10 60:14 61:8 69:21 70:14 94:15 95:19

**attempt**
122:17

**attend**
15:19 52:18

**attended**
36:10

**attorney**
19:23 123:11

**attorney-in-fact**
29:20

**attributes**
101:13

**August**
85:15 87:2 98:6 100:15

**author**
48:3 58:11

**authority**
29:19 30:15 31:3,15 32:12

**Avenue**
10:11

**aware**
28:13,15 53:13 96:25

**B**

**B-e-n-t-o-n**
12:6

**Bachelor**
15:17

**back**
40:3 42:2 58:3 63:14 72:8 77:8 79:10 82:9 97:21 115:11 125:20

**background**
15:10

**balance**
14:15 37:22 50:17 52:24 101:9 119:23 120:13,19

**bank**
17:11,12

**based**
37:21 38:3 43:5 45:21 46:20 48:18 62:22 77:16,19,20 92:16 93:7 110:4 117:8 121:21 122:9 124:22,24

**basis**
16:18 44:17

**Bates**
33:11 35:14 40:7 59:6, 14 70:10 71:4 86:5 94:10

**began**
57:15,22

**beginning**
23:11 40:2 47:10 79:9 115:10 125:19

**begins**
47:13 55:2

**behalf**
11:11 12:24 21:17 30:15 76:5,11,14 102:4 104:2 105:4

**behaving**
103:15

**belief**
91:9

**beliefs**
42:16

**believe**
21:15 22:12,24 25:7 26:10 28:2,21 34:10,11 50:4 51:12,16 52:18 57:4,24 58:15 61:24 62:13 75:13,18 80:13 81:13 86:7 97:5 98:5 101:13,25 102:10 112:19 118:9

**believed**
38:4 43:3 66:6 77:22 124:18

**believes**
46:24 48:20 63:17 124:20

**benchmark**
27:22 61:3

**benchmarks**
107:11

**Benefit**
21:11 96:21 116:5,9

**Benton**
10:13 11:17 12:3,8 13:7 18:12,16,17 24:2,8 28:24 29:5 32:24 33:5 36:9 37:10 41:5 42:24 53:16,24 58:18,24 59:3, 17 61:24 67:23 68:5,18 79:13,19 80:4 85:12,18 88:11 93:23 98:16 99:3, 9 105:23 106:5 107:18, 24 110:19,24 112:5,10 115:14 123:5

**best**
116:24

**beyond**
80:18

**Big**
10:14,24 20:13 55:3,6, 18 57:16,22 58:6 66:21 71:15 75:15 76:7,15 77:18,20 78:12 97:18 98:7 100:15,21 102:3 105:3 117:6,17

**billion**
15:7 27:18,19 55:24 56:18,20,25 57:11

**bit**
15:9 47:22

**body**
60:22 87:9 95:23

**books**
16:17

**bottom**
87:16 89:5 105:10 108:5

**bought**
89:25

**bound**
13:3

**bps**
61:3

**break**
39:20 40:6 43:2 78:24

**Brian**
11:10

**brief**
87:18

**broker**
72:11,14 74:12

**brokerage**
69:21 74:23 95:19 97:3, 5

**budgeting**
16:18

**bullet**
43:23 44:20 45:19 46:20 47:18 51:19 120:11 122:13

**business**
13:12 17:19 46:9,23 47:4,11,16 56:3 58:4,7 73:4

**buy**
39:13,14 45:5 73:20

89:23 92:11

**buying**
89:15 93:12

## C

**Caitlin**
10:22

**call**
20:23 88:7,13,17 91:25

**call.pdf**
87:7

**called**
11:18 22:15

**calls**
13:8 24:19 25:2,12 30:21 31:5 32:6,17 36:7 37:8 38:20 39:7 44:13, 14 45:16 48:10 50:7,21 51:5 52:11,14 53:5 55:9 56:10 57:18 58:9 61:19 63:10,25 64:13 65:5,15 66:16,25 71:20 72:12 75:3,11,19 76:21,22 77:12,13 78:7,17 80:21 81:4,20 82:22 83:15 84:10,22 88:10 90:20 91:7,13 92:24 95:9 96:15,23 98:3,10,22 99:16,24 100:11,24 101:23 102:7 103:3,17, 18,19 104:21,23 105:6 106:11,19,25 108:12,25 109:12 110:13 111:10, 17,24 112:16 113:4 114:15

**Cammer**
123:21

**can't**
22:19

**Candace**
14:11 18:6 24:18 42:5 53:19 54:15 55:2 57:13

**cap**
13:24,25 14:4,8 15:2,6 22:7 26:22,24 27:11 55:23 56:19,21 57:2,10 112:8 113:24,25

**capacity**
82:3

**capital**
12:13,20 41:18 56:19 60:7 70:20 96:10 108:6 111:8 112:20 117:9 118:17 119:6 120:5,17, 25 121:8,13 124:8

**Capital's**
119:17

**capitalization**
27:14,20

**capitalize**
39:5 46:8,19 114:6

**career**
14:7

**case**
10:18 26:10

**cash**
50:17 51:14,16 52:23 101:10 119:22 120:12, 18 121:19

**cc**
105:11

**ceiling**
57:7,11

**certain**
83:19

**certainly**
25:24 36:14 43:14 65:22

**chain**
33:2

**challenging**
87:12

**Chan**
11:8

**chance**
94:19

**characteristics**
89:14

**characterization**
63:6 110:6 111:13

**characterize**
109:16

**charged**
74:13

**Charles**
95:25 105:11

**Charles.sheats@ egrayco.com**
69:2

**Charlessheats@ egrayco.com**
95:5

**chart**
70:19 71:14 97:10,22

**chief**
16:3,5,16

**cities**
52:17

**CL**
18:4,7

**Claire**
11:5

**clarify**
14:20 26:14 32:2 40:16 104:12

**class**
11:12 123:8,14

**clear**
40:8,15 85:25

**clearly**
88:14 94:9

**Cleveland**
17:12

**client**
25:9

**clients**
34:3 42:17

**closing**
16:17

**Cochran**
11:10 13:6 20:15 21:13 22:23 23:22 24:19 25:2, 12,21 26:8,20 27:4,16 28:6,14,19 29:14 30:7, 17,21 31:5,12,19,24 32:5,17 33:8 34:4,13 35:2,11,18 36:6 37:7,18 38:19 39:6 40:6,14 41:20,24 42:6,21 43:11, 19 44:4,12,24 45:15,24 46:11 47:5,24 48:8,16 49:3,6,10,25 50:6,12,20 51:4,15 52:7 53:4,8,21 54:10,17 55:8 56:6,15 57:3,17,23 58:8 59:3 60:4 61:6,17,19 63:3,9, 20 64:9,12,16 65:4,14, 18 66:4,11,16,24 67:4 68:7 69:4,11 70:9 71:3, 19 72:2,6,12,18,25 73:8,13,18,23 74:3,8, 11,16,21 75:3,10,17 76:2,17,20 77:11 78:6, 16,22 79:2 80:11,20 81:3,11,19,25 82:20 83:14 84:3,9,20 85:7,21 86:15 87:24 88:9 90:5, 19 91:6,12,22 92:9,14, 23 93:16 94:4,25 95:6 96:7,14,22 97:4,11,14 98:2,9,15,21 99:15,23 100:4,10,23 101:22 102:6 103:2,16 104:4,7, 20 105:6 106:10,18,24 107:7 108:11,24 109:10,19 110:10 111:9,15,22 112:15,24 113:3,9,18 114:14,22 115:2,13 125:9,24

**Code**
73:16

**college**
15:11

**Coller**
11:8

**column**
72:10 74:7,20 97:20,22

**combined**
70:17

**comes**
47:15

**comfortable**
90:2

**commission**
69:22 74:10,13,23 95:20 97:3,6

**committee**
34:18

**common**

18:6 117:17

**companies**
15:2 38:2 47:2,8,19 48:18 50:24 51:3 53:3 56:25 66:5 83:20 89:15, 23 92:12,19 101:9 103:11 120:7

**companies'**
47:11

**company**
12:11 16:4 17:2 20:4,10 21:16 22:2,10,13,15,18 24:6,11 25:9,16 26:16 34:12 37:21,25 38:9 39:16 46:22 48:21 52:15,21 55:4,20 62:15 63:19 64:7,20,24 65:9, 23 69:3,8 80:15,18 81:16 82:3,15 83:10 99:5,14 100:3 105:12 106:2,16,22 118:4 120:17 121:14 122:24 123:2

