IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ALAN WILLIS, Individually and on Behalf
of All Others Similarly Situated,

        Plaintiffs,

   v.                                    Civil Action 2:12-cv-604
                                          Judge Michael H. Watson
                                          Magistrate Judge Jolson

BIG LOTS, INC., et al.,

        Defendants.

### REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion To Stay Dissemination Of Notice To Class Members Pending Rule 23(f) Appeal. (Doc. 89). For the reasons set forth below, it is **RECOMMENDED** that Defendants' Motion be **GRANTED IN PART** and **DENIED IN PART**.

I.    BACKGROUND

This is a securities class action in which Plaintiffs allege that Defendants unlawfully inflated the value of Big Lots' stock during the period from March 2, 2012 to August 23, 2012 by concealing the company's true financial condition. On March 17, 2017, the Court issued an Opinion and Order (the "March 17 Opinion and Order") granting the Motion filed by Lead Plaintiff, City of Pontiac General Employees' Retirement System for class certification and for the appointment of itself and Teamsters Local 237 Additional Security Benefit Fund as Class Representatives and the law firm Robbins Geller Rudman & Dowd LLP as Class Counsel (the "Underlying Motion"). (Doc. 88). Two weeks later, Defendants filed the Motion To Stay

Dissemination Of Notice To Class Members Pending Rule 23(f) Appeal. (Doc. 89). That Motion is now ripe for consideration. (*See* Doc. 91 (opposition); Doc. 92 (reply)).

**II. DISCUSSION**

Under Rule 23(f) of the Federal Rules of Civil Procedure:

> [a] court of appeals may permit an appeal from an order granting or denying class-action certification . . . if a petition for permission to appeal is filed with the circuit clerk within 14 days after the order is entered. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

*Id*. Motions to stay proceedings pending permissive appeal to the Sixth Circuit are analyzed under a balancing test using the following four factors: (1) whether the defendants are likely to succeed on the merits; (2) whether the defendants will be harmed irreparably without a stay; (3) whether the issuance of a stay will cause substantial harm to other parties; and (4) whether the public interest would be served by the issuance of the stay. *See Jenkins v. Hyundai Fin. Co.*, No. C2-04-720, 2008 WL 2268319, at *1 (S.D. Ohio June 2, 2008) (citing *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991); *Holden v. Heckler*, 584 F. Supp. 463, 497 (N.D. Ohio 1984)); *see also Griffiths v. Ohio Farmers Ins. Co.*, 1:09-cv-1011, 2010 WL 2774446, at *1 (N.D. Ohio July 12, 2010) ("In this context, courts in the Sixth Circuit generally apply the four-factor balancing test used to evaluate requests for preliminary injunctive relief."). Courts balance these factors with flexibility and enjoy discretion in doing so because they "are not prerequisites or elements that must be met, but are 'interrelated considerations that must be balanced together.'" *Griffiths*, 2010 WL 2774446, at *1 (quoting *Mich. Coal. of Radioactive Material Users, Inc.*, 945 F.2d at 153).

### A. Likelihood Of Success On The Merits

In evaluating whether Defendants are likely to succeed on the merits, the Court must first examine the parties' arguments and the Court's decision on the Underlying Motion.

#### 1. The Underlying Motion

In support of the Underlying Motion, Plaintiffs argued that common issues of reliance on Defendants' alleged misrepresentations predominated over individual issues as set forth in *Basic Inc. v. Levinson*, 108 S. Ct. 978 (1988). In that case, the Supreme Court held that "securities fraud plaintiffs can in certain circumstances satisfy the reliance element of a Rule 10b-5 action by invoking a rebuttable presumption of reliance, rather than proving direct reliance on a misrepresentation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014) ("*Halliburton II*"). In the March 17 Opinion and Order, the Court explained that this rebuttable presumption is based on the "fraud-on-the-market" theory, "which holds that 'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations.'" (Doc. 88 at 27–28 (citing *Halliburton II*, 134 S. Ct. at 2407, quoting *Basic*, 485 U.S. at 246)).

Defendants argued *inter alia* that, even if Plaintiffs were able to invoke such a presumption, they could rebut it with evidence of a lack of price impact by proving that there was no statistically significant price increase after a misrepresentation was made. (*Id.* at 29). However, the Court held that there were other ways to prove price impact, such as the "price maintenance theory." (*Id.* at 36). Under that theory, a misrepresentation can have a price impact by maintaining a stock's already-inflated price. (*Id.*).

This Court stated that, although the Sixth Circuit Court of Appeals has yet to consider the price maintenance theory, at least three Circuit Courts of Appeal and one district court in this

Circuit have accepted it. (*Id*. at 39 (citing *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 258 (2nd Cir. 2016) ("[I]t is hardly illogical or inconsistent with precedent to find a statement may cause inflation not simply by adding it to a stock, but by maintaining it."); *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1314 (11th Cir. 2011) ("[C]onfirmatory information that wrongfully prolongs a period of inflation—even without increasing the level of inflation—may be actionable under the securities laws."); *Schleicher v. Wendt*, 618 F.3d 679, 683–84 (7th Cir. 2010); *Burges v. BancorpSouth, Inc.*, 2016 U.S. Dist. LEXIS 56802, at *8–9 (M.D. Tenn. Apr. 28, 2016) ("*Halliburton* says only that defendants may present evidence that the misrepresentation did not in fact affect the stock price, not that the price impact is determined only at the time of the alleged misrepresentations."), *vacated on other grounds*, *In re BancorpSouth, Inc.*, 2016 U.S. App. LEXIS 16936 (6th Cir. 2016)). Thus, the Court rejected Defendants' argument that they could rebut *Basic*'s presumption of price impact only by demonstrating that there was no statistically significant price increase after a representation was made. (*Id*. at 40). For these reasons, the Court found that Defendants had "failed to rebut the presumption of reliance, individual issues of reliance will not predominate over common issues, and the predominance requirement of Rule 23(b)(3) is satisfied." (*Id.*).

