**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| ALAN WILLIS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BIG LOTS, Inc., et al.,<br><br>Defendants. | Case No. 2:12-cv-00604-MHW-KAJ<br><br>District Judge Michael H. Watson<br><br>Magistrate Judge Kimberly A. Jolson |

**DECLARATION OF DAVID A. HERMAN IN SUPPORT OF DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**

David A. Herman declares as follows:

1. I am an attorney at law licensed to practice in the State of New York and admitted *pro hac vice* in this action. I am associated with the law firm Cravath, Swaine & Moore LLP, counsel of record for defendants Joe R. Cooper, Steven S. Fishman, Charles W. Haubiel II, Timothy A. Johnson, and Big Lots, Inc. ("Big Lots" or the "Company"). I submit this declaration in support of Defendants' Motion for a Protective Order to preclude the deposition of Big Lots' current CEO, David J. Campisi.

2. I am familiar with the course of fact discovery in this action. As of today's date, defendants have produced 301,846 documents, consisting of 784,080 pages. Defendants have agreed to permit plaintiffs to take 24 depositions of fact witnesses, as well as the depositions of five witnesses testifying on behalf of Big Lots pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure on a total of 29 topics. As of today's date, plaintiffs have taken 17 depositions of current and former Big Lots employees, officers and directors as fact witnesses, and have taken each of the five Rule 30(b)(6) depositions.

3. A complete list of the depositions plaintiffs have taken and noticed in this action, with their dates, is attached hereto as Exhibit A.

4. On March 21, 2017, counsel for plaintiffs informed defendants of their desire to take the deposition of Mr. Campisi. Between March 21, 2017, and May 9, 2017, counsel for plaintiffs and defendants exchanged e-mail correspondence regarding plaintiffs' request. Attached hereto as Exhibit B is a true and correct copy of the e-mail chain between the parties concerning plaintiffs' request to depose Mr. Campisi. The e-mail chain attached hereto as Exhibit B has been cropped to remove earlier correspondence concerning matters not related to plaintiffs' request for the deposition of Mr. Campisi, and page numbers have been added for convenience.

5. On April 19, 2017, plaintiffs formally noticed Mr. Campisi for a deposition. Attached hereto as Exhibit C is a true and correct copy of that notice of deposition.

6. On April 24, 2017, I participated in a meet and confer call with plaintiffs' counsel on the subject of plaintiffs' request to take the deposition of Mr. Campisi (the "Meet and Confer"). On the call for plaintiffs were Brian Cochran, Esq., and Kevin Lavelle, Esq. Also on the call for plaintiffs for a portion of the Meet and Confer was David Mitchell, Esq. Beginning on the first page of Exhibit B, and continuing to the third page, is my e-mail of May 5, 2017, to Mr. Cochran and Mr. Lavelle, summarizing the substance of what was discussed during the Meet and Confer.

7. During the Meet and Confer, I asked what basis plaintiffs had to contend that Mr. Campisi possesses "personal and unique knowledge" regarding the investigations by either the 2013 Special Demand Committee or the 2016 Special Litigation Committee of the Board of Directors of Big Lots, Inc. (the "Committees"). Mr. Cochran responded that the

Committees reported to Mr. Campisi. I stated that that was incorrect. Mr. Cochran then stated that the Committees reported to the Board of Directors, and that, as a member of the Board of Directors, Mr. Campisi would have relevant knowledge. I asked what knowledge plaintiffs believed Mr. Campisi would have, other than that the Committees were formed, that they retained independent counsel to conduct investigations, and that they produced reports. I also stated that such knowledge would be no different from that of Philip Mallott, who was on the Board at all relevant times and whom plaintiffs had deposed, or from that of Charles Haubiel, the General Counsel of Big Lots during the relevant time period, whom plaintiffs had deposed in both a personal and a 30(b)(6) capacity. Mr. Cochran responded that Mr. Campisi's knowledge would be different because he was the CEO at the time those investigations took place. I asked Mr. Cochran to explain why Mr. Campisi's position as CEO would yield him any additional knowledge on these subjects, and what other relevant personal knowledge of these subjects plaintiffs believed Mr. Campisi could have. Plaintiffs' counsel did not explain why Mr. Campisi's position as CEO would yield him any additional knowledge or what other relevant personal knowledge of these subjects plaintiffs believed Mr. Campisi could have.

