IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ALAN WILLIS, Individually and on Behalf
of All Others Similarly Situated,

        Plaintiffs,

    v.                                        Civil Action 2:12-cv-604
                                                  Judge Michael H. Watson
                                                  Magistrate Judge Jolson

BIG LOTS, INC., et al.,

        Defendants.

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for a Protective Order Precluding the Deposition of David J. Campisi. (Doc. 94). For the reasons that follow, Defendants' Motion is **DENIED**.

**I.    BACKGROUND**

This is a securities class action in which Plaintiffs allege that Defendants unlawfully inflated the value of Big Lots stock during the period from March 2, 2012 to August 23, 2012 by concealing the company's true financial condition. Plaintiffs seek to depose David J. Campisi (*see* Doc. 96-3 (deposition notice)), Big Lots' current President and Chief Executive Officer ("CEO") who joined the company on May 3, 2013, and became a Director on May 30, 2013. Plaintiffs have agreed to limit the deposition to three hours at a location and time of Mr. Campisi's choosing, and seek three general categories of information.

The first category of information Plaintiffs seek from Mr. Campisi concerns the firing or departure of individual Defendants and other key Big Lots executives. More specifically, Plaintiffs seek information on:

- Mr. Campisi's firing of Big Lots' General Counsel Defendant Charles W. Haubiel II who is alleged to have sold personally and illegally $2.5 million worth of Big Lots stock and presided over sale of $33 million worth of stock by other insiders while charged with administering Big Lots' insider trading policies;

- Mr. Campisi's firing of Chief Financial Officer Defendant Joe Cooper, who is alleged to have sold illegally $3.1 million worth of Big Lots stock;

- Mr. Campisi's firing of Senior Marketing Executive Rob Claxton who is alleged to have sold illegally $2.4 million worth of Big Lots stock;

- Mr. Campisi's knowledge of the retirement of former Merchandising Department head John Martin, who is alleged to have sold illegally over $4 million worth of Big Lots stock; and

- Mr. Campisi's succession of former CEO Defendant Steven S. Fishman at a time when Big Lots had been notified about various investigations into insider trading.

(Doc. 104 at 6–10).

The second category of information concerns Mr. Campisi's knowledge of Big Lots' operations during or immediately following the class period. Plaintiffs allege that the Board of Directors hired Mr. Campisi to replace Mr. Fishman and "turnaround the Company's poor performance during the Class Period and the second half of 2012." (*Id*. at 10). To that end, Plaintiffs seek information on Mr. Campisi's knowledge of class-period strategies (including merchandising strategies), sales trends, and personnel, and changes he made based on that knowledge. (*Id.* at 10–12). Plaintiffs also wish to inquire about Mr. Campisi's decision to undertake a 2013 assessment concerning Big Lots' culture during the class period and his "takeaways" and the "resulting changes" at Big Lots. (*Id*).

The third category of information concerns what Plaintiffs refer to as the Special Committee and Defendants refer to as the Demand Committee formed in March 2013, which Plaintiffs contend "investigated many of the same facts underlying this litigation…." (*Id*. at 12).

Plaintiffs explain that Mr. Campisi "occupied the unique role" of being "the only Big Lots director who neither was on the Special Committee nor a defendant in the underlying derivative litigation" in September 2013, when Big Lots' Board of Directors adopted the Committee's recommendation that no further action be taken. (*Id*.). Plaintiffs also seek Mr. Campisi's perspective on the Special Litigation Committee formed in August 2016. (*Id*. at 12–13).

On May 15, 2017, Defendants filed a Motion for a Protective Order precluding Mr. Campisi's deposition. (Doc. 94). That Motion is now ripe for consideration. (*See* Doc. 104 (opposition); Doc. 108 (reply)).

## II. STANDARD OF REVIEW

Where, as here, a party moves for a protective order to prevent a properly-noticed deposition from proceeding, the movant carries a "heavy burden" under the Federal Rules of Civil Procedure. *Ogle v. Columbia Gas Transmission*, No. 2:10-cv-1059, 2014 WL 6814145, at *4 (S.D. Ohio Dec. 3, 2014). Because a protective order is difficult to obtain, it must be based on the movant's "specific and persuasive showing of good cause." *Libertarian Party of Ohio v. Husted*, 302 F.R.D. 472, 476 (S.D. Ohio 2014) (stating that "granting such orders absent a specific and persuasive showing of good cause would cut against the fact that, under Rule 30(a), '[a] party may ... depose any person, including a party, without leave of court....'"); *see also Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (finding that the alleged harm caused by allowing the deposition to proceed must be illustrated with particularity and specificity and not based on "stereotyped and conclusory statements" such as the notion that corporate executive depositions are inherently sought for harassment). In the limited instance where the movant satisfies this standard, it may be accomplished by demonstrating that the proposed deponent lacks any relevant knowledge, that the testimony sought would be unreasonably cumulative, or duplicative or is