**company's**
25:9 43:4 120:2,18,22 121:2,19,24 122:3,6,10, 21

**compared**
78:3

**comparison**
27:22

**competitive**
62:19

**compliance**
16:6,19

**comply**
16:20

**comprised**
47:19

**concern**
93:12

**conclusion**
13:8 30:22 31:6 32:6,18 44:6,15 46:14 76:23 77:14 103:19 104:21

**conclusions**
45:12

**conference**
87:6 88:7,13,17

**confidential**
10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1,17,20 68:1, 10,17 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 96:1 97:1 98:1 99:1 100:1 101:1 102:1 103:1 104:1 105:1 106:1 107:1 108:1 109:1 110:1 111:1 112:1 113:1 114:1 115:1 116:1 117:1 118:1 119:1 120:1 121:1 122:1 123:1 124:1 125:1 126:1

**confidentiality**
67:9

**confines**
32:3,15

**connection**
48:4

**consecutively**
94:10

**consider**
43:7,15 92:7 117:23 118:2 120:6 121:2,12, 24 122:3,6,24 123:24

**consideration**
118:6

**considered**
53:12

**considering**
120:8

**consistent**
114:20

**consultation**
29:23

**Consulting**
105:13,15,18

**consummated**
74:5

**contained**
120:22

**content**
90:7

**continue**
101:7,12

**continuing**
55:21

**contracted**
22:9 26:16 69:8

**conversations**
21:6

**conviction**
62:22

**convinced**
102:20

**copyright**
108:6

**corner**
108:5

**cornerstones**
42:10

**corporate**
17:24 62:18

**corporations**
13:20

**correct**
14:24 15:3,4 24:11,18 27:8 28:18 29:12,13 30:6,9,16 31:17,21 32:11,20 33:7 34:22 39:17 41:9,10,13,16,25 42:5 43:17,18 50:11 51:14 54:5,15,16,24 56:23 59:21,22,24,25 60:8 62:4 63:13 64:25 66:10 68:23 69:10,15 71:18 72:5 78:5,10 81:18 82:11,15 84:8 85:6 86:13 87:3,7 88:8 94:22 95:13,14 96:12 98:5,8,14 99:19 100:9 102:5,11 106:13,17 108:18 109:13 110:15 111:21 115:16,17,19, 20,22,23,25 116:2,5,6, 10,11 117:22,25 118:7, 11 119:23 120:3,8,9,19, 23 121:3 122:11,12,18, 19,22 123:3 124:9,13, 14,16,21,23,25 125:2,7, 8

**correctly**
81:23

**counsel**
10:19 20:22 40:14 41:20 55:8 67:4,11,13 78:22 97:11

**couple**
20:14

**court**
10:5,16 11:14

**courteous**
79:25 80:2

**courts**
123:24

**cover**
15:9 23:15 37:2,3 41:3 70:18 100:19 118:25 119:3

**CPA**
15:24

**craft**
107:22 108:18,22 109:8,17

**Cravath**
10:10,23 11:4

**created**
75:2,6,8

**creating**
59:10

**criteria**
119:23

**culminates**

62:18

**current**
12:15 15:25 16:10,13 51:2,7 117:24 118:2,7 121:21 124:21

**currently**
108:23 109:8 125:4

**cut**
55:25 56:14

**cutoff**
15:5

**cycle**
46:9,23 47:4,16

**cycles**
47:11

**D**

**date**
10:6 70:24 72:17,22,24 73:4 77:17 87:2

**dated**
24:6,13 34:21 36:3 53:19 54:23 58:21 60:10 62:6 68:2 69:17 79:21 82:10 85:15 88:19 94:2 95:15 99:6, 18 106:2,12

**David**
11:3

**day**
77:21

**days**
73:3,4

**decades**
102:15 104:14

**December**
19:9 24:6,14

**deciding**
55:3 120:16 121:3,14 122:25

**decisions**
23:9 29:22

**defendants**
10:25 59:13

**defense**
67:13

**define**
49:5

**defined**
30:5 32:4,16

**defines**
19:6

**definitive**
107:2

**degree**
15:16

**delegate**
25:16

**delegated**
25:23

**deposition**
10:12 18:14,20 19:22 116:19

**describe**
13:15 14:13 16:8 21:25 30:25 31:10 80:9 93:19 109:23 111:7

**described**
31:13,14 37:20 113:14

**description**
29:16 30:13 31:2 36:17 90:3 101:19 111:12 114:11

**designations**
67:10

**detail**
107:14

**determinations**
110:3

**determined**
64:8,25 65:9,23

**determining**
123:24

**dialogue**
51:21,25 52:25 62:16 90:8 122:21

**didn't**
26:3 66:8 99:11 103:4 106:7 107:10

**different**
33:13 53:9

**differently**
104:11

**direct**
19:5 29:20 31:16 32:13

**direction**
16:25

**directly**
22:9,10 52:20

**director**
16:4,24 33:24

**disagreement**
20:17

**Discipline**
42:9

**disciplined**
46:6 102:17

**disclosure**
29:2,9,10

**disconnected**
102:16,25 104:15,18

**disconnects**
114:7

**discounts**
47:20

**discretion**
25:17

**discretionary**
25:25

**discuss**
68:15

**discussed**
68:16 69:7 80:19 97:24

**discussing**
43:2 78:14

**District**
10:16,17

**Division**
10:17

**document**
18:10,21 19:3 24:13 28:23 29:6,7 33:12,16 34:10 40:8,18 41:4 48:3,5 49:19 53:15 56:8 58:17 59:7 61:9,10 67:6,22 68:6,8 70:18 72:20 74:25 75:8 77:16 78:21 79:13 80:4,5 82:10 85:11 86:6 90:14 92:2 93:22 94:5,7,8,12, 14,19 99:2,10,18 105:22 106:6,12 107:25 108:15,20 109:6,15 110:18 111:2,5,7 112:4, 11,14 113:7 118:16,20 119:11,14

**documents**
19:24,25 20:14,20 23:4 33:13 35:7,8,14 36:11, 14 59:8 67:8,14 68:16 85:24 86:2 88:5 94:9

**doesn't**
14:17,21 35:11

**dollars**
27:19,20

**don't**
22:24 25:23 33:14 35:5 57:20,25 61:24 62:2 70:14 72:19 88:11 107:2 108:13 109:20 117:21

**driven**
83:9

**driving**
65:12,25

**DTI**
10:5 11:15

**due**
93:11

**duly**
11:19

**dynamics**
62:19

**E**

**Eagle**
97:15

**earlier**
61:4 69:7 75:23 103:8 115:14 124:7

**early**
23:17

**earn**
15:16 46:24

**earnings**
42:12 52:14 62:14,20 63:18 119:22 122:4

**ease**
21:24

**Eastern**
10:17

**economic**
89:18 101:12

**educational**
15:10

**effect**
24:25

**efficient**
38:23 123:18,25 124:4

**efforts**
42:13

**Eighth**
10:10

**either**
47:14 117:2

**elaborate**
117:14

**Elk**
12:17

**email**
33:2,6 34:15,21 35:17, 24 36:3,9 40:9,12 41:3, 23 53:18,25 54:5,15,23 55:2,12,22 58:12,15,20, 25 59:19,20,23 60:10, 14,23 61:23,25 67:25 68:21,24 69:17 70:2,12, 18 85:14,19,22 86:4,12, 13 87:10 88:8,14 93:25 94:13,15,21,24 95:3,24 97:7

**emailed**
49:20 57:13

**emails**
20:11 35:10

**ended**
82:19 107:15

**Endo**
71:10

**ends**
47:14

**engaged**
47:13

**enter**
28:16

**entire**
23:16

**entitled**
107:21 110:22 112:8 119:12

**entity**
21:21 76:14

**entry**
56:2 58:3 71:11

**environment**
89:8,16 101:12 103:25 104:5

**environments**
89:22

**equities**
13:23 27:12 62:12 63:16

**equity**
13:23 27:3 55:5,20

**ERISA**
13:20 29:2,8,10

**essence**
38:3 46:19 91:23

**Essner**
11:8

**established**
22:25 37:9 48:4 49:19 50:3 53:9,11 61:21 72:19 90:11 96:8

**et al**
10:15

**evaluation**
62:23

**events**
92:4 103:9

**exact**
57:25

**exactly**
37:3

**exaggerated**
89:19 90:18 91:11 92:4, 5

**examination**
11:22 50:18 52:24 115:13 120:13

**examined**
11:20

**example**
68:8 117:16 121:18

**exchange**
88:24 89:3

**executed**
24:17

**exhibit**
18:12 23:25 24:2,9 28:24 29:5 32:23,24 33:5 53:16,24 58:18,24 59:10 67:23 68:5 79:13, 19 80:4 85:12,18 86:3 88:3,23 93:23 94:17 99:3,9 105:23 106:5 107:18,24 110:19,25 112:5,10 118:15