### 2. The Instant Motion

Defendants claim the Sixth Circuit will allow their discretionary appeal to "weigh in on this unsettled question of law" but do not argue directly that the appeal will be meritorious. (Doc. 89 at 3; *see also* Doc. 91 at 3 (Plaintiffs arguing that Defendants' "speculation says nothing about the merits of their appeal")). In contrast, Plaintiffs state outright that Defendants do not have a strong likelihood of success on the merits because the abuse of discretion standard applies. (Doc. 91 at 2). The Court agrees that abuse of discretion is the applicable standard. *See Jenkins*, 2008 WL

2268319, at *2 ("An order granting class certification is interlocutory in nature and will only be disturbed upon a showing that a district court clearly abused its discretion.").

Simply because the Sixth Circuit may conceivably accept the appeal is insufficient to demonstrate a strong likelihood of success on the merits. *Cf. Northwestern Nat. Ins. Co. v. Insco, Ltd.*, 866 F. Supp. 2d 214, 219 (S.D.N.Y. Dec. 6, 2011) (finding defendant not likely to succeed based on novelty even where there may be "no case squarely on point"). In the March 17 Opinion and Order, the Court agreed with three circuits and one district court in this circuit that recognize the price maintenance theory of price impact. (Doc. 88 at 39–40). The Court acknowledged that the Sixth Circuit has yet to consider the issue and that it is not a well-settled principle of law. (*Id*. at 39). At base, the Court recognized the possibility that the Sixth Circuit could reject the price maintenance theory, but found it unlikely given the decisions on point. (*See id*.). Consequently, Defendants are unlikely to succeed on the merits, and the first factor weighs against a stay.

**B.     Balance Of The Harms And Consideration Of The Public Interest**

Defendants argue that they will be harmed without a stay because they "will expend substantial and potentially needless time and resources negotiating an agreed-upon form of notice, providing class-related discovery to plaintiffs, and reaching an agreement on the logistics of disseminating notice and establishing a timeline for opting out of the action." (Doc. 89 at 3–4). Defendants likewise argue that "the public interest consideration of the potential confusion arising from duplicative and conflicting notices" weighs in favor of a stay. (*Id*. at 4). Finally, Defendants assert that Plaintiffs would not suffer prejudice if class notice is stayed. (*Id*. at 5).

For their part, Plaintiffs argue that none of the burdens claimed by Defendants "constitutes irreparable injury and they are, in any case, exaggerated." (Doc. 91 at 5). Additionally, Plaintiffs contend that public interest favors notice "now . . . in order to advise class members of the Court's

5

class action ruling as well as their rights and obligations, and provide class members with important additional information, such as instructions to retain their documentation of transactions in Big Lots stock, so they will be able to make a claim on any potential recovery." (Doc. 91 at 6). According to Plaintiffs, any potential confusion arising from the notice is a speculative concern that can be mitigated if necessary. (*Id*.).

In the Undersigned's view, Defendants would suffer only a minimal burden addressing the issues relating to notice. As Plaintiffs explain, their counsel will take the laboring oar in drafting the relevant documents for defense counsel's review. (*See* Doc. 91 at 5). Further, there is a strong public interest in the efficient resolution of litigation that is not outweighed by Defendants' minimal burden. *See Jenkins*, 2008 WL 2268319, at *4 ("The Court concludes that the minimal burden placed on *Hyundai* to address issues related to notice does not outweigh the hardship of delaying resolution of the litigation."); *cf. Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 169 (S.D. Ohio 2012) (recognizing that "the judicial system has an interest in obtaining the most efficient resolution of the controversy"). However, serious consideration must be given to the potential for confusion if a notice is followed by a decision vacating or modifying the March 17 Opinion and Order. *Jenkins*, 2008 WL 2268319, at *4 ("The Court . . . finds compelling the potential confusion that could result for members of the class if the Court of Appeals were to vacate or modify the class certification order after notice has already been disseminated."). Given these competing concerns, the Undersigned recommends following the same path as the Court in *Jenkins* did.

In *Jenkins*, the Court permitted negotiation and preparation of the class notice for publication and mailing, but dissemination of the notice was not permitted until after the Sixth Circuit had resolved the petition for permissive leave to appeal. *See* 2008 WL 2268319, at *13.

Such an approach allows the case to progress while avoiding potential confusion and the cost of re-notification. Accordingly, the Undersigned recommends that process here.

## III. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Defendants' Motion be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 89). More specifically, it is **RECOMMENDED** that the Court direct the parties to prepare the class notice for publication and mailing, but not permit dissemination of the notice until the Sixth Circuit has resolved the petition for permissive leave to appeal. If that petition is granted, the Court may then consider a renewed Motion to Stay.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.


Date: May 4, 2017                                                      /s/ Kimberly A. Jolson
                                                                                        KIMBERLY A. JOLSON
                                                             UNITED STATES MAGISTRATE JUDGE