8. Also during the Meet and Confer, I asked plaintiffs' counsel to explain plaintiffs' assertion that Mr. Campisi has "personal and unique knowledge" of "revisions to the business strategy, culture, operations and management at Big Lots" that plaintiffs contend he made following "the departures of Mr. Fishman and Mr. Wurl." I asked plaintiffs' counsel what relevance any such revisions would have to this case. Mr. Cochran asserted that Mr. Campisi made changes to remedy problems that plaintiffs contend existed at the Company during the class period. I stated that, even if Mr. Campisi made changes to Big Lots' business strategies, that would say nothing about whether the Company knowingly misled investors at the time of

the alleged misstatements, and I observed that that is a subject on which Mr. Campisi necessarily would have no first-hand knowledge, because he was not at the Company. Plaintiffs' counsel made no contention during the Meet and Confer that Mr. Campisi has any personal knowledge of what Big Lots management knew or believed about the Company's strategies or operations at the time of the alleged misstatements.

9. I also asked what knowledge plaintiffs contend Mr. Campisi would have about any relevant changes to the Company's business beyond what plaintiffs could learn from John Martin, Lisa Bachmann, Steven Smart, or the other senior executives who worked at Big Lots both during and after the class period and whose depositions plaintiffs already had taken or would soon take. Mr. Cochran replied that Mr. Campisi is the CEO. Plaintiffs' counsel did not specify during the Meet and Confer what relevant information Mr. Campisi would have on this subject that plaintiffs could not obtain from executives who were at the Company both during and after the class period and who are already on the deposition list.

10. Also during the Meet and Confer, I asked what basis plaintiffs had to contend that the retirement of Steven Fishman, Big Lots' former Big Lots Chief Executive Officer, was relevant to plaintiffs' allegations in this case. Mr. Cochran responded, in substance, that Big Lots announced Mr. Fishman's retirement around the time that the Company received a government subpoena requesting documents concerning Mr. Fishman's sales of Big Lots stock. I stated that I was aware of the allegation in plaintiffs' complaint that there was a connection between those two events. I further stated that the parties now had nearly completed fact discovery, including extensive document discovery and more than a dozen depositions, and asked whether plaintiffs could point to any evidence that had come to light in discovery

supporting the existence of any connection between Mr. Fishman's retirement and concerns about insider trading. Plaintiffs' counsel did not identify for me any such evidence.

11. I also asked what basis plaintiffs had to believe that Mr. Campisi has any personal knowledge, let alone "unique knowledge," of the reasons for Mr. Fishman's decision to retire. I stated that Mr. Campisi did not join the Company until five months after Mr. Fishman announced his retirement. Mr. Cochran responded, in substance, that: (1) Mr. Fishman and Mr. Campisi "overlapped" in their work for the Company because Mr. Fishman helped with the CEO transition; (2) Mr. Campisi was hired to replace Mr. Fishman; (3) as of Mr. Campisi's arrival, the Company no longer had the CEO also serve as Chairman of the Board; and (4) Mr. Campisi has a different perspective on Mr. Fishman's departure because he was the new CEO. Mr. Cochran also stated that Mr. Campisi changed the terms of Mr. Fishman's consulting agreement with the Company following Mr. Fishman's departure, which Mr. Cochran stated supports an inference that the change was made due to the sales of Big Lots stock Mr. Fishman executed in the first quarter of 2012. I replied that none of those factors suggested Mr. Campisi had any personal knowledge of why Mr. Fishman decided to retire and asked whether plaintiffs had any other basis to contend he did. Plaintiffs' counsel did not supply any further response.