3

sought for the purpose of harassment. *Libertarian Party*, 302 F.R.D. at 475–76 (noting burden shifting under certain circumstances); *see also Bailey v. Ky. Cmty.*, No. 5:14-cv-143-TBR-LLK, 2015 WL 4886089, at *1 (W.D. Ky. Aug. 17, 2015) ("Practically speaking, proving that any deposition witness lacks any relevant evidence serves as a difficult task because of the liberal scope of discovery."). In sum, a motion for a protective order preventing a deposition should be granted "rarely" and only under "extraordinary circumstances." *Libertarian Party*, 302 F.R.D. at 476 (citation omitted).

### III. DISCUSSION

In their Motion for Protective Order, Defendants argue that Mr. Campisi lacks personal knowledge of any relevant facts, the proposed deposition topics are irrelevant and testimony on them would be unreasonably duplicative, and Plaintiffs request to depose Mr. Campisi for the purpose of harassment. Defendants' arguments fail.

#### A. Mr. Campisi's Personal Knowledge

Again and again, Defendants repeat the mantra that Mr. Campisi does not possess personal knowledge of any relevant facts because he joined Big Lots after the class period. (*See, e.g.*, Doc. 94 at 5 (stating that Mr. Campisi "has no first-hand knowledge of the operations of Big Lots' business before his arrival as CEO in May 2013—eight months after the end of the class period and nearly a year after the alleged misstatement"); *id*. (insisting that "[a]ny information Mr. Campisi may have gained about the Company's operations before his employment is second-hand, gleaned from other Big Lots personnel who worked at the Company during that time"); *id*. at 6 (noting that Mr. Campisi "did not join the Company until eight months after the end of the class period"); *id*. (stating that "Mr. Campisi had not begun his employment with Big Lots when the Demand Committee was formed"); *id*. at 10–11 (observing that Mr. Fishman

4

informed the Board of his intention to retire "three years before Mr. Campisi joined Big Lots" and the retirement was announced five months prior to Mr. Campisi's arrival); Doc. 108 at 1 (arguing that "that there is no basis to believe that Mr. Campisi—who was not even at the Company during the relevant time—could provide non-cumulative information on any relevant subjects"); *id*. at 2 (stating that "Mr. Campisi did not join Big Lots until five months after Mr. Fishman announced his retirement and he was not a member" of the Demand Committee or the Special Litigation Committee); *id*. at 9 (observing that Mr. Campisi "was not even at Big Lots at the time the Demand Committee was formed"). As set forth below, this Court disagrees.

### 1. The Firing or Departure of Individual Defendants and Other Big Lots Executives

In a declaration filed in support of the Motion for a Protective Order, Mr. Campisi admits that he fired Mr. Claxton (Senior Marketing Executive) on June 5, 2013, and Mr. Haubiel (General Counsel) on June 17, 2013. (Doc. 95 at ¶¶ 8–9). Mr. Campisi elaborates that the firings were based on his "own interactions" with those individuals and unrelated to this case. (*Id*.). Similarly, Mr. Campisi admits that his actions resulted in the termination of Mr. Cooper's employment (Chief Financial Officer) on April 18, 2014. (Doc. 95 at ¶ 11). He explains that Mr. Cooper's employment was terminated based on his decision to discontinue the company's Canadian operations and, again, was unrelated to this case. (*Id*.). Additionally, Mr. Campisi acknowledges that Mr. Martin (Merchandising Department Head) and Mr. Fishman (former CEO and Director) retired from Big Lots. (Doc. 95 at ¶¶ 5, 10). Mr. Campisi states that he has "no reason to believe" Mr. Martin's retirement was related to this case and he has no personal knowledge concerning Mr. Fishman's decision to retire or the announcement of that decision. (*Id*.).