**exhibits**
103:8

**exists**
46:6

**expand**
47:22

**expectation**
28:8 121:16

**expectations**
45:20 46:3

**expected**
28:4,12 121:12,17,19 122:4,7,11

**experiences**
89:17 90:18 91:3

**expert**
44:13 45:17 46:13 103:18 104:22 123:7, 14,17

**explain**
27:9 37:16 38:16 39:12 44:22 45:22 46:10 47:3 50:18 51:24 55:5 72:10 73:7 81:24 91:20 102:23 112:21 113:7

**explained**
97:24

**Exploiting**
37:14

**extent**
35:20 46:13 47:8 55:10 56:7 63:21,23 74:12 82:24 83:2 90:6

**external**
103:9

**F**

**fact**
35:4,5 53:11 60:19 61:15,18,22 70:12 76:25 86:4 88:2 90:9 94:13

**factors**
45:5,8,9 53:2,10 83:9 123:21,24

**fair**
36:4

**fallen**
89:13

**familiar**
14:6 22:18 123:20,23

**favor**
89:13,24 92:12,22

**fee**
74:15,18,24

**Ferber**
11:8

**field**
41:9,11,23 54:4 86:11, 17 87:5

**file**
39:22 40:2 79:5,9 115:5,10 125:14,19 126:3

**filing**
16:22

**filings**
16:22 120:2,6,22 121:2

**finally**
74:19

**financial**
16:3,16 17:17,24,25 37:23 50:23 51:8,9 67:15 89:14

**financials**
14:16 121:22

**find**
70:2 95:25

**fine**
63:22

**fired**
47:15

**firm**
14:6,10 36:18 37:4 42:11 118:18 119:6

**first**
11:19 17:23 18:10 19:2 21:9 33:2,5 36:16 37:14 40:19 43:23 59:2 60:15, 23 62:9 63:14 69:25 71:11 72:9 82:17 83:6 94:12 97:21 100:6,7 102:14 104:13 118:18, 23,25

**Fitzpatrick**
10:22,23 11:22 16:13 18:9,17 23:24 28:22 32:22 35:9,13 39:19 40:5,19 41:22 48:12 58:16 59:11 67:21 71:12 77:7 78:20,25 79:12 85:10 93:21 97:13 98:25 105:21 110:17 112:3 114:24 125:11,22

**five**
27:19

**five-minute**
78:23

**flow**
50:17 51:14,16 52:24 119:23 120:12,19

**flows**
101:10 121:20

**fluctuate**
102:21

**focus**
83:10 89:12 121:6

**focuses**
62:11 63:15

**follow**
101:7

**following**
44:20 48:9 61:14 102:4

**follows**
11:21

**force**
65:12 66:2

**forecasting**
16:18

**Foreman**
33:3,7 34:9 41:12 68:2, 25 79:22 82:14 94:2 99:22 100:3

**form**
16:23,24 21:9,12,13 22:3,23 23:22 25:6,14, 20 26:7,20 27:4,16,17 28:6,19 30:20 31:7 32:7,18 34:4 37:18 38:11 39:6 42:6,21 43:10,11 44:4 45:15 46:11 48:16 49:2,3,24 51:4 52:4 53:4 57:3 58:8 60:4 61:17 63:3,9 64:11 65:3,14 66:18,24 69:11 71:19 75:10,17 76:9,20 77:11 78:6,16 80:11,20 81:3,21 83:16 84:3,5,9,21 85:7 90:20 91:12,17 92:9,14,24 93:15 94:25 97:4 98:2,9 99:15 100:10,17,23 101:22 102:6 103:2,16 104:8,20 105:8 108:24 109:10 111:15,22 112:15,25 113:2 114:14 117:13,20

**forward**
34:17

**foundation**
24:21 25:4,14 26:21 28:7,20 29:15 30:8,18 31:7 32:7,19 33:9 34:14 35:19 36:7 37:8 38:21 39:8 42:7,22 43:12 44:16,25 45:16,25 47:6 48:10 50:7,13,21 51:5 52:8,10 53:5 54:11,18 55:10 56:10 57:18 58:10 61:20 63:10,25 64:13 65:5,15 66:17 67:2 69:5 71:21 72:13 75:4,12,20 76:22 77:13 78:7,17 80:12,22 81:4, 20 82:23 83:15 84:10, 22 86:16 88:10 90:20 91:7,13 93:2 95:2,9 96:15,23 98:4,10,22 99:16,24 100:11,25 101:24 102:8 103:4,17 104:23 105:7 106:11, 19,25 108:12,25 109:12 110:13 111:10,17,24 112:16 113:5 114:15

**founded**
13:9

**four**
69:20 97:14

**fourteen**
17:22

**fourth**
71:6 83:7 114:3

**frame**
93:4

**fraud**
123:8,14

**free**
51:14 101:10

**Friday**
94:2

**front**
41:4

**full**
12:2,10 21:21 25:24 29:18 30:14 31:15 32:12 101:4

**fully**
37:21 48:20

**fund**
21:11 87:11,13 96:21 116:5,9

**fundamental**
14:2,13 37:15 43:5 46:21 48:19 50:16 53:3 64:18,24 65:8,22 66:9 75:22 77:19 83:19 89:5 92:16 118:3 120:11

**fundamentals**
83:10 92:20 93:10 102:16,21,25 104:16,19 114:4

**funds**
13:18,20 87:6,20

**further**
107:13 114:25 125:9, 23,25

**future**
121:13,19,23

## G

**gather**
122:17

**Geller**
11:11

**general**
37:19 42:25 45:2 46:2, 17 47:7 49:16,21 56:17 70:5 78:13,19 83:25 84:12,23 85:5 101:19 103:6,20 104:25 107:4, 6,9 114:17 118:12 119:20

**generally**
15:6 19:16 31:8,11 32:20 44:8 73:5 74:14 78:10 83:24 92:10 102:10 109:13,21,22 110:15 111:18 112:19 113:11 120:2,6

**generate**
51:14

**generation**
50:10 119:13

**give**
13:4 15:8 52:16 80:15

**given**
35:24 38:25 49:18 76:24 123:17

**gives**
87:18

**go**
15:11 39:11 44:19 45:19 85:10 105:22 113:19 115:3 120:10 125:11

**goal**
62:24

**going**
31:21 52:9 53:21 59:4 68:12,14 82:21 85:23 87:25 90:5 115:2,6 125:15 126:4

**good**
10:2 11:23,24 67:6 77:23 89:23 92:12 93:12 95:24

**Gordon**
33:3,6,18 34:16 41:9 58:20 59:20 67:25 68:22 85:14 86:12 88:24 89:4 93:25 94:22

**graduate**
15:14,19

**Gray**
20:4,10 21:16 22:2,10, 12 24:5,11,17 25:8,9,16 26:15 34:12 69:2,8 80:15,18 81:16 82:2,14 99:5,13 100:3 105:11, 25 106:16,22

**Great**
89:4 110:16

**grew**
14:7

**Greystone**
22:15,21 105:13,14,17

**grounded**
114:4

**Group**
105:13,14,17

**growth**
101:11

**guys**
79:3

**H**

**half**
15:7 21:8 27:18

**halfway**
71:14 88:23

**handed**
18:19 24:8 29:4 33:4 53:23 58:23 68:4 80:3 85:17 99:8 106:4 107:23 110:24 112:9

**happened**
82:25

**hard**
42:9

**hasn't**
61:21 90:10

**haven't**
48:4

**he's**
16:11 48:2 55:12 61:25 88:13 91:14 110:11

**heading**
72:17,24 108:17

**headings**
72:10 97:20,22

**headquartered**
17:12

**hear**
45:11

**Heartley**
58:21 59:24 60:3

**held**
17:6

**helping**
16:25

**Herman**
11:3

**high**
39:13

**high-quality**
42:14,19

**hired**
25:10

**hold**
15:22

**Holdings**
47:18

**hour**
21:8

**Huertas**
105:14

**I**

**I'd**
18:9 58:2

**I'll**
12:20 19:14,19 21:21 29:16 32:2 37:13 42:8 48:12 62:9 83:7 89:3 94:6 101:4 104:12 113:6 114:2

**I'm**
12:19 16:4 21:19,20 22:17 23:7 28:13,15 38:12 53:13,21 59:4 68:11 81:22 82:20 85:22 87:24 90:5,22 91:18,24,25 104:5 108:16 109:24 115:2