12. Also during the Meet and Confer, I asked plaintiffs' counsel to explain plaintiffs' assertion that Mr. Campisi has "personal and unique knowledge" regarding the circumstances under which Joe Cooper, Charles Haubiel, Robert Claxton and John Martin left Big Lots. I stated that those departures took place months after the end of the class period in this litigation and asked what relevance they have to plaintiffs' case. Mr. Cochran responded that plaintiffs believe Mr. Campisi terminated each of those employees because they had engaged in insider trading. I told Mr. Cochran that was false and asked what the basis was for that assertion.

Mr. Cochran responded that the basis was the proximity of the executives' departures to the end of the class period. I stated that fact discovery was nearly complete and asked plaintiffs whether there was any other basis beyond the dates of the departures, and I observed that the earliest of the departures was approximately ten months after the end of the class period. Mr. Cochran stated that plaintiffs' counsel had seen a document in which Mr. Haubiel e-mailed Mr. Campisi the Company's insider trading policies. Plaintiffs' counsel did not provide any other basis for the assertion that any of those employees left the Company due to alleged insider trading or for any other reason having to do with plaintiffs' claims.

13. I also asked what "unique knowledge" plaintiffs contend Mr. Campisi has concerning the departures of Messrs. Cooper, Haubiel, Claxton and Martin, given that plaintiffs had deposed, or would soon depose, each of those four individuals, as well as other senior Big Lots executives and members of the Company's Board of Directors with personal knowledge concerning their departures. Mr. Cochran stated that the opportunity to depose each of those individuals is insufficient for plaintiffs to learn why they left the Company. Mr. Cochran also stated that Mr. Mallott and Mr. Haubiel provided "conflicting testimony" about the reasons for Mr. Haubiel's departure in that Mr. Mallott testified that Mr. Haubiel was insubordinate to the new CEO, whereas Mr. Haubiel did not recall any insubordinate behavior. Plaintiffs' counsel did not supply any additional response to my question as to what "unique knowledge" plaintiffs contend Mr. Campisi has concerning those four departures.

14. Attached hereto as Exhibit D is a true and correct copy of the Action in Writing By the Board of Directors of Big Lots, Inc., dated August 1, 2016.

15. Attached hereto as Exhibit E is a true and correct copy of excerpts from the transcript of the deposition of Philip Mallott, held on April 18, 2017.

16. Attached hereto as Exhibit F is a true and correct copy of excerpts from the transcript of the deposition of Charles W. Haubiel II, held on April 20, 2017.

17. Attached hereto as Exhibit G is a true and correct copy of the Big Lots webpage entitled "Our Leadership," as of May 12, 2017, located at the URL: www.biglots.com/corporate/about-us/our-leadership.

18. Attached hereto as Exhibit H is a true and correct copy of excerpts from the transcript of the deposition of Lisa Bachmann, held on March 29, 2017.

19. Attached hereto as Exhibit I is a true and correct copy of excerpts from the transcript of the deposition of Steven Fishman, held on April 25, 2017.

20. Attached hereto as Exhibit J is a true and correct copy of the Big Lots Press Release entitled "Big Lots Announces CEO Planned Retirement And Transition Plan For The Coming Year", dated December 4, 2012.

21. Attached hereto as Exhibit K is a true and correct copy of excerpts from the transcript of the deposition of Douglas Wurl, held on May 10, 2017.

22. Attached hereto as Exhibit L is a true and correct copy of the Big Lots Insider Trading Policy for Directors and Section 16 Officers, effective January 29, 2012.

23. Attached hereto as Exhibit M is a true and correct copy of excerpts from the transcript of the deposition of John Martin, held on March 9, 2017.

24. Attached hereto as Exhibit N is a true and correct copy of excerpts from the transcript of the deposition of Joe Cooper, held on April 27, 2017.

25. Attached hereto as Exhibit O is a true and correct copy of excerpts from the transcript of the deposition of Russell Solt, held on March 15, 2017.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 15, 2017.

David A. Herman