As an initial matter, as one court observed, allowing written declarations in lieu of live testimony "eschews the opportunity for opposing counsel to probe the veracity and contours of the statements and denies the opportunity for probative follow-up questions." *Flanagan v. Wyndham Int'l, Inc.*, 231 F.R.D. 98, 104 (D.D.C. 2005) (also noting that deposition testimony "permits examination and cross-examination of a live witness by counsel, where there is no opportunity to reflect and carefully shape the information given") (internal quotations and citation omitted). Turning to separations from Big Lots, this Court has already ruled in this case that high-ranking executives' departures from Big Lots are relevant to scienter. (*See, e.g.*, Doc. 49 at 73–74 (finding that the resignations of executive Douglas Wurl and Mr. Fishman support an inference of scienter)). Because Mr. Campisi's testimony concerning the separations of Mr. Claxton, Mr. Haubiel, Mr. Cooper, Mr. Martin, and Mr. Fishman is likewise relevant to scienter, Plaintiffs are entitled to question him on their departures. *See id.*; *see also In re Am. Serv. Grp., Inc.*, No. 3:06-0323, 2009 WL 1348163, at *58 (M.D. Tenn. Mar. 31, 2009) (finding, *inter alia*, that the firing of executives constitutes evidence of scienter). At base, Plaintiffs have the right to discover what circumstances led to these departures from Big Lots; in other words, they are entitled to test the veracity of Mr. Campisi's statements even if, as with Mr. Fishman, he claims lack of knowledge. *See Libertarian Party*, 302 F.R.D. at 477.

2. **Operational Changes**

Next, Plaintiffs seek information on Mr. Campisi's knowledge of class-period strategies, sales trends, and personnel, alleging that he made sweeping operational changes as CEO based on that knowledge. (*See* Doc. 104 at 10–11). They also seek information on Mr. Campisi's decision to undertake the burden and expense of the 2013 assessment pertaining to Big Lots' culture during the class period and his views and changes as a result. (*Id.* at 10–12). To

6

determine whether Mr. Campisi has knowledge on this topic, the Court again turns to his declaration. (Doc. 95). Mr. Campisi admits that he "undertook to understand the business" when he joined Big Lots and learned information about "the Company's operations, performance or strategy" during the class period. (*Id*. at ¶¶ 1–3). However, he maintains that his knowledge "is necessarily second-hand information obtained from Big Lots employees…." (*Id*. at ¶¶ 3–4).

The Court agrees with Plaintiffs that Mr. Campisi's deposition should not be precluded because he purportedly lacks personal knowledge of events that transpired during the class period. (Doc. 104 at 10). As Plaintiffs explain, "personal knowledge is not a requirement of discovery." (*Id*. (quoting *Bailey*, 2015 WL 4886089, at *1)). "The test under Rule 26 is not whether a putative deponent had personal involvement in an event, or even whether []he has 'direct' knowledge—which is merely another way of saying that []he was a participant in the event—but whether the witness may have information from whatever source that is relevant to the claim or defense." *Johnson v. Jung*, 242 F.R.D. 481, 484 (N.D. Ill. 2007). Further, "[i]nformation about defendant's policies, procedures, and actual practices—whether preceding or during the class period—is relevant." *Meredith v. United Collections Bureau*, No. 1:16cv1102, 2016 WL 6649279, at *5 (N.D. Ohio Nov. 10, 2016); *see also In re Toyota Motor Corp. Sec. Litig.*, No. CV 10-922 DSF (AJW), 2012 WL 3791716, at *4 (C.D. Cal. Mar. 12, 2012) ("It is … beyond dispute that discovery is not limited to the class period.").

At bottom, Defendants ask this Court to accept their representation that Mr. Campisi's decision to make "strategic or operational changes" as the "new CEO" is unrelated to the events of this case. (Doc. 94 at 8). There is no precedent for granting a Motion for a Protective Order on that basis. Rather, because Mr. Campisi was the decision-maker who chose to implement the relevant strategy and personnel changes and undergo the 2013 assessment, his testimony on this

topic is discoverable. *Johnson*, 242 F.R.D. at 484 (denying protective order where deponent had knowledge about the day-to-day operations and personal involvement in the decision-making process).

### 3. The Special Committee and Special Litigation Committee

Finally, Plaintiffs seek to question Mr. Campisi regarding the Special Committee (or Demand Committee) and Special Litigation Committee. (Doc. 104 at 12–13). Although Mr. Campisi was not a member of either committee, his declaration confirms that he has knowledge concerning their formation and membership, their engagement of independent legal counsel, and the fact that they conducted investigations. (Doc. 95 at ¶ 6). He also is aware that "the Demand Committee reported on its findings and recommendations to the Board of Directors, which in turn rejected the shareholder demand" and that the Special Litigation Committee "conducted its investigation and informed the Court of its intention to file a motion to dismiss the derivative action on behalf of the Company." (*Id*.). Mr. Campisi again claims that he has "no first-hand knowledge" about the committees' findings and procedures and has never seen the Special Litigation Committee's report. (*Id*.).