**I've**
18:25 19:23,24 22:17 23:3

**idea**
50:10 76:10 119:12

**ideas**
42:15,20

**identification**
18:13 24:3 28:25 32:25 53:17 58:19 67:24 79:20 85:13 93:24 99:4 105:24 107:19 110:20 112:6

**identify**
38:2

**identifying**
46:25 48:17 82:5 101:8

**impact**
44:21 45:7,14

**implements**
29:22

**improvements**
121:7,17

**in-depth**
51:19 122:14,17

**in-house**
62:15

**inappropriate**
55:14

**inception**
61:4

**include**
118:6 122:20

**included**
100:20

**inclusive**
19:9

**income**
37:22 50:17 52:23 120:12,18

**Incorporated**
10:15

**increase**
118:10

**independent**
75:15,21

**index**
27:23 28:3,5

**indicate**
46:16 105:11

**indicated**
60:14 77:17

**indicates**
71:22

**indication**
33:16 35:4 36:8 94:12

**individual**
10:25 89:20

**individuals**
13:18 16:20 116:18,22

**industry**
51:20 62:17 122:15,18

**inefficiencies**
46:8 124:10,11,17,19 125:7

**inefficiency**
37:15 38:17 39:4

**inefficient**
43:24 44:3,10 124:8 125:5

**inefficiently**
103:15,22

**inference**
61:11

**influenced**
45:5

**info**
60:7

**information**
37:23 45:21 67:15 70:3 119:25 120:21

**Information-quarterly**
95:13

**informed**
62:16

**initiated**
72:22

**insight**
62:18

**institution**
58:13

**institutional**
54:20 56:4 57:14 60:19

**interact**
22:14

**interfaced**
34:2

**interfaces**
34:5

**interject**
20:16

**intrinsic**
38:8,13 47:21 64:7,15

**introduce**
10:20

**introduction.pptx**
41:19

**invest**
25:10,17,25 30:15 69:9 84:13 117:10 120:17 121:3,15 123:2

**invested**
27:14 66:12 82:5 84:7, 16 121:7,13

**investing**
26:4 57:15,22 81:18 85:5 101:20 108:22 109:9,17 110:7 111:14, 20 112:23 113:8 114:12,19 117:25 124:12 125:6

**investment**
13:13 23:9 24:4,9 28:17 29:21,24 30:23 31:4,17 32:14 34:18 42:11,14, 20 43:9,16,22 44:7,11 46:7 48:25 49:9 50:9 62:10 63:7 67:16 77:23 82:6 101:7,15 102:5 116:13 119:12,18 122:16

**investments**
65:13 66:2 81:17 117:6

**investor**
44:20 45:20 46:3 89:6 92:8 102:17

**investors**
45:4 89:23

**invests**
14:25 56:24 83:23

**involved**
74:18

**isn't**
48:5

**it's**
12:3 13:13 14:5 22:24 29:8 31:21 33:16 36:4 48:17 49:16 51:8 55:14 57:6,7 62:6 70:11 72:19 73:2,14 78:15,19 79:24, 25 80:13 82:13 83:17 85:25 87:25 88:3 95:15 96:8 97:5 105:9 108:13 111:19,25 114:18 120:11 121:16

**items**
52:22

**its**
13:11,25 14:12 22:6 37:22 38:15 44:17 46:20 48:18 51:13 61:3 78:4,12 92:16,20 93:7 102:4 108:22 109:8,17 121:21,22 122:10,16

**J**

**January**
21:18

**Jason**
20:12 23:13 53:18 54:5, 7 57:13 79:22 116:16 117:2

**joined**
17:23

**Jonathan**
23:13 88:25 89:4,9 116:16 117:2

**July**
10:6 88:20

**K**

**Kaplan**
11:7 16:9,15 18:15,18 21:4,12,14 22:3 25:5,19 26:6 27:5,17 30:19 31:18,20 32:8 36:19,24 38:10 40:10,21 43:10, 20 47:25 49:2,4,12,15, 23 52:3 55:16 57:4 59:11,15 64:10 65:2 71:9 76:8,18,24 79:15, 24 91:16 93:14 100:17 110:8 113:2 117:12,19

**Key**
17:11

**kind**
47:10

**King**
14:11 18:4,7,8 24:18 42:5 53:19 54:15

**know**
25:23 33:14 34:8 35:20 47:8,14 57:20,21,25 59:16 62:2 68:18 70:14 77:4 86:9 94:18 96:24 108:13 109:25 110:2

**knowledge**
36:13 38:3 51:20 107:14 122:14,17

**Kowalczyk**
10:4

**Kurt**
85:14 86:18,21

**L**

**lack**
24:20 25:3,13 26:21 28:7,20 29:14 30:7,17 31:7 32:7,18 33:8 34:13 35:18 36:6 37:7 38:21 39:7 42:7,22 43:12 44:16,24 45:16,24 47:5 48:9 50:6,12,20 51:5 52:7,10 53:5 54:10,17 55:10 56:10 57:17 58:9 61:20 63:10,24 64:12 65:4,15 66:17,25 69:4 71:20 72:13 75:4,11,20 76:21 77:12 78:7,17 80:12,21 81:4,20 82:23 83:10,14 84:10,21 86:15 88:9 90:20 91:6, 13 92:25 95:2,8 96:14, 22 98:3,10,21 99:16,23 100:11,24 101:23 102:7 103:3,17 104:22 105:7 106:10,18,24 108:11,25 109:11 110:13 111:9, 16,23 112:16 113:5 114:15

**large**
113:24

**Lawrence**
24:17

**leaders**
62:17

**left**
11:5 17:16 23:17

**legal**
13:8 30:21 31:6 32:6,17 44:6,14 46:14 76:22 77:13 103:18 104:21 123:7 124:5,15

**let's**
23:24 28:22 32:22

36:16 39:19 41:2 42:3 43:21 44:19 45:19 46:5 50:8 58:16 61:18 67:21 70:7 72:8 78:20 79:12 85:10 87:22 93:21 96:5 98:25 101:2 105:22 110:17 112:3 115:3 125:11

**letter**
79:21 95:8 101:3 103:5 104:13 105:25 106:16

**liabilities**
51:2

**licenses**
15:23

**limit**
56:21

**limitations**
29:25

**line**
17:18 37:13 38:18 41:14 44:7 54:19 55:14 60:6 61:15 68:21 69:14, 25 83:18 86:23 95:11 120:14

**lines**
97:17 105:11

**list**
95:18 96:9

**listed**
53:10

**litigation**
47:13

**little**
15:9 47:22 71:13 117:14

**LLP**
11:8

**Local**
21:10 22:6 30:5 41:15 60:7 70:21 95:12 96:11 118:19 119:8

**location**
10:9

**Lofters**
85:15 86:18,21

**long**
17:3 21:5 26:14 46:4 113:24

**long-term**
14:19 42:17 62:20 89:23 92:8 101:15 114:5

**longer**
47:12

**longer-term**
46:22

**look**
14:17,21 28:23 36:16 40:25 41:3 42:3 46:5 50:8,25 71:8 85:19 89:5 118:17 119:22 120:18 121:5,18

**looked**
20:11 35:6 64:5,22 124:8

**looking**
34:17 46:4 63:14 71:13 72:9 83:20 89:11 90:24 102:12 107:12 118:21 122:13

**looks**
14:18 51:13 85:22

**lose**
103:23

**Lots**
10:14,24 20:13 55:3,6 57:22 58:6 66:21 71:15 75:15 76:7,16 77:18,20 78:12 97:18 100:15 117:6

**Lots'**
55:18 57:16 98:7 100:21 102:3 105:4 117:17

**low**
39:13,14

**lower**
38:8

**M**

**macro**
83:9

**main**
51:18

**maintain**
101:14

**major**
15:17

**making**
16:19 29:21

**manage**
20:6 22:5

**managed**
20:7 22:5

**management**
12:13,20 14:16 24:4,10 28:17 37:20,24 42:11 46:7 51:20,21 52:2,15, 25 62:17 70:20 96:10 108:7 111:8 112:20 118:17 119:6 120:5 122:15,18,21,25