As set forth above, there is no requirement that Mr. Campisi have "direct" knowledge of the committees' actions or that he be a "participant in the event[s]" undertaken by them. *See Johnson*, 242 F.R.D. at 484. By his own admission, Mr. Campisi has knowledge concerning the committees. (Doc. 95 at ¶ 6). Under liberal discovery permitted by the Federal Rules of Civil Procedure, Plaintiffs are entitled to question him concerning that knowledge. *See Libertarian Party*, 302 F.R.D. at 477. For the same reason, Plaintiffs are entitled to question Mr. Campisi concerning his "unique role" as "the only Big Lots director who neither was on the Special Committee nor a defendant in the underlying derivative litigation" in September 2013, when Big

8

Lots' Board of Directors adopted the Committee's recommendation that no further action be taken.  (*Id*. at 12–13).

B.  **Duplication and Harassment**

Defendants also seek a protective order on the ground that the testimony sought is unreasonably duplicative and requested for the purpose of harassment.  (*See generally* Docs. 94, 108).  As to duplication, Defendants contend that Plaintiffs have already learned in discovery the information Mr. Campisi would offer concerning Mr. Fishman's retirement and the other departures from Big Lots.  (Doc. 94 at 11, 13–14).  They also contend that Plaintiffs have already discovered facts Mr. Campisi would offer on the committees and strategic changes.  (Doc. 94 at 6–9).  Last, Defendants also appear to argue waiver based on Plaintiffs' alleged failure to question witnesses thoroughly concerning the committees and strategic changes, despite having "ample opportunity" to do so.  (*Id*. at 7 (arguing Plaintiffs failed to ask Mr. Mallot (a member of the Board at the time the Demand Committee was formed) "details concerning the SLC investigation); *id.* at 9 ("[P]laintiffs have had and continue to have, ample opportunity to obtain testimony on post-class period changes to business from other senior executives."); Doc. 108 at 12 ("Tellingly, [P]laintiffs failed to ask a number of executives who worked at Big Lots … about any strategic or operational changes implemented at the Company after Mr. Campisi joined.")).

As this Court has explained, Plaintiffs have the right to discover Mr. Campisi's perspective as CEO on his decision to fire Mr. Claxton (Senior Marketing Executive alleged to have sold illegally $2.4 million in stock) and Mr. Haubiel (General Counsel alleged to have sold personally and illegally $2.5 million in stock and presided over sale of $33 million in stock by other insiders while charged with administering insider trading policies) allegedly based on his

"own interactions" with those individuals; his decision to discontinue the company's Canadian operations, which resulted in Mr. Cooper's termination (Chief Financial Officer alleged to have sold illegally $3.1 million in stock); and his knowledge concerning Mr. Martin's retirement (Merchandising Department Head alleged to have sold illegally over $4 million in stock) and succession of Mr. Fishman following his retirement (CEO and Director who was allegedly aware of investigations into insider trading). (*See* Doc. 95 at ¶¶ 8–9, 10–11). The fact that other discovery may exist on these topics not does warrant granting the Motion for a Protective Order because it ignores Mr. Campisi's unique perspective as CEO and, alternatively, renders "any discovery seeking confirming or contradicting evidence" unreasonably cumulative. *Bailey*, 2015 WL 4886089, at *2). To adopt Defendants' position would be to accept that "no litigant could ever revisit a topic in discovery." *Id.*; (*see, e.g.*, Doc. 108 at 2 (arguing that Plaintiffs "fail to articulate any basis to believe Mr. Campisi has non-duplicative information about any subject"); *id*. at 10 (asserting that Plaintiffs "make no attempt to explain what testimony Mr. Campisi could provide on this subject that is not duplicative of what they have already obtained") *i.e.*, eliminating the reasonableness requirement). Clearly, not all duplication is unreasonable under the Federal Rules. *See id*. (noting that "[u]nreasonable" serves as an important modifier in Rule 26(b)(2)(C)(i)).

Based on its previous findings in this Opinion and Order, the Court need not have a prolonged discussion of the alleged harassment arising from Plaintiffs' desire to depose Mr. Campisi. Here, Plaintiffs have been reasonable—agreeing to limit the deposition to three hours at a location and time of Mr. Campisi's choosing and informing Mr. Campisi of the deposition topics. Given Mr. Campisi's knowledge on relevant topics, the Court finds no merit in

Defendants' "stereotyped and conclusory statement[]" that the CEO's deposition is sought inherently for harassment. *Serrano*, 699 F.3d at 901.

## IV. CONCLUSION

For the reasons stated, the Court, in its discretion, finds that Defendants fail to make a specific and persuasive showing of good cause warranting the rare limitation on liberal discovery. Consequently, Defendants' Motion for a Protective Order Precluding the Deposition of David J. Campisi is **DENIED**. (Doc. 94).

### Motion for Reconsideration

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This Order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.

IT IS SO ORDERED.

Date: June 16, 2017
/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

11