**manager**
20:12 46:17 54:8 69:3 70:5 75:19 77:22 78:2 85:3 98:17 102:9 109:25 110:12 114:5 115:16,25 116:4

**managers**
23:13 52:13,17,19 54:13 80:15 82:6 116:13,15

**manages**
13:17

**managing**
81:15,16

**March**
71:18 82:19

**margins**
121:8

**mark**
11:14,20 18:10 23:24 67:13 68:14 79:12

**marked**
18:13 24:3 28:25 32:25 33:5 53:17,24 58:19,24 67:24 68:5,9 79:20 80:4 85:13,18 93:24 99:4,9 105:24 106:5 107:19,24 110:20 112:6,10 118:15

**market**
14:22 27:13,20 37:14 38:5,7,17,22 39:3,14 43:3,23 44:3,9 45:6 46:8 48:20 55:18,23 56:25 64:6,23 65:10,24 66:7,8 77:20 83:8,21 89:17 90:17 91:3,10 92:3,13,22 93:5 101:5 103:8,11,23 117:24 118:3,7 123:18,25 124:4,21

**marketing**
33:19,21,24 34:6 107:20 108:3 110:21 111:7 112:7,19,22

**markets**
102:15,20,24 103:15,21 104:15,18 124:9 125:5

**marking**
18:15 67:18 68:11

**marks**
39:25 79:8 115:4,9 125:13,18 126:2

**Marla**
105:12

**material**
107:20 110:21 112:7

**matter**
10:13 11:2 117:10

**mean**
14:22 16:9 31:11,20 38:7 40:24 42:18 49:5 51:8 74:15 75:22 76:9, 10,19,24,25 77:25 79:24 81:2,10 109:23 121:11

**meaning**
55:13,23 63:24 83:2

**means**
19:7 27:10 37:17 39:3 44:23 46:10 47:4 51:24, 25 56:8 72:11 73:17 83:13

**meant**
124:12,18

**measure**
64:6,23

**media**
45:11

**Medina**
105:13

**meet**
20:21

**meeting**
34:18 36:2

**mentioned**
14:12 40:6 52:22 71:3 124:7

**mentions**
34:15

**mid**
15:2,6 22:7 26:24 27:11 57:10

**middle**
50:15

**mind**
78:23

**minutes**
21:8 79:18

**misstates**
26:8 39:8 64:16 65:6,18 69:12 78:8 84:21 92:24 93:17 104:24 110:10

**moment**
29:5 53:25 58:25 68:6 85:19 110:25 112:11

**Monday**
34:19 36:2,5 85:15 87:2

**money**
13:17,20 82:5,7 103:23

**monies**
26:2

**month**
16:5

**monthly**
16:18

**Moore**
10:10,24

**morning**
10:3 11:23,24

**motivating**
65:11,25

**move**
32:22 34:24 53:14 58:16 67:21 72:8 78:20 93:21 96:5 98:25 110:17 112:3

**movements**
89:19

**moving**
42:2 47:17 51:18 60:22 71:23 87:9,16 88:22 95:23 101:3

**N**

**name**
12:2,4,10 22:17 23:3 68:22 71:15 73:9

**names**
24:22

**nature**
13:11

**near-term**
62:19

**necessarily**
14:18,21

**need**
26:3 31:22 115:3

**neither**
101:5

**net**
61:3

**never**
55:12 77:2 80:6

**New**
10:11 12:9,17 15:24 52:16

**news**
55:19 89:18 92:3

**nice**
55:25 58:3

**nicely**
87:13

**Notary**
11:19

**note**
21:19 33:10 59:5 60:13 61:7 67:7 79:16 83:22 87:25 94:6

**noted**
45:13 126:6

**notes**
35:24 41:17 47:18 51:19 55:22 59:20 63:15 82:18 86:12 87:6 94:15 100:7 104:13

**notice**
106:9

**noting**
61:15

**number**
10:18 19:6 40:2 73:24 79:5,9 103:9 115:5,10 125:14,19 126:3

**numbers**
36:20,22 40:7 70:10 86:6

**O**

**O'brien**
11:5

**object**
21:12,13 22:3,23 23:22 24:19 26:20 27:4,16,17 28:6,19 29:14 31:6 32:6,18 34:4 35:22 37:18 39:6 42:6,21 43:10,11 44:4,5 45:15 46:11 48:16 49:2,3 51:4 53:4 55:9 57:3 58:8 60:4 61:17 63:3,9 65:14 66:18,24 69:11 71:19 75:10,17 76:20 77:11 78:6,16 80:11,20 81:3 84:3,5,9 85:7 90:6 91:12 92:9,14,23 94:25 95:7 97:4 98:2,9 99:15 100:10,17,23 101:22 102:6 103:2,16 104:8, 20 105:8 108:24 109:10 111:15,22 112:15 113:2 114:14

**objection**
13:6,7 20:16 25:2,5,12, 19 26:6 27:5 30:7,17,19 31:5,18,19 33:8 34:13 35:2,3,18 36:6 37:7 38:10,19 44:12 46:12 47:24,25 48:9 49:23,25 52:3,7,10 53:22 54:10, 17 56:6 57:17 59:5 63:20 64:9,10 65:2 70:9 73:8 74:11,16 76:8,9,17 81:11,19 82:21 83:4 84:20 85:23 90:15,19 91:6,16 93:14 95:7 96:7,14 112:24 117:12, 19

**objections**
25:21 28:14 31:12,24 32:5 43:19,20 46:15 51:15 56:16 57:23 66:4, 11 72:2,6,18,25 73:13, 18,23 74:3,8,21 76:2 81:25 91:22 98:15 100:4 104:4 107:7 109:19 113:9,18 114:22

**objective**
62:10 63:7

**objectives**
29:24 30:24

**obtained**
108:15

**Obviously**
42:22

**occasion**
52:18

**occurred**
19:18 100:15

**October**
58:21 60:11 94:2 95:15 99:7,18

**office**
11:6

**officer**
16:3,6,16,19 17:17

**officers**
52:20

**Oh**
41:24

**Ohio**
10:17 17:13

**okay**
12:15,21,22 16:15

18:18 19:15,20 21:15, 23 23:18 32:21 41:2,24 43:7 44:19 46:5 47:17 58:2 71:7 75:14 78:11 79:2 82:9 85:9 86:23 92:17,23 96:25 97:8,14 102:12 103:24 105:2,20 107:17 112:2 116:12,21 118:14 119:10 125:9

**ones**
81:12

**ongoing**
51:21,25 62:16

**opened**
89:7

**operating**
121:8

**operations**
17:18

**operator**
10:4

**opinion**
46:14 92:5

**opportunities**
89:6

**opportunity**
39:4,10 46:6 83:11 93:13

**opposed**
65:10,24

**option**
56:4

**order**
68:14 69:9

**originally**
81:14

**Oster**
105:12

**Outfitters**
97:16

**outlook**
62:20 87:19 114:6

**outperform**
28:9,12 46:9 62:25

**outperformed**
61:2

**overall**
83:21

**overpay**
42:12

**overview**
37:5 118:19 119:7

**ownership**
18:6

**P**

**p.m.**
115:12 125:16,21 126:5,6

**page**
19:5 24:16 26:12,13,25 27:6 30:10,12 33:2,6 36:20,21,24,25 37:2,3, 14 42:3 43:21 44:19 50:8,9,15 52:23 56:9 59:2 63:22,24 70:7 71:6 72:9 83:4 87:23 88:2,3, 22 97:9,12,21 101:2 102:13 118:18,23,25 119:2,3,10,15,16

**pages**
71:4

**paginated**
71:4 97:9

**Paradigm**
12:13,16,20,21,24 13:3, 9,16,21 14:25 16:2,20 17:4,7,8,10 18:5,14,16, 20 19:17 20:6 21:9 22:2,4,20 23:8,17,20 24:5,10 25:10,17 26:3, 16 28:4,11,18 29:2,11, 18 30:14 31:9,14 32:4, 11,16 33:20 37:6 38:4, 14,24,25 40:11 41:18 42:18 43:3 46:20 48:18, 23,25 50:25 52:12 53:2 56:19,24 58:5,12 60:7 62:4 63:17 64:5,8,19, 22,25 65:10,24 66:5,12, 20 67:12 69:8,14 70:20 75:2,6,8,14 76:6,11,14 78:11 80:14 81:15,17 82:7,8 83:23 84:7,16,24 87:6,11 88:16 90:17 92:7,11 93:7 96:10 97:2 102:3 103:14,25 105:3 106:2,17,23 107:20 108:6,10,14,16,21 109:7,16 110:5,21 111:8,12 112:7,20 113:15 116:13 117:9,17 118:16 119:4,17,22 120:5,17,25 121:12 122:15 124:8,19

**Paradigm's**
31:3 34:3 37:20 39:15 42:15 43:5,8,16 44:2,10 49:9,17,21 50:5 59:12 60:25 62:11 63:6 65:12 66:2 78:4 81:17 83:18 85:5 91:9 92:18 93:9 101:19 110:7 111:14 112:22 113:7 114:11

**paragraph**
29:17 31:2,23 60:23 62:9 82:17 83:7 87:10 90:25 100:7 101:4,5 113:21 114:3

**Pardon**
13:7

**part**
13:25 27:12 49:21 50:4 92:15,18 103:21 118:5 119:21 122:16,20

**participate**
52:13

**particular**
13:22 93:4

**parties**
13:18 20:18

**party**
61:25

**pension**
13:20

**percentage**
28:11

**perfect**
68:8

**perform**
28:5 75:14 103:22 107:10

**performance**
60:15,24 103:10

**period**
19:7,8,13,14,19 20:7, 11,19 22:16 23:10,15, 16 24:25 63:8 66:13 73:3 75:16 84:18,25 89:21 92:18 101:21 102:2 103:13 105:3 109:18 111:21 113:16 114:21

**periods**
102:19

**personal**
36:13 67:15

**personally**
85:3

**perspective**
34:6,7 101:15

**perusing**
94:5

**PFSLX**
87:11

**Pharmaceuticals**
71:10

**philosophies**
67:16

**philosophy**
43:9,22 49:9 66:14,22 78:13 101:8 102:5

**phrase**
38:16 45:23 55:6 58:3 102:24

**phrased**
81:22

**piece**
108:3 111:7 112:20

**place**
22:8

**placed**
38:14,24 59:9 81:13

**placing**
82:4,7

**plaintiffs**
11:12

**plaintiffs'**
20:20 67:11

Case: 2:12-cv-00604-MHW-KAJ Doc #: 75-4 Filed: 07/29/16 Page: 142 of 148 PAGEID #: 3148



**plan**
29:21,23 30:2,4 31:17 32:14

**plan's**
29:19,24 31:16 32:13

**please**
10:20 11:15,25 12:5 18:11 29:5 39:20 42:4 49:4,7 54:2 58:24 68:5 70:2 77:6 79:14 95:25

**plus**
73:3

**point**
28:11 44:20 49:12 51:19 56:2 58:3,4 114:2 120:11 121:6 122:14

**pointed**
61:8

**points**
46:20

**policies**
16:21

**political**
101:6

**portfolio**
20:12 23:10,12,19 25:11 31:4 46:17 52:13, 17,19 54:7,12,20 57:14, 15 60:19 62:4,11,24 63:7,15 69:9 75:19 77:22,23,25 80:14 85:3 98:17 102:9 109:24 110:12 115:15,24 116:3,15

**portfolios**
56:5 62:21

**portion**
60:25 77:9

**position**
15:25 17:14

**positioning**
87:19

**positions**
60:16

**possible**
48:2

**postscript**
87:17

**potential**
50:23 62:14,22 63:18

**potentially**
55:25 93:18

**power**
29:18 31:15 32:12

**Powerpoint**
20:8

**powers**
25:25

**precisely**
40:22

**prelim**
61:3

**preliminary**
60:15

**prepare**
19:21

**prepared**
29:3,11 85:4 124:3

**preparing**
116:18

**present**
10:19

**presentation**
20:8,9 35:16,22,25 36:10 37:11 42:3 47:18 90:12

**presentations**
41:15 52:16

**presented**
20:9 36:2,5 94:7

**prevail**
102:21

**prevailed**
102:19

**previously**
18:24,25 36:12 80:19 97:23 118:15 123:6 125:4

**price**
14:22 38:5,7,23 39:10, 15 55:18 62:12 63:16 64:6,23 65:10,24 66:7,8 72:4 73:25 74:4,9 77:20 93:11 98:20 117:11,18, 24 118:3,7 124:21

**prices**
14:18,22 44:22 45:7,14

**pricing**
93:6

**primarily**
83:9

**principal**
14:6,9 18:7 74:23

**Principle**
74:6

**printout**
108:10,14

**prior**
17:3,9,20 29:22 68:10 93:2 117:25

**private**
55:4,20

**privy**
37:10

**Probably**
21:7

**procedures**
16:21

**process**
50:10 81:15 101:8 119:12,18,21 122:16

**produce**
40:12

**produced**
33:15 40:16,17,20,23 67:8 86:7

**product**
27:15 47:9

**production**
40:25 59:13 68:10

**products**
27:3

**professional**
15:22

**projections**
121:25

**prospect**
101:11

**protective**
68:13

**provide**
47:9

**provided**
123:13

**provides**
13:16 55:25

**psychology**
44:21

**Public**
11:20

**published**
51:9

**pundits**
101:6

**purchase**
71:17 77:18 78:12 92:19 98:7 100:14,20 117:17

**purchased**
66:21 71:24 102:3 105:3

**purchasing**
104:2 120:8

**purely**
91:24

**purported**
94:16

**purpose**
32:8 59:9

**purposes**
86:3

**pursuant**
30:13 66:14,22 68:13

**put**
33:13 38:14 61:9 86:2

**Q**

**quality**
47:19 56:2 58:4,6

**quantity**

73:21 74:9

**quarter**
82:18 87:12,14 90:2 96:18 100:8,20

**quarterly**
52:14 70:3 80:14 96:2 99:5,13

**question**
32:10 48:6 65:21 76:12, 25 77:4,5,8 90:23 104:10 109:5

**questioning**
44:7 55:15

**questions**
19:17 55:11 93:2 114:25 125:10,23,25

**quick**
41:2 78:23

**quote**
34:16 42:4,8,23 118:23

**R**

**range**
70:24

**react**
103:9

**reaction**
92:3

**read**
18:23 29:16 31:22 37:13 42:8 45:10 62:9 77:8,10 83:7 89:3 90:25 91:18,20 101:4 109:3

**reading**
91:25 100:6

**reads**
43:22 50:9,16 54:20 60:23 70:2,20 86:17,23 87:10,17 88:16 95:11 102:13 108:17

**ready**
59:16 68:19 86:9

**real**
89:18 101:11

**really**
31:22 79:17 80:23

113:23

**reason**
79:17 107:14

**rebounding**
87:13

**recall**
22:19 26:17 40:22 117:7

**receive**
99:11

**received**
35:9,15 36:9 55:12 72:20 80:6 88:12

**recess**
39:24 79:7 115:8 125:17

**recipient**
54:14

**recognize**
18:21 29:7 80:5,7 99:10,12 106:6 107:25 111:4 112:13 114:6

**recollection**
116:24

**record**
10:21 12:2 32:9 33:10 35:12 39:23 40:3 61:7 67:7,19 77:10 79:6,10, 16 94:6 115:3,6,11 125:12,15,20 126:4

**refer**
19:12 36:21 93:3

**reference**
113:20 118:8

**referenced**
61:23 88:8 97:6 103:7

**referring**
12:19 14:10 19:14 21:20 27:2 45:9 103:12 113:21 125:6

**refers**
97:2

**reflect**
20:17 35:12 62:13 63:17 66:9 67:14 119:16

**reflecting**
39:15

**regarding**
37:25 80:16 122:10 123:18

**regional**
17:12

**registered**
13:13,14,19 82:6

**regulatory**
18:2

**related**
20:5,12

**relates**
20:19

**relationship**
18:3 21:10,25 22:20 23:2,6,12 107:15

**relative**
28:5

**relentless**
42:13

**relevant**
19:7,13 20:7,10,19 22:16 23:10,15,16 24:25 54:9 63:8 66:13 75:16 84:18 92:17 101:20 109:18 111:21 113:16 114:20

**remained**
114:20

**remaining**
114:4

**repeat**
65:17,20 77:5 90:22 109:5

**rephrase**
48:13 52:9 76:12 113:6

**replaced**
23:18

**replies**
89:9

**report**
82:18 95:20 97:6 100:8 123:14

**Report-asbf**
69:22

**reporter**
11:14

**reporting**
10:5 17:24,25

**reports**
95:13 96:2 97:2,3 99:5, 13

**represent**
10:21 108:21 109:7

**representative**
33:20,22 34:12 48:23 110:5

**representing**
10:24 11:9 12:11 35:21

**request**
54:20 67:12

**requested**
70:3 77:9

**required**
99:13

**research**
14:2,13 37:16 43:6 46:21 48:19 50:10 69:3 75:23 119:13

**researches**
51:3

**reside**
12:7

**respect**
23:19 119:18

**responsibilities**
16:8,10,11,14 33:23

**responsible**
16:17 54:8,13

**restate**
32:10

**restrictions**
30:2

**resulted**
42:16

**results**
37:25

**retained**
22:4

**return**
46:24 62:22 121:7,13

**returns**
42:17

**revenue**
122:7,11

**reverse**
57:5

**review**
19:2 20:2 29:6 53:25 58:25 68:6 94:19 111:2 112:11

**reviewed**
19:24 20:3,8

**reviewing**
59:4

**rewarded**
101:14

**Rhodes**
105:12,14,17

**Richman**
11:15,20

**right**
24:14 41:15 44:11 45:14 49:9 60:11,20 62:7 63:19 65:13 66:3, 9,15,23 68:22 69:3,18, 23 70:25 71:25 82:19 83:24 84:15,18 86:18, 24 88:17,20 95:5,16 97:25 98:20 99:22 100:3,16,21 104:3 105:5,21 110:7 114:21

**right-hand**
108:5

**Rigorous**
62:15

**risk**
62:24

**risks**
62:20

**Robbins**
11:11

**Robert**
10:12 11:7,17 12:3

**roles**
16:7 17:7,20

**Ronovech**
20:12 23:13,16,19 53:18 54:5 58:14 79:23 116:16 117:2

**row**
71:23

**run**
56:2 58:4,6

**Russell**
27:22 62:25

**S**

**Sacks**
33:3,6,18 41:9 58:20 59:21 67:25 68:22 85:14 86:12 88:24 93:25 94:22

**sale**
73:20 121:25

**sales**
34:6

**saying**
83:3 92:2 95:7 104:17

**says**
27:3,21 29:17 30:10,11 42:19 69:6 89:4 90:14 95:10,24 97:18 108:5 118:18 120:12 121:6 122:14

**schedule**
19:6

**school**
15:20

**Science**
15:17

**screens**
89:12

**SEC**
13:14 16:22 74:15,17, 24 120:2,6,22 121:2

**second**
60:18 84:4 87:10,12 88:22 94:14 101:2 114:2

**securities**
27:14 75:16 93:6 112:23 117:10 120:7 123:8,14 124:20

**security**
21:11 73:6,9,11,14 78:3 96:20 116:5,9 117:11, 24 118:10

**see**
19:6,10 24:16 27:21,23 34:15,19 38:25 39:18 41:8 43:24 50:16 51:22 54:19,21 56:5,12 60:24 61:5,13,14 63:2,4 64:3 69:20 70:5,22 71:14,24 82:10 87:14,20 89:19 90:3 91:4 95:18,21 96:3 97:18 98:6 101:16 105:10 106:7 108:4 114:8 119:13,15 120:14 121:9

**seeing**
89:6

**seek**
92:11

**seen**
18:25 22:17 23:3 36:11 90:12

**segment**
101:4

**select**
87:11

**selected**
62:21

**sell**
39:13 45:6 55:4

**selling**
47:20 55:20

**send**
34:17

**sense**
124:5

**sent**
68:24 80:7 86:12 95:3,8 99:21 100:2

**sentence**
55:22 63:15 83:6,12 100:6 114:3 121:11

**sentiment**
44:21 45:14

**separate**
28:17 35:8 59:8 88:4

**separately**
22:5 86:8

**September**
62:6 100:9 106:3,13

**service**
47:9

**services**
13:16 29:17 30:14 106:23

**set**
56:15

**settle**
72:24 73:3,5

**Share**
74:9

**shareholder**
18:7

**shareholders**
17:25

**shares**
55:18 71:24 73:24 77:18 98:13

**she's**
34:11

**Sheats**
105:11

**sheet**
14:15 37:22 50:18 52:24 60:19 61:15,18, 22 119:23 120:13,19

**sheets**
101:10

**short**
39:20 46:3 89:21

**short-term**
45:21 93:11

**show**
76:6,15

**shows**
71:17

**signatures**
24:23

**significantly**
44:22

**similar**
59:5 82:21 85:24

**single**
94:8

**sitting**
79:18

**six**
97:14

**skilled**
114:5

**sl**
73:20

**slide**
36:17,23 43:22 119:3, 11

**small**
13:24,25 14:4,8 15:6 22:7 26:24 27:11 56:19, 21 57:9 112:8 113:24

**small-cap**
42:11

**Smid**
22:6 26:19,22,23 27:3 28:2 36:18 41:18 61:2 84:17 86:24 118:18 119:7

**Smid-cap**
37:5 60:18 62:4,11,12 63:6 69:15 84:13 87:11

**sold**
55:3,7

**solid**
92:19 101:9

**somewhat**
83:17

**sorry**
52:8 84:4 90:22 97:20 99:16 104:6 107:8 113:19

**sought**
66:5

**sources**
51:22 122:22

**Southern**
10:16

**speak**
21:3 116:17

**speaker**
91:14

**speaking**
10:4 44:8 48:22 76:5,11

**special**
13:21

**specialize**
13:22 14:3

**specializes**
13:24

**specific**
22:20 26:4 28:10 67:5

**specifically**
21:2 108:2 112:18

**specifics**
110:2

**speculating**
91:24

**speculation**
24:20 25:3,13 36:8 37:9 38:21 39:7 48:11 50:7, 21 51:6 52:11 53:6 55:9 56:11 57:19 58:9 61:20 63:11 64:2,13 65:5,16 66:17,25 71:20 72:13 75:4,11,20 76:21 77:12 78:8,18 80:21 81:5,21 82:23 83:15 84:11,22 88:10 90:21 91:8,14 92:25 95:9 96:16,23 98:3,11,22 99:17,24 100:12,24 101:23 102:7 103:3,19 104:23 105:7 106:11,19,25 108:12 109:2,12 110:14 111:10,17,24 112:17 113:4 114:16

**spell**
12:4

**spoke**
100:14

**spoken**
19:23 52:19 116:21,25

**stamped**
35:14 59:6,14 71:5 94:11

**stamps**
33:11

**Stand**
110:22

**standard**
95:25

**standpoint**
124:12,15

**stands**
96:20 111:12

**starting**
91:2

**starts**
97:15

**state**
11:25 48:24

**stated**
56:9

**statement**
30:9 37:23 48:15 50:19 51:9

**statements**
50:23 51:10 113:23 122:10,25

**states**
10:16 43:23

**stipulate**
40:11 59:12

**stock**
14:23 43:5,23 44:3,9,21 45:7,14 46:25 57:16 65:11,25 66:21 93:13 98:8,20 100:15,21 102:3 105:4 117:17

**stock-specific**
62:23

**stocks**
26:5 39:2 62:21 64:5,22 89:12,20 104:2 113:24, 25

**strategic**
16:25

**strategies**
121:23

**strategy**
14:17 22:7 26:15,18 32:3,15 36:18 37:5 38:2 56:20,22 57:8 61:2 62:19 84:14,17 118:19 119:7

**Street**
12:17

**strike**
53:22 93:20 124:18

**strong**
93:10 101:10

**subbullet**
121:6

**subject**
29:25 30:23 41:14 54:19 60:6 69:14 86:23 95:11

**subpoena**
18:14,20

**substantial**
47:20

**success**
42:10

**sufficient**
40:22 107:11

**summary**
87:18

**summer**
11:6

**superior**
42:16

**supervise**
29:20 31:16 32:13

**supporting**
17:17

**sure**
16:19 23:5 36:23 38:12 77:24 78:25 81:22 90:24 91:18 104:12 108:16 109:4,6 117:16

**Swaine**
10:10,23

**swear**
11:15

**sworn**
11:19

**symbol**
73:11,15

**system**
75:6,9

**T**

**tab**
18:10 23:25

**table**
71:6 72:9

**take**
10:11 15:8 28:22 29:5 36:16 39:19 41:2 42:3 50:8 53:25 58:25 68:5 78:23 85:18 97:21 110:25 112:10

**talked**
75:23

**talking**
37:24 57:9 58:11

**talks**
14:16 46:23

**target**
50:24

**Teamsters**
20:3 21:10,17,22 22:2, 6,11 23:9 25:8 28:16 29:3,11 30:5,16 32:3,15 37:6 41:14 49:20 54:8, 13 57:21 60:6 66:13,21 70:4,21 80:24 81:2,7,9, 18 82:4 84:7,17 85:6 95:12 96:2,11 99:6,14 102:4 104:2 105:4 116:4,8,14,22 118:19 119:7

**Teamsters'**
20:5 25:10,18 31:3 57:15 61:2 67:5,14 69:9 80:16 81:14 119:19

**Teamsters's**
117:5

**technology**
17:18

**telephone**
20:23

**tell**
80:17

**tenet**
43:8,16 44:10 48:25 49:5

**term**
46:3,4 64:14 124:5

**terminated**
106:22

**termination**
47:15 105:25 106:8,16

**terms**
20:18 37:19 38:5 45:2 112:22 114:17

**testified**
11:21 75:18 88:12 98:16 115:15 123:6,7 125:5

**testify**
76:14 85:4 124:3

**testimony**
13:3 26:9 39:9 44:14 45:17 64:17 65:6,19 69:12 78:8 84:21 92:24 93:17 103:18 104:22,24 110:11 123:18

**text**
108:4

**Thank**
11:13 98:24

**there's**
20:17 33:15 35:3 36:8 41:17 70:10 74:12 88:23 90:15 94:11,16

**They'd**
118:8

**they're**
16:21 46:4 94:10

**thing**
68:15

**things**
19:18 45:10 113:10,22

**think**
20:4,9,24 29:8 33:24 35:6,7 36:4 37:19 55:13 61:11 67:6 68:7 72:19 83:17 88:4,11 89:16 91:2 103:7,11 117:21

**third**
13:17 55:22 87:13 90:24 96:17 101:3 102:12

**thought**
38:4 52:8 78:2

**three**
73:3,4 94:15 95:18 97:17

**threshold**
57:2,7,11

**Thursday**
34:22 36:3 53:19 54:24

**Tiffany**
58:20 59:23 60:3

**time**
10:7 17:16 19:7,8,13, 14,18 20:7,11,19 22:8 30:3 39:22 40:3 49:13 54:9 57:24,25 58:7 62:25 67:7 68:12 79:5, 10 89:21 93:3,4 98:17 99:12 101:14 102:9,14, 22 103:14 104:13,18 106:7 115:6,11 118:11 125:15,20 126:4,6

**timers**
101:6

**times**
74:9

**title**
33:25 88:16

**titled**
62:3 118:16 119:4 120:11

**today**
12:12,19,24 13:4 19:13 48:23 68:16 78:14 85:4

**today's**
10:5 116:18

**top**
27:2 41:8 43:21 50:9 59:19 70:19 102:13

**trade**
70:20 72:14,17,22 73:2, 4,5,10,24 74:4 77:16 96:10

**trades**
74:17

**trained**
123:10

**Tran**
73:16

**transacted**
72:15

**transcript**
67:19 87:18 88:7,13,19 90:10,13 91:15

**trends**
14:19

**true**
62:14 63:18 102:21

**Tuesday**
58:21 60:11

**turn**
26:12 43:21 61:18 70:7 71:5 87:22 97:9 101:2 118:14 119:10

**Turning**
26:25 82:9 83:6

**two**
19:4 22:5 23:12 33:12 46:20 54:12 59:7 60:13 61:8 85:25 88:4 94:9

**type**
13:22 89:7

**types**
89:13,22

**U**

**unclear**
58:10 70:11 87:25

**uncover**
42:13,19

**understand**

12:23 13:2 37:21 73:16 77:25 84:2

**understanding**
25:15 42:25 45:3,4,22 46:2,18,21 47:7 48:7,14 50:19 52:5,12 55:6,17 56:13,17 57:12 58:5 60:2 63:12 64:4,21 66:19 67:3 69:13 72:16, 21,23 73:2,12,19,22 74:2,7,20 75:5,25 76:3 77:15 78:9 82:2 83:12, 23,25 84:6,12,16,23 86:20 90:16 96:19 102:24 103:6,20 104:17,25 105:9,16 106:21 107:3,5,6,9 110:4 111:19,25 113:12 114:18,23 117:9 118:13 119:17,20 121:22

**understands**
14:17

**understood**
64:19

**undervalued**
38:5,6 39:2 42:14,20 66:7 78:3 101:9

**United**
10:15

**University**
15:12

**unquote**
118:24

**unregistered**
13:19

**unrelated**
103:10

**unsettling**
102:18

**update**
60:25 69:15 70:5 86:24

**updates**
80:14

**updating**
16:24

**upper**
56:21

**use**
12:21 21:21 38:12

**uses**
53:2

**usually**
89:19 91:10 92:4

**V**

**vague**
43:12 44:15 104:8 109:11 111:16,23 112:25 113:3

**valuation**
39:16 118:4

**value**
38:8,13 47:21 51:2 53:3 64:7,15,19,24 65:8,23 66:9 78:4 118:10

**valued**
43:4 48:20 51:8 93:8

**values**
51:7

**various**
16:7 37:23 52:14,20

**Vermont**
15:12

**versus**
10:14 44:6 58:12 113:24 118:3

**video**
10:3

**VIDEOGRAPHER**
10:2 11:13 39:21,25 79:4,8 115:4,9 125:13, 18 126:2

**videotaped**
10:12

**view**
44:2 93:9 103:14

**viewed**
39:2,3 58:6

**views**
90:17

**volatile**
45:20

**volatility**
89:17 90:17 91:3,10

**Vyorst**
23:14 88:25 116:16 117:3,4,5

**Vyorst's**
92:5

**W**

**Waggoner**
79:22 82:14 99:22

**wait**
84:4

**want**
15:9 79:16 104:9,10

**wanted**
84:13

**wasn't**
39:15 40:8 91:24 93:6

**way**
27:19 36:15 40:23 79:15 83:20 91:19

**we're**
57:9 67:18 68:14 90:2

**we've**
49:18 78:13 80:18

**website**
107:21 108:10,14,16 110:22 112:8

**Wednesday**
10:6 68:2

**week**
20:24

**weeks**
19:4

**Weir**
14:11 23:23 24:18 42:5, 23 53:19 54:15

**went**
55:19

**weren't**
85:2

**what's**
33:4 48:5 53:23 56:9 58:23 63:21,24 68:4

72:23 83:3 85:17 106:4 107:23 112:9

**wide**
89:20

**willing**
40:11

**Willis**
10:14

**witness**
11:9,16,18 76:13 79:25 85:22 94:5,8 125:23

**word**
12:21 21:21 38:13

**work**
17:9 42:9

**worked**
17:3,4,11

**worth**
124:20

**wouldn't**
109:25 110:2

**write**
103:4

**written**
16:22 92:6

**wrote**
58:15

**Y**

**yeah**
64:18

**year**
15:13 61:4

**years**
17:23

**yesterday**
20:25

**Yolanda**
33:3,7 34:8 41:11 67:25 68:25 79:22 82:14 93:25 95:24 99:21

**Yolandaforeman@ egrayco.com**
95:4

**York**
10:11 12:9,18 15:24 52:16

**you'll**
19:6 24:16 27:21 34:15 41:8 50:16 54:19 60:13, 24 69:20 71:5,8,24 82:10 95:18 98:6 105:10

**you're**
23:5 31:20 35:20 46:13 47:13,14 55:11 56:7 59:16 63:21,23 68:19 82:24 83:3 86:9 90:6,13 113:21

**you've**
18:19 24:8 29:4 33:4 53:23 58:23 68:4 80:3 85:17 94:18 99:8 106:4 107:23 110:24 112:9